# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

In re:

Jodell M Altier

    Debtor(s).

Case No. 6:15-bk-01838-KSJ

Chapter 7 Case

## GOSHEN MORTGAGE, LLC'S
## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

**COMES NOW**, Goshen Mortgage, LLC, its Successors and/or Assigns ("Secured Creditor"), by and through its undersigned counsel, hereby file its Motion for Relief from the Automatic Stay, and as grounds thereof state as follows:

1. The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 362, FRBP 4001(a) and the various other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure and the laws of the United States of America.

2. The Debtor filed a voluntary petition pursuant to Chapter 7 of the Bankruptcy Code on March 4, 2015.

3. Secured Creditor holds a security interest in the real property located at 2507 Roat Drive, Orlando, FL 32835, by virtue of a Mortgage which is recorded in the Public Records of ORANGE County, Florida in Book 6675 at Page 2543, which secures a Note in the amount of $346,000.00. Copies of the relevant loan documents are attached hereto as Exhibit "A".

4. The aforementioned Mortgage gives Secured Creditor a first mortgage position on property legally described as:

   **LOT 26A, PALMA VISTA REPLAT, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 29, PAGE 45, PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA.**

5. A foreclosure action was instituted in the Ninth Judicial Circuit in and for Orange County, Florida, which ultimately resulted in entry of Final Judgment of Foreclosure against Debtor on March 10, 2014 in the amount of $325,336.63. See Exhibit "B" attached hereto.

6. Upon information and belief, the subject property has not been claimed exempt by Debtor.

7. Furthermore, the Debtor transferred her interest in the subject property to Grande Legacy Group (A Texas Joint-Stock Company) on September 17, 2013. See Exhibit "C" attached hereto.

8. Debtor has failed to adequately protect the interest of Secured Creditor as payments have been in default, and remain in default, since November 1, 2011. Interest is accruing at the rate of 3.000 per cent—$24.01 *per diem*—plus other fees and costs advanced by the mortgagee pursuant to the loan documents. See Exhibit "D" attached hereto.

9. Secured Creditor's interest in the subject property is being significantly jeopardized by Debtor's failure to provide adequate protection for Secured Creditor's interest in the property, while Secured Creditor is prohibited from pursuing lawful remedies to protect its interest and enforce its Final Judgment of Foreclosure.

10. Therefore, Secured Creditor maintains that cause exists pursuant to 11 U.S.C. § 362(d)(1) for the automatic stay to be lifted.

11. Pursuant to 11 U.S.C. § 362(e), Secured Creditor hereby requests that in the event a hearing is necessary, that said hearing be held within thirty (30) days.

12. If relief from the automatic stay is granted, Secured Creditor respectfully requests that said relief survive any subsequent conversion made by the Debtor to another Chapter.

13. Secured Creditor respectfully requests that the Court waive the fourteen (14) day stay of the Order Granting Relief pursuant to Bankruptcy Rule 4001(a)(3), so that Secured Creditor can pursue its *in rem* remedies without further delay.

**WHEREFORE**, Secured Creditor respectfully requests that the automatic stay be lifted so that Secured Creditor may be permitted to pursue *in rem* remedies outside of the bankruptcy forum, that in the event that a hearing is necessary on this Motion that said hearing be held within thirty (30) days, and for such other further relief as the Court may deem just and proper.

Respectfully submitted:

/s/ Alexandra Kalman, Esq.
Alexandra Kalman
FBN 109137
Lender Legal Services, LLC
Attorney for Secured Creditor
201 E. Pine Street, Suite 730
Orlando, FL 32801
Phone: (407) 730-4644
Fax: (888) 337-3815
akalman@lenderlegal.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Motion for Relief

from the Automatic Stay was either sent electronically or by U.S. mail, first-class postage pre-

paid, to:

Jodell M Altier
2507 Roat Drive
Orlando, FL 32835

Trustee
Gene T Chambers
Post Office Box 533987
Orlando, FL 32853

U.S. Trustee
United States Trustee - ORL7/13
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801

on June 23, 2015.

Respectfully submitted:

/s/ Alexandra Kalman
Alexandra Kalman
FBN 109137
Lender Legal Services, LLC
Attorney for Secured Creditor
201 E. Pine Street, Suite 730
Orlando, FL 32801
Phone: (407) 730-4644
Fax: (888) 337-3815
akalman@lenderlegal.com



Exhibit "A"



AP#
LN#

# ADJUSTABLE RATE NOTE
### (1 Year Treasury Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

November 7, 2002                     Maitland                          Florida
[Date]                                [City]                            [State]

2507 ROAT DRIVE,ORLANDO,FL 32835
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 346,000.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  SunTrust Bank, a Georgia Corporation

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      5.7500       %. The interest rate I will pay will change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.
I will make my monthly payment on the first day of each month beginning on      January 1, 2003
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on      December 1, 2032    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at SunTrust Mortgage, Inc., P.O. Box 79041, Baltimore, MD 21279-0041
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 2,019.16                . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

---

FLORIDA ADJUSTABLE RATE NOTE - ARM 6-2 - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Fannie Mae 4-2/5-2/6-2 ARM                                                                        Form 3502.10 1/01
Ⓥ-822N(FL) (0009)
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 4

Initials: 

AP# ████████████
LN# ████████████

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of  December, 2009  , and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and Seven / Eighths                                    percentage points (     2.8750       %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than       7.7500       % or less than     3.7500       %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than     11.7500       %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from

Form 3502.10  1/01

Initials: _JMk_
_JFA_

AP#
LN#

me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of      15      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.0000    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as

AP#
LN#

this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)    _Jodell M. Altier_    _____ (Seal)
                         -Borrower    JODELL M. ALTIER                              -Borrower

_____ (Seal)    _Joseph Altier_    _____ (Seal)
                         -Borrower    JOSEPH ALTIER                              -Borrower

_____ (Seal)    _____ (Seal)
                         -Borrower                              -Borrower

_____ (Seal)    _____ (Seal)
                         -Borrower                              -Borrower

WITHOUT RECOURSE, PAY TO THE ORDER OF

VOID

SUNTRUST MORTGAGE INC

Deborah P Ellis, Vice President

*[Sign Original Only]*

# NOTE ALLONGE

**Statement of Purpose:** This Note Allonge is attached to and made part of the Note, for the purpose of Noteholder Endorsements to evidence transfer of interest.

**Loan Number:** ███████7445

**Loan Date:** November 7, 2002   **Original Loan Amount:** $346,000.00

**Originator:** SUNTRUST BANK

**Original Mortgagor:** JODELL M. ALTIER AND JOSEPH ALTIER

**Property Address:** 2507 ROAT DR., ORLANDO, FL  32835

**Pay to the Order of**
CHRISTIANA TRUST, A DIVISION
OF WILMINGTON SAVINGS FUND
SOCIETY, FSB, AS TRUSTEE FOR
STANWICH MORTGAGE LOAN
TRUST, SERIES 2012-13

SUNTRUST BANK by
CARRINGTON MORTGAGE
SERVICES, LLC, its Attorney-in-
Fact

By: _____

Print Name: _____
Elizabeth A. Ostermann, Vice President of Foreclosure
for Carrington Mortgage Services, LLC, Attorney In Fact
Title _____
Of Carrington Mortgage Services,
LLC



Return To:
EQUITABLE TITLE AGENCY, INC.
7575 DR. PHILIPS BLVD. STE 270
ORLANDO. FL 32819

INSTR  20020567780
OR BK 06675  PG 2543
MARTHA O. HAYNIE, COMPTROLLER
ORANGE COUNTY, FL
11/20/2002  02:40:27 PM
MTG DOC TAX 1,211.00
INTANG TAX 692.00
REC FEE 105.00

This document was prepared by:
Gigi Espeso
SunTrust Bank
350 N. Lake Destiny Road
Maitland. FL 32751

AP#
LN#
————————[Space Above This Line For Recording Data]————————

# MORTGAGE



## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated    November 7, 2002    ,
together with all Riders to this document.
**(B) "Borrower"** is JODELL M. ALTIER and JOSEPH ALTIER, WIFE AND HUSBAND

Borrower is the mortgagor under this Security Instrument.
**(C) "Lender"** is SunTrust Bank

Lender is a Georgia Corporation
organized and existing under the laws of    the State of Georgia

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3010  1/01

VMP-6(FL) (0005)
Page 1 of 16    MW 04/99.01    Initials:
VMP MORTGAGE FORMS - (800)521-7291

MAR 2 8 2003

INSTR 20020567780
OR BK 06675 PG 2544



AP#
LN#

Lender's address is  1 Park Place, N. E., Atlanta, GA 30303

Lender is the mortgagee under this Security Instrument.

**(D) "Note"** means the promissory note signed by Borrower and dated     November 7, 2002
The Note states that Borrower owes Lender Three Hundred Forty Six Thousand and no/100                                                                    Dollars
(U.S. $346,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than     December 1, 2032

**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [ ] Condominium Rider            [ ] Second Home Rider
[ ] Balloon Rider            [X] Planned Unit Development Rider [ ] 1-4 Family Rider
[ ] VA Rider                 [ ] Biweekly Payment Rider       [ ] Other(s) [specify]

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K) "Escrow Items"** means those items that are described in Section 3.

**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: 

-6(FL) (0005)                              Page 2 of 16                              Form 3010  1/01

INSTR 20020567780
OR BK 06675 PG 2545

AP# 
LN#

**(O)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in the    County    [Type of Recording Jurisdiction]
of                                        Orange        [Name of Recording Jurisdiction]:

**Lot 26A, PALMA VISTA REPLAT, according to the plat thereof as recorded in Plat Book 29, Page 45, Public Records of Orange County, Florida.**

Parcel ID Number:                                        which currently has the address of
2507 ROAT DRIVE                                                                [Street]
ORLANDO                                    [City], Florida    32835    [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

INSTR 20020567780
OR BK 06675 PG 2546

AP#
LN#

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

INSTR 20020567780
OR BK 06675 PG 2547

AP#
LN#

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

INSTR 20020567780
OR BK 06675 PG 2548

AP#
LN#

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.



INSTR 20020567780
OR BK 06675 PG 2549

AP#
LN#

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

INSTR 20020567780
OR BK 06675 PG 2550

AP#
LN#

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

INSTR 20020567780
OR BK 06675 PG 2551

AP#
LN#

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**



INSTR  20020567780
OR BK 06675 PG 2552

AP#:
LN#:

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

VMP -6(FL) (0005)                          Page 10 of 16                    Initials:                          Form 3010   1/01

INSTR 20020567780
OR BK 06675 PG 2553

AP#
LN#

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

INSTR 20020567780
OR BK 06675 PG 2554

AP#·
LN#

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Applicable Law has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

 

INSTR 20020567780
OR BK 06675 PG 2555

AP#
LN#

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

   **20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

   Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

   **21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

INSTR 20020567780
OR BK 06675 PG 2556

AP#:
LN#

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.



INSTR 20020567780
OR BK 06675 PG 2557

AP#
LN#

**BY SIGNING BELOW**, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.
Signed, sealed and delivered in the presence of:

_____                    _____ (Seal)
         SUZANN B. DENNIS                                    JODELL M. ALTIER          -Borrower

                                                    2507 ROAT DRIVE, ORLANDO, FL 32835
_____                                                      (Address)
         Bibi Z. Yasin                                      _____ (Seal)
                                                            JOSEPH ALTIER             -Borrower

                                                    2507 ROAT DRIVE, ORLANDO, FL 32835
                                                                                     (Address)

_____ (Seal)              _____ (Seal)
                        -Borrower                                             -Borrower

                        (Address)                                            (Address)

_____ (Seal)              _____ (Seal)
                        -Borrower                                             -Borrower

                        (Address)                                            (Address)

_____ (Seal)              _____ (Seal)
                        -Borrower                                             -Borrower

                        (Address)                                            (Address)

INSTR 20020567780
OR BK 06675 PG 2558

AP#:
LN# 

**STATE OF FLORIDA,**       **ORANGE**     County ss:

The foregoing instrument was acknowledged before me this   11/07/2002       by .

JODELL M. ALTIER and JOSEPH ALTIER

who is personally known to me or who has produced   **DRIVERS LICENSE**    as identification.



Notary Public   **SUZANN B. DENNIS**

> SUZANN B. DENNIS
> MY COMMISSION # DD 042902
> EXPIRES: August 25, 2005
> Bonded Thru Notary Public Underwriters

-6(FL) (0005)         Page 16 of 16       Initials      Form 3010   1/01

INSTR 20020567780
OR BK 06675 PG 2559

AP#
LN# 

# ADJUSTABLE RATE RIDER
### (1 Year Treasury Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this        7th        day of    November, 2002    , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
SunTrust Bank, a Georgia Corporation

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

2507 ROAT DRIVE,ORLANDO,FL 32835
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of        5.7500        %. The Note provides for changes in the interest rate and the monthly payments as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    (A) Change Dates
The interest rate I will pay may change on the first day of        December, 2009        , and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**MULTISTATE ADJUSTABLE RATE RIDER - ARM 5-2 -Single Family- Fannie Mae/Freddie Mac Uniform Instrument**

-822R (0003)        Form 3111 3/99
Page 1 of 4        Initials:
VMP MORTGAGE FORMS - (800)521-7291

INSTR 20020567780
OR BK 06675 PG 2560

AP#
LN#

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and Seven / Eighths                                               percentage points (      2.8750      %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 7.7500      % or less than      3.7500      %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than      11.7500      %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

INSTR 20020567780
OR BK 06675 PG 2561

AP#
LN#

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

-822R (0003)                        Page 3 of 4              Initials: _____        Form 3111 3/99

INSTR 20020567780
OR BK 06675 PG 2562

AP# 
LN#

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)       _____ (Seal)
       -Borrower                      JODELL M. ALTIER          -Borrower

_____ (Seal)       _____ (Seal)
       -Borrower                      JOSEPH ALTIER             -Borrower

_____ (Seal)       _____ (Seal)
       -Borrower                                                -Borrower

_____ (Seal)       _____ (Seal)
       -Borrower                                                -Borrower

VMP-822R (0003)              Page 4 of 4              Form 3111 3/99

INSTR 20020567780
OR BK 06675 PG 2563

AP# 
LN#

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this                7th                day of
November, 2002                                                    , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security
Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to
SunTrust Bank, a Georgia Corporation

                                                                                    (the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:

2507 ROAT DRIVE,ORLANDO,FL 32835
[Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other
such parcels and certain common areas and facilities, as described in **Covenants, Conditions
and Restrictions of record**

(the "Declaration"). The Property is a part of a planned unit development known as
PALM VISTA

[Name of Planned Unit Development]
(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent
entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the
uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii)
any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3150 1/01
Page 1 of 3    Initials:
VMP®-7R (0008)    MW 03/00    VMP MORTGAGE FORMS - (800)521-7291

INSTR   20020567780
OR BK 06675 PG 2564

AP#
LN#

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

VMP-7R (0008)                    Page 2 of 3                    Initials: _____    Form 3150 1/01

INSTR  20020567780
OR BK 06675 PG 2565
LAST PAGE

AP#  ███████████████
LN#  ███████████████

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)    _Jodell M. Altier_ _____ (Seal)
-Borrower                            JODELL M. ALTIER          -Borrower

_____ (Seal)    _J_____ _____ (Seal)
-Borrower                            JOSEPH ALTIER             -Borrower

_____ (Seal)    _____ (Seal)
-Borrower                                                      -Borrower

_____ (Seal)    _____ (Seal)
-Borrower                                                      -Borrower

 -7R (0008)                Page 3 of 3                Form 3150 1/01

DOC # 20150154798  B: 10895 P: 4557
03/27/2015 09:29 AM  Page 1 of 1
Rec Fee: $10.00
Deed Doc Tax: $0.00
Mortgage Doc Tax: $0.00
Intangible Tax $0.00
Martha O. Haynie, Comptroller
Orange County, FL
Ret To: SIMPLIFILE LC

When Recorded Return To:
Lender Legal Services, LLC
201 East Pine Street, Suite 730
Orlando, FL 32801

## ASSIGNMENT OF JUDGMENT

**Orange County, Florida**

Effective Date of Assignment: March 27, 2014

Assignor: CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2012-13 ITS SUCCESSORS OR ASSIGNS at 1610 E. Saint Andrew Place, Suite B-150, Santa Ana, California 92705
Assignee: GOSHEN MORTGAGE, LLC
Judgment Debtor: JODELL M. ALTIER AND JOSEPH ALTIER, WIFE AND HUSBAND.
Date of Judgment: 3/10/2014 Recorded: 03/17/2014 in Book/Reel/Liber: 10717 Page/Folio: 3729 as Instrument No.20140135674 in the County of Orange, State of Florida.

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Judgment in the amount of $325,336.63 with interest, and the full benefit of all the powers and of all the covenants and provisos therein contained, including the power to obtain and collect on a deficiency judgment, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Judgment.

    TO HAVE AND TO HOLD the said Judgment unto the said Assignee forever, subject to the terms contained in said Judgment.

BY: SELENE FINANCE, LP, AS ATTORNEY IN FACT FOR CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2012-13

On March 19, 2015

By: _Anthony D'Addona_

Print: _____Anthony D'Addona_____

Title: _____Foreclosure Manager_____


STATE OF _____Florida_____
COUNTY OF _____Duval_____

    On March 19, 2015 before me, _____Nazarene McKinney_____, a Notary Public in and for _____Duval_____ County in the State of _____Florida_____, personally appeared _____Anthony D'Addona_____, who is personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

                          Nazarene McKinney
                          Nazarene McKinney
Print

_Nazarene McKinney_
Signature

NAZARENE MCKINNEY
MY COMMISSION #FF028026
EXPIRES: June 17, 2017
(407) 398-0153  FloridaNotaryService.com

(This area for notarial seal)        Notary Expires: 6/17/2017

Filing # 11180679 Electronically Filed 03/11/2014 10:54:47 AM



Exhibit "B"

# IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
## IN AND FOR ORANGE COUNTY, FLORIDA

CHRISTIANA TRUST, A DIVISION OF
WILMINGTON SAVINGS FUND SOCIETY,
FSB, AS TRUSTEE FOR STANWICH
MORTGAGE LOAN TRUST, 2012-13,

        **Plaintiff,**               **Case No: 2013 CA 12147**

vs.

JODELL M. ALTIER, et al.,

        **Defendants.**

_____/

## SUMMARY FINAL JUDGMENT FOR FORECLOSURE

**THIS ACTION** was heard before the Court on Plaintiff's Motion for Summary Final Judgment on **March 10, 2014.** The Court, based upon the state of the record at the time of the hearing, finds that there is no material issue of fact of law and Grants Plaintiff's Motion. It is therefore,

**IT IS ADJUDGED** that:

1)    The Plaintiff's Motion for Summary Judgment is **GRANTED** as to all counts and against all Defendants of the Verified Complaint for Foreclosure. Service of the process has been duly and regularly obtained over all Defendants in this action. The evidence presented demonstrates beyond a preponderance of the evidence that the Plaintiff has the lawful right to enforce the Promissory Note and the Mortgage executed by **JODELL M. ALTIER and JOSEPH ALTIER.**

2)    This Court has jurisdiction over foreclosure cases pursuant to Florida Statutes. Service of process has been secured upon all Defendants.

Plaintiff holds a lien for the total sum in this Final Judgment which is superior, prior and paramount to the right, title, interest, claims, liens, encumbrances and equities of the following Defendants: **JODELL M. ALTIER, JOSEPH ALTIER, SUNTRUST BANK, PALMA VISTA HOMEOWNERS' ASSOCIATION, INC. and METROWEST MASTERS ASSOCIATION, INC.,** and any unknown heirs, devisees, grantees, creditors, and other unknown persons or unknown spouses claiming by, through and under any of the above-named Defendants, and all persons claiming any interest since the filing of the Lis Pendens on the following real property:

> **Lot 26A, PALMA VISTA REPLAT, according to the plat thereof as recorded in Plat Book 29, Page 45, Public Records of Orange County, Florida.**

3)      From the Affidavits in the file and the uncontested allegations of the Complaint, the correct legal description of the property is as shown hereinabove.  Plaintiff has a lien upon the real estate hereinafter described and such lien and security interests are prior, paramount and superior to the right, title, interest, claims, liens, encumbrances and equities of all Defendants and all persons claiming any interest since the filing of the Lis Pendens in the property described above.

**THIS JUDGMENT IS AGAINST JODELL M. ALTIER and JOSEPH ALTIER, AND AS RECORD TITLE OWNER TO THE REAL PROPERTY HEREIN DESCRIBED.**  All other Defendants' interests are in the form of inferior liens to Plaintiff's Note and Mortgage.  As such said liens are extinguished subject to any statutory right of redemption as outlined further in this Final Judgment.

4)      There is now due and owing to Plaintiff under the note and mortgage sued upon herein, the following sums of money, to-wit:

| | |
|---|---|
| **PRINCIPAL BALANCE DUE** | **$292,112.03** |
| **Interest** on the Note and Mortgage from 10/1/2011 to 03/10/2014 Per Diem of $24.01 at 3.125% | **$21,415.13** |
| **Escrow Advances** | **$10,283.35** |
| **Corporate Advances** | **$150.00** |
| **Expense Advances** | **$1,376.12** |
| **Subtotal** | **$325,336.63** |
| **Less Credits Due to Defendants:** | **$0** |
| **Positive Escrow Balance** | **$0** |
| **TOTAL DUE** | **$325,336.63** |

5) **ADDITIONAL COSTS & ADVANCES:**

6.1.  Any third party bidder is responsible for paying the Registry Fee and Documentary Stamps.  The Clerk shall compute the Registry Fee and Documentary Stamps and collect said amounts from the third party bidder.  Also, additional advances made by Plaintiff such as real estate taxes, insurance, and superior mortgagee payments may be added upon filing of an affidavit listing them upon further order of the Court.  Any such amount will be added to the total bid.

6.2.  Additionally, the total sum due Plaintiff shall include publication of Notice of Sale costs, interest at the legal rate per Sect. 55.03, F.S.(1994), from the date of this Final Judgment to the date of sale.  Said interest shall be applied in accordance with paragraph 5 above.

6) **CLERK'S SALE:**

DIRECTIONS TO SELL: Unless the Defendants shall, at any time prior to the sale of the real estate and other property and fixtures heretofore described, pay to the Plaintiff or its attorneys, the total sums found to be due Plaintiff, then said property shall be sold by the Clerk of the Court to the highest bidder for cash at public sale, free and clear of all right, title, interest, claim, lien, encumbrance, remainder, reversion, homestead, dower or equity of redemption whatsoever of the Defendants named herein, and all persons, firms or corporations claiming interest in said property subsequent to the filing of the Notice of Lis Pendens. If subsequent to the date of Plaintiff's Affidavit of Indebtedness and prior to the foreclosure sale, Plaintiff shall be required to advance any monies to protect its mortgage lien, then Plaintiff or its attorneys shall so certify to the Clerk of this Court, and the amount found due to Plaintiff shall be increased by the amount of such advances upon further order of the Court.

7.1.  DATE:    Said sale shall be held by the Clerk of this Court **at www.myorangeclerk.realforeclose.com in accordance with Chapter 45 Florida Statutes, on** _June 25_ , 2014 at 11:00 A.M., after the publication of notice thereof as required by Section 45.031 of the Florida Statutes, and promptly after such sale the Clerk shall complete and file a Certificate of Sale. If Plaintiff is the successful bidder at foreclosure sale it has the right to assign its bid by filing an Assignment of Bid form naming the party to which the bid has been assigned. The Clerk of the Circuit Court is to issue the Certificate of Title in accordance with Plaintiff's Assignment of Bid without further order of Court.

7.2. PLAINTIFF'S BID RIGHTS:  Plaintiff is hereby given leave to bid at said sale and to apply against any bid made by it the amount found to be due Plaintiff in this Final Judgment. Section 45.031(2) F.S. requires that the high bidder post with the Clerk a deposit equal to five percent of the final bid. However, if the Plaintiff or its assignee is the successful bidder, they are excluded from the deposit requirement. In the event that the successful bidder fails to place the requisite deposit in accordance with Florida Statutes with the Clerk, said bid is void. Additionally, if the final payment is not made within the prescribed period, the clerk shall re-advertise the sale and pay all costs of the sale from the deposit in accordance with Florida Statutes. Any remaining funds shall be applied toward the judgment.

7.3. CLERK'S DISBURSEMENT:  Out of the proceeds arising from the sale, the Clerk shall retain their fee. From the remainder of the proceeds, as far as they shall apply in satisfying the Plaintiff's remaining sum due, they are to send their check to Lender Legal Services, LLC, 201 East Pine Street, Suite 730, Orlando, Florida 32801, and payable to Plaintiff.

7.4. SURPLUS FUNDS:  **If this property is sold at public auction, there may be additional money from the sale after payment of persons who are entitled to be paid from the sale proceeds pursuant to this Final Judgment.** If said real property and other property shall sell for more than enough to pay Plaintiff all sums due it, then

the Clerk shall report any surplus proceeds to this Court. The Clerk of Court shall hold the surplus in the Registry of this Court. Thereafter, upon motion and notice of hearing to all parties, even those defaulted, the Court will adjudicate the rights thereto according to law and equity. GENERAL BANK v. WESTBROOK POINTE, INC., 548 So.2d 736, (Fla. 3rd DCA 1989).

**Subordinate lienholders claiming a right to funds remaining after the sale, must file a claim with the clerk no later than 60 days after the sale. If a subordinate lienholder fails to file a claim, said lienholder will not be entitled to any remaining funds.**

**If you are the property owner, you may claim these funds yourself. You are not required to have a lawyer or any other representation and you do not have to assign your rights to anyone else in order for you to claim any money to which you are entitled. Please check with the clerk of the court, Lydia Gardner, Orange County Clerk of Court, Attn: Circuit Civil Division, 425 North Orange Avenue, Courtroom 19-B, Orlando, Florida 32801, within ten (10) days after the sale to see if there is additional money from the foreclosure sale that the clerk has in the registry of the court.**

**If you decide to sell your home or hire someone to help you claim the additional money, you should read very carefully all papers you are required to sign, ask someone else, preferably an attorney who is not related to the person offering to help you, to make sure that you understand what you are signing and that you are not transferring your property or the equity in your property without the proper information. If you cannot afford to pay an attorney, you may contact Community Legal Services of Mid-Florida, Inc. at (407) 841-7777 to see if you qualify financially for their services. If they cannot assist you, they may be able to refer you to a local bar referral agency or suggest other options. If you choose to contact Community Legal Services of Mid-Florida, Inc for assistance, you should do so as soon as possible after receipt of this notice.**

7.5. RIGHT OF REDEMPTION: On filing the certificate of sale, defendants and all persons claiming under or against defendants since the filing of the notice of lis pendens shall be foreclosed of all estate or claim in the property, except as otherwise stated in this Judgment or as to claims or rights under chapter 718 or chapter 720, Florida Statutes, if any.

7) **TITLE TO SUCCESSFUL BIDDER:**

If no objections to said sale are filed in this proceeding within ten days from the filing of the Certificate of Sale, the Clerk shall forthwith complete and file a Certificate of Title as prescribed by law, after which the sale of the real estate and other property and fixtures shall stand confirmed as certified by the Clerk. Title shall pass fully and completely to the purchaser named in the Certificate of Title free and clear of any right, title, interest, estate, claim or other equity of the Defendants or any person claiming by, through or under them or any person claiming any interest in said real estate or other property and fixtures herein ordered to be sold shall stand confirmed as certified by the Clerk.

Title to the real estate and other properties sold shall pass fully and completely to the purchaser named in the Certificate of Title, free and clear of any right, title, interest estate, claim or other equity of the Defendants or any person claiming by, through or under them or any person claiming any interest in said real estate or other property and fixtures since the filing of the Notice of Lis Pendens herein. Plaintiff if successor bidder at the foreclosure sale, may assign its Bid by filing a Notice of Assignment and the Clerk of the Court shall issue the Certificate of Title to said assignee without further Order of Court.

      8.1. <u>CERTIFICATE OF TITLE:</u>  On filing the Certificate of Title the defendants in this action as mentioned above and all persons claiming under or against said defendants since the filing of the Lis Pendens shall be foreclosed of all estate or claim in the real property and the purchaser at the sale shall be let into possession of the property, subject to the provisions of the "Protecting Tenant at Foreclosure Act of 2009."

## 8) WRITS OF POSSESSION ISSUANCE:

If the Plaintiff is the purchaser at the sale, Plaintiff, its heirs, representatives, successors or assigns shall be placed in immediate possession of the aforedescribed premises. In the event the defendants fail to vacate said premises within ten days of the date of the foreclosure sale as provided above, the Clerk of the Court is directed to issue a Writ of Possession to the Plaintiff forthwith and upon further Order from this Court for the premises located at 2507 Roat Dr., Orlando, FL 32835.

## 9) COMPLIANCE WITH FLORIDA STATUTES CHAPTER 55:

Pursuant to Florida Statutes Chapter 55 the following is the address of the Plaintiff:

      1610 E. Saint Andrew Place, Suite B-150
      Santa Ana, California 29705

## 10) RETENTION OF JURISDICTION:

This Court retains jurisdiction for the purpose of making any further orders and judgments as may be necessary and appropriate herein, including but not limited to all claims for deficiencies.

**DONE AND ORDERED** in Chambers at Orange County, Florida this ____ day of

Original Order Signed

_____, 2014.

MAR 1 0 2014

Ted Coleman

_____ JUDGE _____

      Circuit Judge

Copies To:

Alberto T. Montequin, Esq.
Lender Legal Services, LLC
56 East Pine Street, Suite 201
Orlando, Florida 32801
Attorney for Plaintiff

Jodell M. Altier
2507 Roat Drive
Orlando, FL 32835

Joseph Altier
2507 Roat Drive
Orlando, FL 32835

Suntrust Bank
Pennington, Laurie A
200 South Orange Ave
(Fl-Orl-2034)
Orlando, Fl 32801

Palma Vista Homeowners' Association, Inc.
Katzman Garfinkel & Berger
300 N. Maitland Avenue
Maitland, FL 32751

Metrowest Masters Association, Inc.
Dominguez, Fernando Llcam
385 Douglas Avenue, Ste. 3000
Altamonte Springs, Fl 32714

Prepared by:

After Recorded return to
Jodell M. & Joseph E Altier
2507 Roat Dr
Orlando, FL 32835

DOC# 20130497796 B: 10636 P: 3463
09/18/2013 03:13:41 PM  Page 1 of 2
Rec Fee: $18.50
Deed Doc Tax: $0.70
DOR Admin Fee: $0.00
Intangible Tax: $0.00
Mortgage Stamp: $0.00
Martha O. Haynie, Comptroller
Orange County, FL
SO - Ret To: JOSEPH ALTIER

## Warranty Deed

**STATE OF FLORIDA**          )(
                             )(
**COUNTY OF ORANGE**         )(

KNOW ALL MEN BY THESE PRESENTS, that Jodell M. Altier & Joseph E. Altier, Trustees of Orange County Florida, grant and convey for Ten Dollars and other valuable considerations unto the said Grande Legacy Group (A Texas Joint-Stock Company) of Orange County, Florida all that certain residential lot and improvements known as:

2507 Roat Dr Orlando, FL 32835

That property located and more specifically described as that property;

Real property in the County of Orange, State of Florida –

*Legal Description:*

LOT 26A, PALMA VISTA REPLAT, ACCORDING TO THE PLAT OR MAP THEREOF AS RECORDED IN PLAT BOOK 29, PAGE 45, OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA.

PARCEL ID: 23-28-03-6577-00-260

To have and to hold the above described premises, together with all and singular, the rights and appurtenances thereto in any wise belonging unto the said Grande Legacy Group its heirs or assigns forever, and we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said Grande Legacy Group its heirs and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof. This Deed is subject to any liens and mortgages authorized and executed by the Grantors.

by _Jodell M. Altier_
Jodell M. Altier, Trustee

_Joseph E. Altier_
Joseph E. Altier, Trustee

_J nf Beck_
Witness
KATHERINE BECK
Print

_Michele Dobrucky_
Witness
Michele Dobrucky
Print

Warranty Deed
Page 1 of 2

**STATE OF FLORIDA** )(
)(
**COUNTY OF ORANGE** )(

    On the 17 day of Sept_____, 2013, before me came, Jodell M. Altier & Joseph E. Altier Trustees, known to me to be the individuals described in, and who executed the foregoing instrument, and he/her acknowledged that he/her executed the same, and in due form of law acknowledged the foregoing instrument to be his/her free act and deed and desired the same might be recorded as such.

Witness my hand and official seal.

Javier Solis
_____
Printed Name

_____
Notary Public in and for the State of Florida

My Commission Expires: 03/15/16

JAVIER SOLIS
Notary Public - State of Florida
My Comm. Expires Mar 15, 2016
Commission # EE 179839
Bonded Through National Notary Assn.

Warranty Deed
Page 2 of 2



Exhibit "D"

## 3270 Explorer: Bankruptcy Setup (BNK1/STAT/DESC)

### SENECA MORTGAGE SERVICING LLC -- 621

Loan Number: ███████                                      Borrower Name:  ALTIER,JODELL M

```
BNK1    █████████         BNK SETUP    A M1B P46/001  06/19/15  14:30:48
JM ALTIER    CHAPTER 07          11/01/11 TYPE CONV. RES.   ARM     M:B F:2
2507 ROAT DR ORLANDO FL 32835                                      GRP
~STAT----------------------------* STATUS *-----------------------------
STAT   PROC   CHAP   FILING DT   BANKRUPTCY CASE #    COURT      TEMPLATE
 A     M1B     07    030415      15-01838           CT00007080   CH07DEL
  NOTICE     CREDITOR    PF OF CLM   CONFIRM    REPAY   STAY   PMTS   ASSET CONV
 RECEIVED     MEETING     FILING    HEARING     PER    LIFT  INSIDE  CASE  DATE
  030915      041015      MMDDYY     MMDDYY              Y      N      Y  MMDDYY
  TRUSTEE    MTG CO ATTY   DEBTOR ATTY    REGION CODE
TR00001125   LA00000638   BA00003038        00
--------------------------* ADDITIONAL MESSAGES *-----------------------------
*** LOAN IS SUSPENDED FORECLOSURE ***  -=SPOC=-
PRESS PF14 FOR MEMOS                   ACTIVE CH 7 BANKRUPTCY
LOSS MIT IND = 1 LITIG/TITLE PROBLEM   ACTIVE LOSS MITIGATION
-----DESC----------------------* BNK DESCRIPTIONS *-----------------------------
 BNK STATUS:  ACTIVE              RMVL REAS:
    CHAPTER:  07                  RMVL DATE:
FOR1 STATUS:  SUSPEND             PREPT DUE:
   TEMPLATE:  CH07DEL             PSTPT DUE:
MTG CO ATTY:  LENDER LEGAL SERVICES   BNK SETUP: 04-23-15
                                      FILING DT: 03-04-15
   PROP INSP:  *** INVALID PROP INSP **   PROCESSOR: MARK BOSCO      3640
```

## 3270 Explorer: Bankruptcy Proof of Claim (BNKC/PMTS)

SENECA MORTGAGE SERVICING LLC -- 621

**Loan Number:** ▉▉▉▉▉▉                                    **Borrower Name:** ALTIER,JODELL M

```
BNKC ▉▉▉▉▉▉        BNKRUPTCY PROOF OF CLM CH 07 INV P46 06/19/15 14:30:57
JM ALTIER    DUE 11/01/11  PMT   2,574.23 TYPE CONV. RES    ARM
2507 ROAT DR          ORLANDO FL 32835
---------------------- PRE-PETITION CLAIM ----------------PRO M1B-----
CLAIMED    ACKNOWLEDGED  CONFIRMED    CLAIM TOT    CONFIRMED TOT   PRIN BALANCE
06-22-15                              .00 *             .00       292,112.03
REVISED CLAIM MONTH: MM/YY   PRE-PETITION CLAIM:  Y   CLAIM DETAIL OVERRIDE:  N
----------------- PAYMENTS -----------------  ---------- LATE CHARGES ---------
DUE DATE - DUE DATE     AMOUNT       TOTAL   NUM   AMOUNT      TOTAL  PD-TO-DT




USE PF1 TO SCROLL THROUGH CLAIM TYPES.
```

## 3270 Explorer: Bankruptcy Receipts (BNKA/DEBT/SUSP)

SENECA MORTGAGE SERVICING LLC -- 621

**Loan Number:** ███████        **Borrower Name:** ALTIER,JODELL M

```
BNKA  ███████           BANKRUPTCY RECEIPTS   CH 07  INV P46  06/19/15 14:31:03
JM ALTIER      DUE 11/01/11  PMT   2,574.23  TYPE CONV. RES.   ARM      MAN B
2507 ROAT DR               ORLANDO FL 32835                       GROUP B
-DEBT--------------------* POST-PETITION PAYMENTS *------------PRO M1B------
RECEIVED  PP PMTS EFF DATE  1098   CHECK DATE / NUMBER    L/C ADJ  CNT REASON
         .00  00  MM/DD/YY           MM/DD/YY                     .00   0
PMTS   PMT AMT      L/C PD      SUSPENSE   NSF PD     ESCROW    ADTL PRIN   OVR
 1     2574.23        .00          .00       .00       .00        .00     1

              PLN 1 AMT   PLN 1 DUE DTE   PLN 2 AMT  PLN 2 DUE DTE
                   .00    MM/DD/YY            .00    MM/DD/YY   PMT  1 OF  0
-------------------* PRESS PF2 FOR ADDITIONAL MESSAGES *-------------------
BANKRUPTCY DISMISSED 03/19/15        MOTION FOR RELIEF REQ 04/24/15
POST-PETITION PAST DUE 329 DAYS      -=SPOC=-
PRESS PF14 FOR MEMOS                 ACTIVE LOSS MITIGATION
-SUSP--------------------------------------------* POST-PETITION *------
TRUSTEE SUSP:          .00              DUE DATE  PAYMENT  LATE CHG
                                        11-01-11  2574.23    78.67
DEBTOR SUSP:           .00       00  PP-PMTS
     POST 1 DUE:                  PMT
     POST 2 DUE:                  PMT
LATE CHARGES DUE:   155.52    NSF FEES DUE:      .00
MSP SUSPENSE:          .00    GRACE DAYS:  15 PROCESSOR: MARK BOSCO
```

## 3270 Explorer: Bankruptcy Payments (BNKB/POST/SUSP)

### SENECA MORTGAGE SERVICING LLC -- 621

**Loan Number:** ▮▮▮▮▮▮▮                                    **Borrower Name:** ALTIER,JODELL M

```
BNKB ▮▮▮▮▮▮▮        BANKRUPTCY PMTS CH 07  INV P46  06/19/15  14:31:07
JM ALTIER     DUE 11/01/11  PMT   2,574.23  TYPE CONV. RES.    ARM    MAN B
2507 ROAT DR            ORLANDO FL 32835                       GROUP B
-POST-------------- POST-PETITION PAYMENT DISTRIBUTIONS ---------PRO M1B-----
LOAN                        LATE     LOAN
PMTS    PAYMENT    ESCROW   CHARGE   DUE DATE    NSF PAID   EFF DATE 1098
 1      2574.23      .00      .00   11-01-11         .00   MM/DD/YY
 0          .00      .00      .00                    .00   MM/DD/YY
                         L/C ADJ    COUNT   REASON      POST-PETITION
                             .00      0       ▮▮       LOAN DUE DATE
                                                          11-01-11
---------------------* PRESS PF2 FOR ADDITIONAL MESSAGES *-------------------
POST-PETITION PAST DUE 329 DAYS       BANKRUPTCY DISMISSED 03/19/15
MOTION FOR RELIEF REQ 04/24/15        -=SPOC=-
PRESS PF14 FOR MEMOS                  ACTIVE LOSS MITIGATION
-SUSP--------------------------------------------* POST-PETITION *------
TRUSTEE SUSP:         .00              DUE DATE  PAYMENT  LATE CHG
                                      11-01-11  2574.23    78.67
DEBTOR SUSP:          .00    00  PP-PMTS
 POST 1 SUSP:         .00
 POST 2 SUSP:         .00
LATE CHARGES DUE:   155.52    NSF FEES DUE:
MSP SUSPENSE:         .00    GRACE DAYS:  15 PROCESSOR: MARK BOSCO
```

## 3270 Explorer: Bankruptcy Plan Setup (BNKP)

### SENECA MORTGAGE SERVICING LLC -- 621

**Loan Number:** ████████                                    **Borrower Name:** ALTIER,JODELL M

```
BNKP  ████████            BANKRUPTCY PLAN SETUP  CH 07 PRO M1B 06/19/15  14:31:12
JM ALTIER    DUE 11/01/11                     TYPE CONV. RES.    ARM
2507   ROAT DR        ORLANDO                 FL 32835
------------------------------SUSPENSE BALANCES----------------------------------
POST-PET DUE      TRUSTEE       DEBTOR                   POST-1        POST-2
 11/01/11           .00          .00                       .00          .00
                 MSP SUSP
                    .00        ---------------PLAN INFORMATION---------------
                               PRE-PETITION  POST-PETITION 1  POST-PETITION 2
EXPECTED 1ST PLAN PMT DATE      11/01/11
           PLAN DUE DATE        11/01/11
           PLAN PAYMENT              .00            .00              .00
     PLAN PAYMENT FREQUENCY         12              00               00
NEXT LOAN DUE DATE IN PLAN      11/01/11
 NEXT LOAN PAYMENT IN PLAN           .00            .00              .00
     PAYMENTS INSIDE PLAN             N

            CONFIRMED *              .00            .00              .00
           PAID-TO-DATE             .00            .00              .00
         UNPAID BALANCE            .00            .00              .00
     PAYMENT MORATORIUM
         MORATORIUM END
```

### 3270 Explorer: Bankruptcy History (BNKH)
SENECA MORTGAGE SERVICING LLC -- 621

**Loan Number:** ███████          **Borrower Name:** ALTIER,JODELL M

```
BNKH  ███████        MMYY BANKRUPTCY HIST  CH 07  INV      06/22/15 14:31:17
JM ALTIER     DUE 11/01/11  PMT   2,574.23  TYPE CONV. RES      ARM
2507 ROAT DR              ORLANDO FL 32835
------------------------------------------------------------PRO M1B ----
ACT    DATE      AMOUNT      DUE DATE
A
       04/24/15                        MOTION FOR RELIEF REQUESTED
       04/23/15                        BNK ADDED CHAP 07 PROC M1B
       03/20/15                        REMOVE --
       03/20/15                        OTHER REASON FOR COMPLETION
       03/20/15                        03  03/19/15  DISMISSAL
       03/10/15                        MOTION FOR RELIEF REQUESTED
       03/09/15                        BNK ADDED CHAP 07 PROC M1B
```

**3270 Explorer: Delinquency 1 - Primary Collection (DLQ1/COM2)**

SENECA MORTGAGE SERVICING LLC -- 621

Loan Number: ▄▄▄▄▄▄▄▄▄▄▄          Borrower Name:  ALTIER,JODELL M

```
  DLQ1                      QX   D E L I N Q U E N C Y  OWNR n/a 06/19/15  14:31:21
 13-A CONV. RES. ARM    PER/CLS/OFF  B/LI/19 AGE: 12Y  7M IR:  3.12500 INV: P46
 DUE( 44)   113,201.40  DUE 11/01/11( )(00/00)  ASSUM:           ACQ:04/22/14
 LATE CHRG    155.52  PAYMT     @   2,574.23 P: 2507 ROAT DR
 BAD CK FEES     .00  L/C AMT         78.67   ORLANDO FL 32835
 OTHER FEES      .00  PAYMT + LC   2,652.90 M:
 TOT DUE   113,356.92* PRIN BAL  292,112.03
 SUSPENSE        .00  P&I          1,573.47   56 E PINE ST SUITE
 NET DUE   113,356.92  DLQ  2 TIME,PAY  0 DAY   ORLANDO FL 32801
 C/S   584 JODELL M ALTIER
 C/D 09/14 JOSEPH ALTIER

  -IMD:N------------------- * ADDITIONAL MESSAGES * -=======================
 MISSING TELEPHONE NO              -=SPOC=-
 PRESS PF14 FOR MEMOS          ACTIVE CH 7 BANKRUPTCY
  -COM2-------------------* COMMENTS *------------------------------------
  DATE  USR            CONTACT RESPONSE REASON RECALL       F/B  REMIND

 052715 *** < OCCUPANCY UNKNOWN   CONDITION ON 052615      NFR   >
 042815 *** < OCCUPANCY UNKNOWN   CONDITION ON 042715      NFR   >
 042215 G2S A3P TEL       QRPC NO ARRG MADE                          042415
 042215 G2S <SW DAVID OF LENDER LEGAL SERVICES, LOOKING T/SPK W/>
            <AM-M2D TRANS T/M2D VM;SENT AM-M2D EMAIL W/INFO    >
```

## 3270 Explorer: History of Corporate Advance Tran (DDCH)

### SENECA MORTGAGE SERVICING LLC -- 621

**Loan Number:** ███████        **Borrower Name:** ALTIER,JODELL M

```
 DDCH ████████    CORPORATE ADVANCE HISTORY SCREEN  P46/001 06/19/15  14:31:27
 JM ALTIER      L:A F:S B:A R:    11/01/11 TYPE CONV. RES.    ARM    MAN B
 2507 ROAT DR ORLANDO FL 32835
------------------------------------------------------------- * MORE *-------
   R_____ C/A PAYEE _____ TRAN ____ RSN ____ USR _____ ESC PAYEE
     SORT              SORT        SORT        SORT           SORT
   DATE RANGE: _____ THRU _____
                                       C/A
   TRN USR DATE     TRAN AMT   ESC PAYEE  PAYEE RSN  DESCRIPTION      ORIG DSB
   631 NIV 05/07/15    12.00   CA00004025 90R10 INSP INSPECTION
   631 NIV 04/30/15    11.00   CA00004025 90R10 BISP BK INSPECTION
   630 NIV 04/30/15   200.00   LA00000638 90R10 ATTF ATTORNEY FEES
   631 NIV 03/17/15    11.00   CA00004025 90R10 PISP OCCUPANCY INSP
   631 NIV 03/17/15    11.00   CA00004025 90R10 PISP OCCUPANCY INSP
   631 NIV 01/26/15    11.00   CA00004025 90R10 PISP OCCUPANCY INSP
   631 NIV 12/09/14    11.00   CA00004025 90R10 PISP OCCUPANCY INSP
   632 NIV 12/01/14   463.62   LA00000638 90R10 SRVF SERVICE FEE
   630 NIV 12/01/14 4,690.50   LA00000638 90R10 ATTF ATTORNEY FEES
   631 NIV 09/26/14    12.00   CA00004025 90R10 INSP INSPECTION
```

### 3270 Explorer: History of Corporate Advance Tran (DDCH)

SENECA MORTGAGE SERVICING LLC -- 621

**Loan Number:** ████████    **Borrower Name:** ALTIER,JODELL M

```
DDCH ██████████    CORPORATE ADVANCE HISTORY SCREEN   P46/001 06/19/15  14:31:31
JM ALTIER      L:A F:S B:A R:    11/01/11 TYPE CONV. RES.     ARM    MAN B
2507 ROAT DR ORLANDO FL 32835
-----------------------------------------------------------  * END *--------
R_____ C/A PAYEE      _____ TRAN      _____ RSN      _____ USR          _____ ESC PAYEE
   SORT                  SORT            SORT            SORT                 SORT
DATE RANGE: _____ _____ THRU  _____ _____

                                            C/A
TRN USR DATE      TRAN AMT    ESC PAYEE   PAYEE RSN  DESCRIPTION      ORIG DSB
631 NIV 09/26/14      12.00   CA00004025  90R10 INSP INSPECTION
631 NIV 07/11/14      12.00   CA00004025  90R10 INSP INSPECTION
631 NIV 06/10/14      12.00   CA00004025  90R10 INSP INSPECTION
745 CPI 04/24/14   9,720.47               01R00 ACQN ELI LOAN CONV
```

```
** TOTAL SELECTED DDCH CORP ADV TRANS:        15,189.59
```

## 3270 Explorer: Irregular Payments (PMT2/DUE)

### SENECA MORTGAGE SERVICING LLC -- 621

**Loan Number:** ███████                                    **Borrower Name:** ALTIER,JODELL M

```
  PMT2 ████████    GRP ___    IRREGULAR PAYMENTS      06/19/15  14:31:36
  NAME JM ALTIER   BILL MODE 9              LOAN TP 13-A CONV. RES    ARM
  DUE 11/01/11 INV P46 PERSON CD B PMT LC    78.67 MIN LC   .00 IOE IND 2 ___
     (PF3:DWND)                       NEXT LOAN NUMBER:
  AMT RECVD PMTS     O/N   REG PMT   REG PMT AMT  CURTAILMENT 2ND MTG ESCROW (-)
                                        2574.23
  EFF DT 1098   SUSP(-)   FEE & CD  LIFE(-) A&H(-) MISC(-) REPRES(-)    1000.76
                                                                  CORP ADV(-)

                 .00                    .00    .00    .00       .00
  ACT OVR SD  TO SUSP   FEE & CD   FEE & CD   FEE & CD   FEE & CD PAYEE
                                                                 REASN
  --------------------------* ADDITIONAL MESSAGES *------------------------
  -=SPOC=-                         PRESS PF14 FOR MEMOS
  ACTIVE CH 7 BANKRUPTCY           LOSS MIT IND = 1 LITIG/TITLE PROBLEM
  ACTIVE LOSS MITIGATION
  -----~DUE-------------------CHG DATE------REG PMT---NUM--------TOT REG PMT-
  REG PMTS    113,201.40                  2,574.23    2         5,148.46
  LC BAL         155.52    01/01/12       2,555.85   24        61,340.40
  NSF BAL           .00    01/01/14       2,555.86   12        30,670.32
  OTHER FEES        .00    01/01/15       2,555.85    2         5,111.70
  INTEREST DUE      .00    03/01/15       2,732.63    4        10,930.52
  ESCROW ADV   36,482.44
  TOT DUE     149,839.36 *
  PRIN BAL    292,112.03
```

## 3270 Explorer: Payoff Fees and Per Diem (PAY3)

### SENECA MORTGAGE SERVICING LLC -- 621

**Loan Number:** ▮▮▮▮▮▮              **Borrower Name:** ALTIER,JODELL M

```
PAY3   ▮▮▮▮▮▮      AS-OF 06/22/15 PAYOFF FEES AND PERDIEM   06/19/15  14:31:43
-----------------------------------------------------------------------------
----- 1ST MORT PERDIEM INTEREST - ASSESS WAIVE ------- ADDITIONAL FEES -------
  FROM        RATE      AMOUNT     N  N 1        .00  FAX FEE
06/22/15    03.00000     24.01     N  N 2        .00
12/01/15    00.00000  CALCULATED   N  N 3        .00  RECORDING FEE
                                   N  N 4        .00
                                   Y  N 5        .00  ATTY FEE & COST
                                   N  N 6        .00
                                   N  N 7        .00
                                   N  N 8        .00
                                      N        155.52 ACCUM LATE CHARGES
                                      N          .00  ACCUM NSF CHARGES
                                      N          .00  OTHER FEES DUE
------------------------------- MEMO ITEMS -----------------------------------
PAYMENT L/C     77.75              TYP 13 ST 09 CNTY 095    INV P46 001
-----------------------------* ADDITIONAL MESSAGES *-------------------------
-=SPOC=-                           PRESS PF14 FOR MEMOS
ACTIVE CH 7 BANKRUPTCY             LOSS MIT IND = 1 LITIG/TITLE PROBLEM
ACTIVE LOSS MITIGATION             SUSPENDED FORECLOSURE
LOAN IS IN FORECLOSURE, F/C STOP = 2  PROC STOP = 5  BANKRUPTCY
DISB STOP = 5 BANKRUPTCY           LOAN PAST DUE  44 MONTHS
-----------------------------------------------------------------------------
```

## 3270 Explorer: Payoff Calculation Totals (PAY4/PG1)

SENECA MORTGAGE SERVICING LLC -- 621

**Loan Number:** ▆▆▆▆▆▆▆            **Borrower Name:** ALTIER,JODELL M

```
PAY4 ▆▆▆▆▆▆▆      AS-OF 06/22/15  PAYOFF CALCULATION TOTALS 06/19/15  14:31:46
NAME JM ALTIER   CONTACT NAME JODELL M ALTIER
--------------------------------------------------------------------------------
PRINCIPAL BALANCE        292,112.03        ----------- RATE CHANGES -----------
INTEREST 06/22/15         32,713.62  CALC  INT FROM    RATE          AMOUNT
PRO RATA MIP/PMI                .00        10/01/11    3.12500       1,525.58
ESCROW ADVANCE            36,482.44        12/01/11    3.00000      31,188.04
ESCROW BALANCE                 .00        06/22/15
SUSPENSE BALANCE               .00
HUD BALANCE                    .00
REPLACEMENT RESERVE            .00
RESTRICTED ESCROW              .00
TOTAL-FEES                     .00
ACCUM LATE CHARGES          155.52
ACCUM NSF CHARGES              .00
OTHER FEES DUE                 .00
PENALTY INTEREST               .00
FLAT/OTHER PENALTY FEE         .00        TOTAL INTEREST            32,713.62
CR LIFE/ORIG FEE RBATE         .00        TOTAL TO PAYOFF          376,653.20
RECOVERABLE BALANCE       15,189.59  NUMBER OF COPIES: 1   PRESS PF1 TO PRINT

MULTIPLE IR CHANGE PERIODS CROSSED
--------------------------------------------------------------------------------
```

## 3270 Explorer: Fee Activity Ledger (FEE1)

SENECA MORTGAGE SERVICING LLC -- 621

**Loan Number:** ████████    **Borrower Name:** ALTIER,JODELL M

```
FEE1 ████████              FEE ACTIVITY LEDGER          06/19/15  14:31:56
SELECTED CODES 1 _____   FROM MMDDYY                  PAGE    1   OF   1
JODELL M ALTIER                           56 E PINE ST SUITE
JOSEPH ALTIER                             ORLANDO
                                                        FL 32801-0000
```

| FEE<br>CODE | DESCRIPTION | DATE<br>ASSESSED | AMOUNT | DATE<br>PAID | AMOUNT | DATE<br>WAIVED | AMOUNT |
|---|---|---|---|---|---|---|---|
| 1 | LATE CHARGE | 07-16-14 | 77.76 | | | | |
| 1 | LATE CHARGE | 08-18-14 | 77.76 | | | | |

```
NET      155.52     TOTALS      155.52              0.00              0.00
```

## 3270 Explorer: Loan Status 1 (P190)

SENECA MORTGAGE SERVICING LLC -- 621

**Loan Number:** ▮▮▮▮▮▮          **Borrower Name:** ALTIER,JODELL M

```
 P190 LN ▮▮▮▮▮         L O A N   S T A T U S   1              06/19/15
NAME JM ALTIER    INV-LN P46-001-0005043536 DUE 11-01-11 TYPE 13-A
BR 19 MAN B P-TYPE 1 INT .0312500 FIRST PB  292,112.03 2ND PB       .00
PDYTD INT      .00 PRIN       .00 TAX       .00 HAZ  1778.92 TERM 360
RECON 139    GUAR             MIP           .00 LIEN      .00 MAT 12-32
BILL  JODELL M ALTIER             CONTRACT/POOL NO
NAME  JOSEPH ALTIER             TAX NAME JODELL M ALTIER
&     56 E PINE ST SUITE        PROPERTY  2507     ROAT DR
ADDR  ORLANDO          FL 32801 ADDRESS  ORLANDO            FL 32835
BALANCES            PAYMENT              STOPS        OTHER
ESCROW         .00  P&I        1573.47   PROCESS 5    LEVEL SF       .00
ADVANCE   36482.44  2ND P&I        .00   BAD CK  0    SF RATE .00000000
SUSPENSE       .00  ESCROW     1000.76   PIF     0
LC DUE     155.52   REPL           .00   FC      2    LAST ANAL   12-14
REPL RES       .00  MISC           .00   NOTICE  B    LOAN DATE 11-07-02
RES ESC        .00  LIFE           .00   ANALYZE 0    INT/ESC          2
INT DUE        .00  A&H            .00   A&H     0    TEL 1 000-000-0000
HUD            .00  BSC            .00   LIFE    0    TEL 2 000-000-0000
DEFICIT        .00  TOTAL      2574.23   DISB    5    TEL CD           0
DISC BAL       .00  HUD-P          .00   CASHIER 5    TIMES DELQ       2
ORIG DIS       .00  NET PMT    2574.23   ACCRUAL 3    BILL MODE        9
ORIG LOAN  346000   PMT FREQUENCY   12   L/C     6    FC TRACK         S
   ACTIVE B/R - SEE MEMO PAD      MEM10005043536    SEE SCREEN P192
```

## 3270 Explorer: Payment Change Maintenance (PCH2/HPMT)

SENECA MORTGAGE SERVICING LLC -- 621

**Loan Number:** ███████        **Borrower Name:** ALTIER,JODELL M

```
PCH2  ███████        HPMT 11/01/11  PAYMENT CHANGE MAINTENANCE  06/19/15 14:32:05
JM ALTIER      1ST PMT 01/01/03  INV P46/001  TYPE CONV. RES.    ARM      MAN B
J  ALTIER      CUR PMT 11/01/11  PB    292,112.03    IR  3.12500           GRP D1G
-----------------------* HISTORY OF PAYMENTS *---------------------------------
PMT DT     11/01/11          01/01/12          01/01/13          01/01/14
   IR       3.12500          3.00000           3.00000           3.00000
   P&I     1,573.47          1,555.09          1,555.09          1,555.10
COUNTY      800.61            800.61            800.61            800.61
  CITY        0.00              0.00              0.00              0.00
HAZARD      200.15            200.15            200.15            200.15
   MI         0.00              0.00              0.00              0.00
  LIEN        0.00              0.00              0.00              0.00
   OS         0.00              0.00              0.00              0.00
  MISC        0.00              0.00              0.00              0.00

   A&H        0.00              0.00              0.00              0.00
  LIFE        0.00              0.00              0.00              0.00
  REPL        0.00              0.00              0.00              0.00
   HUD        0.00              0.00              0.00              0.00
 2 P&I        0.00              0.00              0.00              0.00
   NET     2,574.23          2,555.85          2,555.85          2,555.86
PAYMNT                      RATE CHANGE       RATE CHANGE       RATE CHANGE
CHANGE                      PMT CHANGE        PMT CHANGE        PMT CHANGE
REASON
```

### 3270 Explorer: Payment Change Maintenance (PCH2/HPMT)

SENECA MORTGAGE SERVICING LLC -- 621

**Loan Number:** ▮▮▮▮▮▮▮▮                                           **Borrower Name:** ALTIER,JODELL M

```
PCH2 ▮▮▮▮▮▮▮▮     HPMT 11/01/11  PAYMENT CHANGE MAINTENANCE  06/19/15 14:32:05
JM ALTIER      1ST PMT 01/01/03  INV P46/001  TYPE CONV. RES.   ARM    MAN B
J  ALTIER      CUR PMT 11/01/11  PB    292,112.03  IR  3.12500          GRP D1G
-----------------------* HISTORY OF PAYMENTS *-----------------------------
  PMT DT   01/01/15          03/01/15          01/01/16
     IR    3.00000           3.00000           UNAV----
    P&I    1,555.09          1,555.09          ----UNAV----
 COUNTY    800.61            836.42            836.42
   CITY    0.00              0.00              0.00
 HAZARD    200.15            341.12            341.12
     MI    0.00              0.00              0.00
   LIEN    0.00              0.00              0.00
     OS    0.00              0.00              0.00
   MISC    0.00              0.00              0.00

    A&H    0.00              0.00              0.00
   LIFE    0.00              0.00              0.00
   REPL    0.00              0.00              0.00
    HUD    0.00              0.00              0.00
  2 P&I    0.00              0.00              0.00
    NET    2,555.85          2,732.63
 PAYMNT
 CHANGE
 REASON
```