UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                          Case No.: 6:15-bk-01838-KSJ
                                                Chapter 7
JODELL M. ALTIER,

        Debtor.
_____/

## OBJECTION TO EXEMPTIONS WITH INCORPORATED MEMORANDUM OF LAW

### NOTICE OF OPPORTUNITY TO OBJECT AND FOR HEARING

        Pursuant to Local Rule 2002-4, the Court will consider this motion, objection, or other matter without further notice or hearing unless a party in interest files an objection within twenty-one (21) days from the date set forth on the proof of service attached to this paper plus an additional three days for service. If you object to the relief requested in this paper, you must file your response with the Clerk of the Court at George C. Young Federal Courthouse, 400 West Washington Street, Suite 5100, Orlando, FL 32801 and serve a copy on the Trustee's attorney, Michael A. Nardella, Esq., Nardella & Nardella, PLLC, 250 E. Colonial Dr., Ste 102, Orlando, FL 32801, and a copy on the U.S. Trustee, George C. Young Federal Courthouse, 400 West Washington Street, Suite 1100, Orlando, FL 32801, within the time allowed.

        If you file and serve a response within the time permitted, the Court may schedule and notify you of a hearing, or the Court may consider the response and may grant or deny the relief requested without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

        Gene T. Chambers, Trustee in Bankruptcy for Jodell M. Altier ("Trustee"), by and through her undersigned counsel, and pursuant to Rule 4003(b), F.R.B.P., hereby objects to the claims of exemptions by the Debtor Jodell M. Altier ("Debtor"), and in support, states as follows:

### FACTUAL BACKGROUND

        1.      This bankruptcy was commenced by the filing of a voluntary chapter 7 bankruptcy petition for Debtor on March 4, 2015, in Case Number 6:15-bk-01838-KSJ (the "Petition Date").

**A.       The Original Schedules**

2.       On March 18, 2015, the Debtor filed her original Schedules and Statement of Financial Affairs (Doc. 9) (the "Original Schedules").

3.       The Original Schedules list no real property.

4.       The Original Schedules list no exempt property.

5.       The Original Schedules list no ownership interests in any corporate entities of any kind.

**B.       Discovery of Undisclosed Assets and Transfers**

6.       During the Trustee's investigations, however, the Trustee learned the Debtor transferred, or purportedly transferred, four separate real properties to a Texas Joint Stock Company called Grande Legacy Group (the "Company").

7.       The four real properties which Debtor transferred are as follows:

   a.       2507 Roat Drive, Orlando, FL (the "Roat Drive Property");

   b.       216 NE 10th Avenue, Gainesville, FL (the "Gainesville Property");

   c.       2122 Kettle Drive, Orlando, FL (the "Kettle Drive Property"); and

   d.       280 Lanternback Island Drive, Satellite Beach, FL (the "Lanternback Property," and together with the Roat Drive Property, the Gainesville Property, and the Kettle Drive Property, the "Properties").

8.       While the Debtor did disclose the transfer of the Roat Drive Property and the Gainesville Property on the original Statement of Financial Affairs, no disclosure was made at all of the Kettle Drive Property and the Lanternback Property.

9.       Fittingly, the undisclosed Kettle Drive Property and the Lanternback Property were completely unencumbered, while the disclosed properties were subject to mortgages.

10.     In addition, the Trustee learned that Debtor claims ownership of the Company, the purported owner of all four Properties, although no such ownership interest was disclosed on the Original Schedules.

11.     In relation to these and other failures to disclose, creditor Goshen Mortgage, LLC ("Goshen") filed an action under 11 U.S.C. § 727 to deny Debtor a discharge.

12.     During a deposition of Debtor by Goshen, Debtor explained that she transferred the Properties for "asset protection" purposes.  *See* Transcript of the Deposition of Jodell M. Altier taken November 5, 2015 (the "Deposition Transcript") (11:1-4).  A copy of the Deposition Transcript is attached hereto as **Exhibit A**.

13.     Debtor further admitted that the "asset protection" was a purposeful design to prevent specific, identified creditors from reaching the Debtor's property if such creditors "came after me."  (Deposition Transcript at 15:4-9).

14.     Debtor admitted that when she prepared her schedules she knew about her purported ownership of the Company, but did not list it "Because I didn't think it had a value" (Deposition Transcript at 26:5-7) even though Debtor had recently transferred the Properties into the Company, two of which were completely unencumbered.

15.     In fact, the Debtor produced a stock certificate which is a "bearer shares" certificate such that any party holding the physical certificate is the sole owner of all 1,000 shares of the Company.  A copy of the certificate is attached hereto as **Exhibit B**.

16.     At the hearing before this Court on February 1, 2016, the Debtor clarified for the Court that her prior ownership interest in the Roat Drive Property and the other Properties had been replaced, exchanged in fact, with an ownership interest in the Company, stating that

3

I have stock. . . . I don't have property. . . . So I can't have it both ways.

*See* Transcript of Hearing on Motion for Relief from Stay on February 1, 2016 (the "Hearing Transcript") (10:24-11:6).  A copy of the Hearing Transcript is attached hereto as **Exhibit C**.

17.     On January 21, 2016, the Trustee filed a Complaint against the Debtor, *et al*, for the recovery of three of the Properties as fraudulent transfers and for declaratory relief establishing the Trustee as the sole owner of the Properties.

**C.      The Amended Schedules**

18.     In response to the Trustee's and Goshen's actions, on March 23, 2016, the Debtor filed her Amended Schedules (Doc. 83) (the "Amended Schedules") and her Amended Statement of Financial Affairs (Doc. 84) (the "Amended SOFAs").

19.     The Amended Schedules are very different from the Original Schedules.  The Amended Schedules list six pieces of real property on Schedule A, including the Properties at issue.

20.     Inexplicably, the Amended Schedules list the Debtor's ownership interest in the Properties as some sort of "Beneficial Interest" but also confirming that the Properties are still owned by the Company.

21.     The Amended Schedules also now show an ownership interest in the Company, but now limit that ownership to 50% of the 1,000 shares.

22.     Most problematic, the Debtor's Amended Schedules include a totally revamped Schedule C, which now includes multiple articles of property listed as exempt over one year after the filing of the Original Schedules.

23.     Some of this newly minted exempt property includes two vehicles and a boat which Debtor already purchased back from the Trustee (Docs. 47 & 59).

24.     The Debtor has also now listed the Roat Drive Property as exempt as her homestead, even though the Roat Drive Property is also still listed as owned by the Company. To solve this apparent paradox, the Debtor further clarifies that it is her "beneficial interest" in the Roat Drive Property that is exempt as homestead.

## MEMORANDUM OF LAW

**A.     Homestead Must Be Owned by a "Natural Person"**

25.     The Florida Constitution protects Florida homes from creditors' claims in Article X, Section 4(a)(1) of the Florida Constitution, which provides:

> (a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for house, field or other labor performed on the realty, the following property owned by a **natural person**:
>
>      (1) a homestead . . .

Fla. Const. Art. X, § 4 (emphasis added).

26.     The Debtor asserts that she owns a "beneficial interest" in the Roat Drive Property but that the Roat Drive Property is actually owned by the Company, which is a "Texas Joint Stock Company."

27.     Texas courts have defined "a joint stock company as a 'partnership whereof the capital is divided or agreed to be divided into shares so as to be transferable without the express consent of the copartners.'" *Thompson v. Schmitt*, 115 Tex. 53, 64 (Tex. 1925). "[A] member of a voluntary, unincorporated stock association is 'a co-partner in a partnership in the shape of a joint-stock company.'" *Id.*

28.     The Texas Supreme Court has expressly held that Texas Joint Stock Companies are not trusts and the ownership in such a company is not a "beneficial interest" because "the certificate holders, by contract, have combined their capital to carry on a joint mercantile business as principals, and thereby secured rights not to be disregarded by their agents." *Id.* at 67-68.  In other words, the assets of a Texas Joint Stock Company are ultimately controlled by the principals, not by independent trustees, thus they are not trusts, but partnerships.

29.     Florida law is clear that property held by a partnership cannot be homestead. "Property acquired by a partnership is property of the partnership, not the individual partners. . . . Thus, partnership property cannot constitute the homestead property of one partner prior to the dissolution of the partnership." *Buchman v. Canard*, 926 So. 2d 390, 392 (Fla. 3d DCA 2005).

30.     As the Company is treated under Texas law as a partnership, no property owned by the Company can be homestead.  By the terms of the Debtor's own Amended Schedules, the Roat Drive Property is owned by the Company and therefore cannot be Debtor's homestead.

**B.      The Debtor Has Taken Actions Inconsistent with Her Claim of Homestead**

31.     "A homeowner . . . can forfeit the right to claim a home exempt." *In re Franzese*, 383 B.R. 197, 203 (Bankr. M.D. Fla. 2008).

32.     An owner of property does "not have the intention needed to establish a homestead where he execute[s] a deed of conveyance of property" to another. *Id.* (citing *Semple v. Semple,* 82 Fla. 138, 89 So. 638, 640 (1921).  "[A] homeowner can waive the right to claim homestead protection by abandonment or alienation in any manner provided by law." *Franzese*, 383 B.R. at 203 (citing *Barlow v. Barlow,* 156 Fla. 458, 23 So.2d 723, 724 (1945)).

33.     An owner of property cannot both intend to alienate property to another and at the same time intend to hold the property as his homestead.  *See Semple v. Semple*, 89 So. 638, 640

(Fla. 1921) ("The intention to hold the place as his homestead, and the intention to give it to his wife, could not exist at the same time, and where the latter intention culminated in the specific act of executing a deed of conveyance to his wife, all inferences or presumptions of a different intention drawn from other facts and circumstances necessarily fail.").

34.     In the Trustee's Complaint, the Trustee argues that the deed of the Roat Drive Property executed by Debtor to the Company fails as a matter of law.  Therefore, according to the Trustee's argument in the Complaint, the Company never actually took title to the Roat Drive Property, which has been and remains with the Debtor.

35.     There is no dispute, however, that the subjective intent and belief of the Debtor is that she transferred the Roat Drive Property to the Company and the Debtor has reiterated this subjective, albeit incorrect, belief in her Amended Schedules.

36.     Black letter law in Florida is that the Debtor's subjective intent controls questions of homestead.  Like the situation in *Semple*, the Debtor in the instant matter has expressed a clear and unambiguous intent to transfer the Roat Drive Property to the Company, *i.e.*, to a partnership entity.  An intention to retain the Roat Drive Property as homestead cannot exist at the same time as an intent to transfer property to a partnership, and as the transfer to the partnership, or the attempted transfer of the property to a partnership, "culminated in the specific act of executing a deed of conveyance . . . all inferences or presumptions of a different intention drawn from other facts and circumstances necessarily fail." *Id.*

37.     The Debtor admitted that she attempted to transfer the Roat Drive Property to the Company to avoid a specific, identified creditor.  Her position from the beginning of the case, and her current position, is that the Company owns the Roat Drive Property.  This subjective

belief of the Debtor, past and present, disqualifies the Roat Drive Property from homestead status.

**C.    The Amended Schedules Were Filed in Bad Faith and Will Prejudice the Trustee**

38.    There is no doubt that the Amended Schedules were filed in bad faith and will prejudice the Trustee and other creditors.

39.    To the extent that *Matter of Doan*, 672 F.2d 831 (11th Cir.1982) is still good law, the exemptions claimed in Amended Schedule C should be denied.    *Compare In re Bodensiek*, 522 B.R. 737, 740 (Bankr. S.D. Fla. 2015) (implying that *Doan* remains the law of the 11th Circuit until overruled) *with In re Rivera-Cintron*, 2015 WL 4749217, at *4 (Bankr. M.D. Fla. 2015) (implying that *Doan* was overruled).

40.    Assuming that *Doan* is good law, all claimed exemptions on Amended Schedule C should be denied.

41.    Assuming that *Doan* is no longer good law, then, as the Supreme Court stated in *Law v. Siegel*, if a court cannot deny certain exemptions, it can certainly fashion appropriate sanctions to remedy bad-faith activity. 134 S. Ct. 1188, 1198 (2014) ("Our decision today does not denude bankruptcy courts of the essential authority to respond to debtor misconduct with meaningful sanctions. . . . Federal Rule of Bankruptcy Procedure 9011—bankruptcy's analogue to Civil Rule 11—authorizes the court to impose sanctions for bad-faith litigation conduct, which may include "an order directing payment ... of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation . . . [and t]he court may also possess further sanctioning authority under either § 105(a) or its inherent powers.").

42.     If this Court rules that the Debtor is entitled to claim the exemptions listed in the Amended Schedules, the Trustee requests the Court reserve the Trustee's right to seek other remedies under the Bankruptcy Code as a consequence of Debtor's bad faith conduct.

**D.     The Debtor Is Equitably Estopped from Amending Her Claims of Exemptions**

43.     "It is of course true that when a debtor claims a state-created exemption, the exemption's scope is determined by state law, which may provide that certain types of debtor misconduct warrant denial of the exemption." *Law,* 134 S.Ct. at 1196-97.  *See also In re Lua*, 529 B.R. 766, 775-76 (Bankr. C. D. Cal. 2015) (holding that debtor was estopped under California law from amending schedule C to claim a homestead exemption as *Law v. Siegel* does not apply to state law justifications for barring exemptions).

44.     Florida law also provides that estoppel and waiver can be defenses to a claim of homestead.  *See Cavanaugh v. Cavanaugh*, 542 So. 2d 1345, 1353 (Fla. 1st DCA 1989) (remanding homestead issue to trial court to determine whether claimant estopped from asserting homestead exemption).

45.     "The viability of these defenses [including estoppel and waiver] depends, obviously, upon the weighing and considering of all facts and circumstances surrounding the controversy between the parties." *Id.*

46.     In addition, while *Law* appears to hold that bankruptcy courts cannot invent new justifications for denying exemptions out of 11 U.S.C. § 105, it does not hold that deep-rooted doctrines like equitable estoppel cannot justify the denial of an exemption.  To read *Law* for that would do more than deny a bankruptcy judge the right to create common law, but would threaten the separation of powers whereby a court is permitted to control the conduct in its own courtroom.

47.     In the state court foreclosure proceeding of the Roat Drive Property, Case No. 2013-CA-12147, before the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida (the "State Court Foreclosure"), the Debtor, and Debtor's agent Darrin C. Lavine ("Lavine") have taken legal positions stating that the Company, not her personally, is the owner of the Roat Drive Property.  On November 6, 2015, the Company and Lavine filed an Amended Motion to Intervene/Motion to Add Indispensable Party Defendant in the State Court Foreclosure (the "Motion to Intervene").  A copy of the Motion to Intervene is attached hereto as **<u>Exhibit D</u>**.

48.     The Motion to Intervene states that the Company "bought" the Roat Drive Property and is the "owner" of the Roat Drive Property.  The Motion to Intervene is being used as a tool by the Debtor to further delay the State Court Foreclosure.

49.     Now that is more convenient for the Debtor to own the property personally, she seeks to amend her claim of exemptions to claim the Roat Drive Property as owned by her and her homestead.

50.     Under both Florida law and federal principles of estoppel, the Debtor is prevented from claiming the Roat Drive Property as homestead.

**E.      The Amended Schedule C Is Partially Barred by *Res Judicata* and Is Moot**

51.     "[T]here is a difference between exercising the right to amend exemptions under Rule 1009 and actually being entitled to the exemption claimed in the amendment.  *In re Adams*, 2014 WL 409043, at *2 (Bankr. M.D. Fla. 2014).  "The procedural right to amend is subordinate to [a] substantive *res judicata* effect . . . ."  *Id.*

52.     Pursuant to Local Rule 6004-1, the Trustee sold two vehicles and a boat back to the Debtor (Docs. 47 & 59).  That sale is *res judicata*.  The Amended Schedules purport to claim

an exemption in that property, but to the extent the Debtor seeks in any way to affect the consummated sale of the property, the exemptions should be denied.

53.     In addition, as the property has been sold, any attempt to claim exemptions of that property is now moot as the property has left the estate.

WHEREFORE, the Trustee respectfully requests that this Court enter an order denying all exemptions listed by the Debtor on her Amended Schedules, reserving an opportunity for the Trustee to seek sanctions to the extent such exemptions are upheld, and granting such other and further relief as the Court deems just and proper.

Respectfully submitted this 6th of April, 2016.

/s/ Michael A. Nardella
Michael A. Nardella, Esq.
Florida Bar No. 051265
Anthony M. Nardella, Jr., Esq.
Florida Bar No. 341274
Nardella & Nardella, PLLC
250 East Colonial Drive, Suite 102
Orlando, FL 32801
(407) 966-2680
mnardella@nardellalaw.com
akeppel@nardellalaw.com

**Counsel for Gene T. Chambers, in her capacity as chapter 7 Trustee for the Estate of Jodell Altier**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was furnished via electronic mail using the Court's CM/ECF system and/or via First Class U.S. Mail on the 6th day of April 2016 to: Debtor: Jodell M. Altier, 2507 Roat Drive, Orlando, FL 32835; Debtor's Counsel: Jonathan B. Alper, Esquire, Jonathan B. Alper PLC 274 Kipling Court, Heathrow, FL 32746; Office of the U.S. Trustee, George C. Young Federal Building, 400 W. Washington Street, Suite 1100, Orlando, FL 32801-2210.

/s/ Michael A. Nardella
Michael A. Nardella, Esq.

# EXHIBIT "A"

Page 1

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:15-BK-01838-KSJ

IN RE:

JODELL M. ALTIER

    DEBTOR.

RULE 2004 EXAMINATION

DEPOSITION OF:    JODELL M. ALTIER

TAKEN ON:    NOVEMBER 6, 2015

TIME:    9:00 A.M. - 9:50 A.M.

LOCATION:    LATHAM, SHUKER, EDEN & BEAUDINE
    111 NORTH MAGNOLIA AVENUE
    SUITE 1400
    ORLANDO, FL 32801

REPORTER:    SANDRA A. MOSER, RPR, FPR
    AND NOTARY PUBLIC

REALTIME REPORTERS, INC.   407-884-4662
REALTIMERPRS@GMAIL.COM

---

Page 2

A P P E A R A N C E S

JODELL M. ALTIER, PRO SE DEBTOR
2507 ROAT DRIVE
ORLANDO, FL 32835

JUSTIN LUNA, ESQUIRE
LATHAM, SHUKER, EDEN & BEAUDINE, LLP
111 NORTH MAGNOLIA AVENUE
SUITE 1400
ORLANDO, FL 32801
407-481-5800
    ATTORNEY FOR CREDITOR GOSHEN MORTGAGE, LLC

REALTIME REPORTERS, INC.   407-884-4662
REALTIMERPRS@GMAIL.COM

---

Page 3

I N D E X

TESTIMONY OF JODELL M. ALTIER

    DIRECT EXAMINATION BY MR. LUNA    4

CERTIFICATE OF OATH    37

SUBSCRIPTION OF DEPONENT    38

ERRATA SHEET    38

LETTER TO DEPONENT    39

E X H I B I T S

1 - NOTICE OF TAKING 2004 EXAMINATION    6

2 - SPECIAL WARRANTY DEED    7

3 - WARRANTY DEED    11

4 - SUBROGATION AGREEMENT    16

5 - TEXAS JOINT STOCK COMPANY GRANDE LEGACY    17
    GROUP

6 - MINUTES OF GRANDE LEGACY GROUP    21

7 - STOCK CERTIFICATE    23

8 - BANKRUPTCY COURT SUMMARY OF THE SCHEDULES    25

REALTIME REPORTERS, INC.   407-884-4662
REALTIMERPRS@GMAIL.COM

---

Page 4

P R O C E E D I N G S

    THE REPORTER:  WOULD YOU PLEASE RAISE YOUR
RIGHT HAND AND BE SWORN?  DO YOU SOLEMNLY SWEAR
THAT THE TESTIMONY YOU'RE ABOUT TO GIVE WILL BE
THE TRUTH, SO HELP YOU GOD?

    THE WITNESS:  YES.

    THE REPORTER:  THANK YOU.

    JODELL ALTIER,

HAVING BEEN DULY SWORN, WAS EXAMINED AND TESTIFIED AS
FOLLOWS:

    DIRECT EXAMINATION

BY MR. LUNA:

    Q    CAN YOU STATE YOUR FULL NAME?

    A    JODELL MARIE ALTIER.

    Q    HOW DO YOU SPELL THE --

    A    JODELL IS J O D E L L MARIE ALTIER A L T I E
R.

    Q    WHAT IS YOUR CURRENT ADDRESS?

    A    2507 ROAT DRIVE, ORLANDO, 32835.

    Q    HOW LONG HAVE YOU LIVED AT THAT ADDRESS?

    A    SINCE 1998.

    Q    OKAY.  ARE YOU THE CURRENT OWNER OF THAT
RESIDENCE?

    A    NO.

    Q    DO YOU KNOW WHO IS THE OWNER OF THAT

REALTIME REPORTERS, INC.   407-884-4662
REALTIMERPRS@GMAIL.COM

Page 6

```
 1   RESIDENCE?                                              1        DO YOU HAVE ANY QUESTIONS ABOUT THE
 2        A    A TRUST COMPANY.                              2   PROCEDURE BEFORE WE BEGIN?
 3        Q    DO YOU KNOW ITS NAME, BY CHANCE?             3        A    NO.
 4        A    LET ME THINK OFF THE TOP OF MY HEAD.  I      4        Q    OKAY.  ALL RIGHT.
 5   DON'T, OFF THE TOP OF MY HEAD.                          5           (THE REFERRED TO DOCUMENT WAS MARKED FOR
 6        Q    HAVE YOU HAD YOUR DEPOSITION TAKEN BEFORE?   6      IDENTIFICATION AS EXHIBIT 1).
 7        A    A LONG TIME AGO.                              7   BY MR. LUNA:.
 8        Q    WHAT TYPE OF CASE WAS THAT?                  8        Q    I'M HANDING YOU WHAT'S BEEN MARKED AS
 9        A    IT WAS FOR THE COMPANY, ALTIER MECHANICAL    9   EXHIBIT NUMBER ONE.  IF YOU WOULD TAKE A LOOK AT THAT
10   SERVICES.                                             10   EXHIBIT LET ME KNOW IF YOU RECOGNIZE IT.
11        Q    WAS IT A BUSINESS DISPUTE?                  11        A    YES.
12        A    IT WAS A BUSINESS -- A LEASE DISPUTE.       12        Q    AND ON THE SECOND PAGE, THERE WERE DOCUMENTS
13        Q    I'LL GO OVER JUST SOME GROUND RULES THAT YOU 13   TO BE PRODUCED; AND I UNDERSTAND THAT YOU HAD
14   PROBABLY CAN REMEMBER, BUT JUST IN CASE.  I WILL ASK  14   PREVIOUSLY PRODUCED DOCUMENTS THAT WERE RESPONSIVE TO
15   THE QUESTION.  IF YOU COULD ANSWER CLEARLY.  TRY TO   15   THIS.  DID YOU FIND ANY OTHER DOCUMENTS THAT -- SINCE
16   REFRAIN FROM NON-VERBALS LIKE "UMS," NODDING OF THE   16   THAT TIME THAT YOU THOUGHT MIGHT HAVE BEEN RESPONSIVE
17   HEAD.  IT'S HARD TO GET THAT ON THE COURT REPORTER'S  17   TO THESE DOCUMENTS THAT YOU DIDN'T ALREADY PRODUCE TO
18   TRANSCRIPT TO TRY TO KEEP A CLEAR RECORD.  IF YOU NEED 18   ME?
19   TO TAKE A BREAK, LET ME KNOW.  WE'LL FIND A GOOD      19        A    ON THE THIRD PAGE?
20   STOPPING POINT TO TAKE A BREAK.  I DON'T ANTICIPATE   20        Q    ON THE -- YES, I'M SORRY, THE THIRD PAGE.
21   THIS TO TAKE TREMENDOUSLY LONG.                       21        A    OKAY.  NO.  I PRODUCED EVERYTHING THAT YOU
22        I'LL ASK THE QUESTION.  I EXPECT THAT YOU'LL     22   ASKED FOR THAT I HAD.
23   UNDERSTAND THE QUESTION.  IF YOU DON'T, PLEASE LET ME 23        Q    OKAY.  THANK YOU.  LET'S START WITH WHEN YOU
24   KNOW.  I'LL TRY TO CLARIFY IT TO THE BEST OF MY       24   PURCHASED THIS PROPERTY.
25   ABILITY.                                              25        A    OKAY.
```

Page 7

```
 1        Q    ARE YOU MARRIED?                              1        A    THAT WAS THE DEVELOPER WHO OWNED THE LAND IN
 2        A    YES.                                          2   PALMA VISTA.
 3        Q    WHAT IS YOUR HUSBAND'S NAME?                  3        Q    OKAY.  TELL ME WHERE PALMA VISTA IS.
 4        A    JOSEPH ALTIER.                                4        A    IT IS A SUBDIVISION IN METRO WEST OFF SOUTH
 5        Q    HOW LONG HAVE YOU BEEN MARRIED?              5   HIAWASSEE.
 6        A    ETERNITY.  THIRTY-EIGHT YEARS.               6        Q    SO, WHEN YOU -- IT SAYS ON THE FIRST PAGE
 7        Q    OH, WOW.  CONGRATULATIONS.                   7   THAT IT LOOKS LIKE IT WAS SOLD JUST TO YOU.
 8        A    THANKS.                                       8        A    YES.
 9        Q    YOU SAID THAT YOU MOVED TO THIS PROPERTY     9        Q    IS THAT CORRECT?
10   APPROXIMATELY 1998.  WOULD IT BE FAIR IF I TOLD YOU   10        A    (RESPONDING IN THE AFFIRMATIVE).  THIS IS
11   AROUND 1996?                                          11   THE LOT.
12        A    COULD BE.                                    12        Q    SO, YOU BOUGHT THE LOT.  HOW MUCH DID YOU
13        Q    OKAY.  LET'S DO THIS.                        13   PAY FOR THE LOT?
14           (THE REFERRED TO DOCUMENT WAS MARKED FOR       14        A    IF I REMEMBER RIGHT -- I DON'T REALLY
15      IDENTIFICATION AS EXHIBIT 2).                       15   REMEMBER, BUT I THINK AROUND A HUNDRED THOUSAND.
16   BY MR. LUNA:                                           16        Q    IN 1996, WHAT DID YOU INTEND ON DOING WITH
17        Q    I'M GOING TO --                              17   THE LOT WHEN YOU PURCHASED IT?
18        A    WE ORIGINALLY PURCHASED THE LOT.  SO, THAT   18        A    BUILD OUR HOME.
19   COULD BE '96; BUT I'M THINKING WE WENT INTO THE HOUSE 19        Q    DID YOU DO THAT?
20   IN '98, BUT I COULD BE WRONG.                         20        A    YES.
21        Q    OKAY.  SO, LET'S START HERE.  I'M HANDING    21        Q    DID SOMEBODY -- DID YOU HIRE SOMEBODY TO
22   YOU WHAT'S BEEN MARKED AS EXHIBIT NUMBER TWO.  LET ME 22   CONTRACT TO BUILD YOUR HOME?
23   KNOW IF YOU RECOGNIZE THIS DOCUMENT.                  23        A    JOE IS A GENERAL CONTRACTOR.  WE BUILT IT
24        A    YES.                                         24   OURSELF.
25        Q    OKAY.  DO YOU KNOW WHO DEBORAH INK IS?      25        Q    SO YOU BUILT IT YOURSELF?
```

Page 8

| | |
|---|---|
| 1 | A   YES. |
| 2 | Q   DID YOU SELF-FINANCE IT?  WHO PAID FOR THE |
| 3 | CONSTRUCTION? |
| 4 | A   WE HAD A CONSTRUCTION LOAN.  I BELIEVE IT |
| 5 | WAS WITH SUNTRUST. |
| 6 | Q   DO YOU REMEMBER HOW MUCH THAT WAS FOR? |
| 7 | A   NO. |
| 8 | Q   BALLPARK? |
| 9 | A   THREE HUNDRED THOUSAND?  I'M NOT SURE. |
| 10 | Q   HOW BIG IS THE HOUSE? |
| 11 | A   IT IS A FIVE-BEDROOM, ABOUT 4500 SQUARE |
| 12 | FEET. |
| 13 | Q   OKAY.  WHEN DID YOU MOVE INTO THE HOUSE? |
| 14 | A   I THINK IN '98. |
| 15 | Q   THE CONSTRUCTION LOAN THAT YOU HAD WITH |
| 16 | SUNTRUST, DID THAT CONVERT TO A PERMANENT LOAN? |
| 17 | A   IT COULD HAVE.  IT MIGHT HAVE.  I DON'T |
| 18 | REMEMBER BACK THEN. |
| 19 | Q   DO YOU REMEMBER MAKING MORTGAGE PAYMENTS TO |
| 20 | SOMEBODY? |
| 21 | A   SUNTRUST. |
| 22 | Q   SUNTRUST? |
| 23 | A   (RESPONDING IN THE AFFIRMATIVE). |
| 24 | Q   DO YOU REMEMBER WHEN YOU MOVED INTO THE |
| 25 | PROPERTY IF THERE WAS ANY NEW DOCUMENTATION SOMEBODY |

| | |
|---|---|
| 1 | SAID THAT YOU HAD TO SIGN — NEW LOAN DOCUMENTS? |
| 2 | A   THERE MUST HAVE BEEN A CLOSING. |
| 3 | Q   AND YOU HAVE LIVED THERE WITH YOUR FAMILY |
| 4 | SINCE 1998.  IS THAT CORRECT? |
| 5 | A   YES. |
| 6 | Q   DO YOU OWN ANY OTHER HOUSES? |
| 7 | A   YES. |
| 8 | Q   WHAT OTHER HOUSES DO YOU OWN? |
| 9 | A   NO, I DON'T OWN ANY OTHER HOUSES. |
| 10 | Q   OKAY.  ANY OTHER REAL PROPERTY? |
| 11 | A   WHAT IS REAL PROPERTY? |
| 12 | Q   LAND. |
| 13 | A   OH, LAND.  NO. |
| 14 | Q   HAVE YOU EVER RENTED A PORTION OF YOUR HOUSE |
| 15 | TO ANYBODY ELSE? |
| 16 | A   NO. |
| 17 | Q   DID YOU EVER SELL YOUR HOUSE?  WHEN I SAY |
| 18 | "HOUSE," I MEAN THE ROAT DRIVE PROPERTY. |
| 19 | A   WELL, I DON'T KNOW IF SELL IS THE RIGHT |
| 20 | TERM, BUT IT WAS TURNED OVER TO OR EXCHANGED FOR THIS |
| 21 | TRUST COMPANY.  TEXAS, I GUESS, TRUST, IT LOOKED LIKE |
| 22 | IN THIS DOCUMENT — THESE DOCUMENTS. |
| 23 | Q   DOES IT SOUND ACCURATE IF I SAID THE GRANDE |
| 24 | LEGACY GROUP?  DOES THAT SOUND FAMILIAR? |
| 25 | A   YES. |

| | |
|---|---|
| 1 | Q   WALK ME THROUGH THAT.  HOW DID YOU AND WHY |
| 2 | DID YOU TRANSFER YOUR INTEREST IN THE PROPERTY TO |
| 3 | GRANDE LEGACY GROUP? |
| 4 | A   ASSET PROTECTION. |
| 5 | Q   DID YOU — HOW DID YOU FIND GRANDE LEGACY |
| 6 | GROUP? |
| 7 | A   I DON'T KNOW. |
| 8 | Q   YOU DON'T KNOW?  DID YOU TALK WITH A — WAS |
| 9 | IT SOMEBODY CALLED TO TELL YOU ABOUT IT? |
| 10 | A   I DON'T REALLY KNOW.  I DIDN'T HANDLE ANY OF |
| 11 | THAT. |
| 12 | Q   WHO HANDLED THAT? |
| 13 | A   JOE. |
| 14 | Q   OKAY. |
| 15 |     (THE REFERRED TO DOCUMENT WAS MARKED FOR |
| 16 |     IDENTIFICATION AS EXHIBIT 3). |
| 17 | BY MR. LUNA: |
| 18 | Q   I'M HANDING YOU WHAT'S BEEN MARKED AS |
| 19 | EXHIBIT NUMBER THREE.  TAKE A LOOK AT IT AND LET ME |
| 20 | KNOW WHEN YOU'VE HAD A CHANCE TO DO SO. |
| 21 | A   OKAY. |
| 22 | Q   IS THAT YOUR SIGNATURE ON THE BOTTOM LEFT? |
| 23 | A   YES. |
| 24 | Q   AND IT SAYS YOU AS TRUSTEE? |
| 25 | A   (RESPONDING IN THE AFFIRMATIVE.) |

| | |
|---|---|
| 1 | Q   OKAY.  WAS THAT A YES? |
| 2 | A   YES. |
| 3 | Q   THE FIRST LINE HERE SAYS:  JODELL M. ALTIER |
| 4 | AND JOSEPH E. ALTIER, TRUSTEES OF ORANGE COUNTY, |
| 5 | FLORIDA.  DO YOU KNOW WHY IT INCLUDES THE PHRASE |
| 6 | "TRUSTEES OF ORANGE COUNTY, FLORIDA"? |
| 7 | A   NO. |
| 8 | Q   DO YOU THINK JOE WOULD KNOW? |
| 9 | A   I DON'T KNOW.  I DON'T KNOW WHO PREPARED |
| 10 | THESE DOCUMENTS. |
| 11 | Q   BUT YOU DIDN'T PREPARE THESE DOCUMENTS? |
| 12 | A   I DIDN'T.  NO. |
| 13 | Q   OKAY.  DO YOU — SINCE YOU ACQUIRED THE LAND |
| 14 | ON EXHIBIT NUMBER TWO THAT WAS IN YOUR NAME, DID YOU |
| 15 | EVER SIGN ANY OTHER DEED OR CONVEYANCE OF ANY RIGHT TO |
| 16 | THIS — THE 2507 ROAT DRIVE PROPERTY ADDRESS TO ANY |
| 17 | OTHER PARTY EXCEPT FOR WHAT IS DESCRIBED HERE IN |
| 18 | EXHIBIT THREE? |
| 19 | A   I DON'T KNOW.  IT'S BEEN A LOT OF YEARS. |
| 20 | Q   DO YOU HAVE ANY REASON TO BELIEVE THAT YOU |
| 21 | DID? |
| 22 | A   I MEAN, I DON'T REALLY KNOW.  WE HAVE A LOT |
| 23 | OF BUSINESSES.  WE HAD OTHER PROPERTIES; AND SO, I |
| 24 | DON'T REALLY KNOW.  JOE HANDLED MOST OF THIS. |
| 25 | Q   OKAY.  BUT YOU WOULD AGREE WITH ME ON |

Page 14

1  EXHIBIT TWO, THAT YOUR HUSBAND, JOSEPH ALTIER, WAS NOT
2  AN OWNER OF THIS PROPERTY.  IS THAT CORRECT?
3      A   HE WASN'T AN OWNER OF THE LOT.  CORRECT.
4      Q   OKAY.  HAVE YOU EVER SEEN ANY DOCUMENT OR A
5  DEED THAT SHOWS THAT HE WAS THE OWNER OF THE LOT OR
6  THE HOUSE?
7      A   WELL, I DON'T SEE ANY PAPERWORK ON THE
8  HOUSE.  SO, I KNOW HE WAS WITH ME AT ALL CLOSINGS.
9      Q   SO, LET'S TALK ABOUT THIS GRANDE LEGACY
10  GROUP.
11      A   OKAY.
12      Q   WHEN YOU AND YOUR HUSBAND CONVEYED THE
13  INTEREST IN THE 2507 ROAT DRIVE PROPERTY IN -- AND IT
14  LOOKS LIKE IT WAS TRANSFERRED ON SEPTEMBER 17, 2013.
15  DOES THAT LOOK ACCURATE TO YOU?
16      A   OKAY.  THIS WARRANTY DEED SAYS
17  SEPTEMBER 18TH.  SO, YEAH.
18      Q   WERE YOU BEING SUED BY ANYBODY DURING THAT
19  TIME?
20      A   NO, I DON'T BELIEVE SO.  THERE WAS SOME TALK
21  ABOUT -- I WAS ON THE BOARD OF METRO WEST MASTER
22  ASSOCIATION AND WE WERE TRYING TO REMOVE THE DEVELOPER
23  AT THAT TIME; AND THERE WAS A BIG, I MEAN, LAWSUITS
24  AND EVERYBODY TRYING TO GET HIM OUT.  HE WAS A
25  CONVICTED FELON AND ABSCONDING WITH THE MONIES AND ALL

Page 13

1  OF THAT.  SO I WAS ELECTED ON THE BOARD.  WE TRIED TO
2  GET RID OF HIM.  OUR COURSE OF ACTION DIDN'T WORK.  SO
3  THEY WERE COMING AFTER ME AS ON THE BOARD -- OR THERE
4  WAS TALK OF THEM COMING AFTER ME FOR LEGAL FEES.
5      Q   BUT NO LAWSUIT WAS EVER FILED AGAINST YOU
6  RELATED TO THAT?
7      A   NO.  NO.  IT WAS JUST THE POSSIBILITY.
8      Q   DO YOU RECALL IF THE FORECLOSURE SUIT THAT
9  WAS INITIATED BY THE BANK RELATED TO THIS PROPERTY HAD
10  BEEN FILED AT THAT TIME OF THIS WARRANTY DEED IN
11  EXHIBIT THREE?
12      A   I DON'T BELIEVE SO.
13      Q   WERE YOU CURRENTLY STILL MAKING PAYMENTS?
14      A   WHAT WAS THE DATE?
15      Q   SEPTEMBER 2013?
16      A   NO.
17      Q   YOU WERE NOT?
18      A   NO.
19      Q   HAD YOU RECEIVED ANY DEFAULT LETTERS?
20      A   NO.  I RECEIVED LETTERS STATING TO CALL THEM
21  ABOUT -- WHAT DO YOU CALL IT? -- RENEGOTIATING.  I
22  DON'T KNOW WHAT THAT'S CALLED OFF THE TOP OF MY HEAD.
23  THE AMOUNT DUE AND ALL THAT KIND OF STUFF, THAT'S THE
24  ONLY THING I RECEIVED.
25      Q   OKAY.  DO YOU RECALL WHEN THE BANK ACTUALLY

Page 15

1  FILED THE FORECLOSURE PAPERWORK?
2      A   I DON'T.  I'M THINKING IT WAS 2014, BUT I
3  DON'T KNOW THE DATE.
4      Q   OKAY.  SO, WHEN YOU SAID ASSET PROTECTION IS
5  THE REASON WHY THE PROPERTY WAS TRANSFERRED TO GRANDE
6  LEGACY GROUP, WHAT DO YOU UNDERSTAND THAT TO MEAN?
7      A   THAT MEANS THAT IF THIS METRO WEST MASTER
8  ASSOCIATION CAME AFTER ME, JODELL M. ALTIER, THAT THEY
9  WOULDN'T BE ABLE TO TAKE MY HOME.
10      Q   WOULD THE SAME THING BE TRUE ABOUT THE
11  MORTGAGE COMPANY?
12      A   I DON'T KNOW.
13      Q   IF THE MORTGAGE COMPANY WERE TO COME AFTER
14  YOU TO SUE YOU FOR NONPAYMENT OF THE MORTGAGE DEBT,
15  WOULD THAT ALSO BE A REASON ABOUT WHY IT WAS
16  TRANSFERRED TO THE --
17      A   I DON'T THINK SO, BECAUSE WHEN YOU TRANSFER
18  A WARRANTY DEED IT SAYS ALL ENCUMBRANCES AND ALL OF
19  THAT GOES WITH THE PROPERTY TO WHOEVER YOU'RE GIVING
20  IT TO.
21      Q   OKAY.  DID YOU CREATE GRANDE LEGACY GROUP?
22      A   I DIDN'T.  NO.
23      Q   DO YOU KNOW WHO DID?
24      A   NO.
25      Q   OKAY.  DO YOU HAVE ANY OFFICIAL RELATIONSHIP

Page 16

1  WITH GRANDE LEGACY GROUP?
2      A   NO.
3      Q   HAVE YOU EVER BEEN ASSOCIATED WITH GRANDE
4  LEGACY GROUP?
5      A   NOT THAT I KNOW OF.
6      Q   DO YOU THINK THAT YOU ARE AN OWNER OR HOLD
7  STOCK IN GRANDE LEGACY GROUP?
8      A   THERE WAS AN EXCHANGE OF STOCK FOR THE
9  PROPERTY.  THAT'S ALL I KNOW.  WE HAVE A STOCK
10  CERTIFICATE.
11      Q   DID YOU OR YOUR HUSBAND PERFORM ANY
12  VALUATION OF THAT STOCK BEFORE RECEIVING IT?
13      A   NO, I DIDN'T.
14      Q   HAVE YOU EVER SEEN ANY FINANCIALS FOR GRANDE
15  LEGACY GROUP TO DETERMINE WHAT THAT STOCK MIGHT BE
16  WORTH?
17      A   NO.
18      Q   ASIDE FROM STOCK, DID YOU RECEIVE -- DID YOU
19  OR YOUR HUSBAND RECEIVE ANYTHING OF VALUE IN EXCHANGE
20  FOR THE DEED TO THE PROPERTY?
21      A   NO.
22      Q   OKAY.  LET ME SHOW YOU --
23          (THE REFERRED TO DOCUMENT WAS MARKED FOR
24      IDENTIFICATION AS EXHIBIT 4).
25  BY MR. LUNA:.

1    Q    I'M HANDING YOU WHAT'S BEEN MARKED AS
2  EXHIBIT NUMBER FOUR.  TAKE A MOMENT TO TAKE A LOOK AT
3  IT AND LET ME KNOW WHEN YOU'VE HAD A CHANCE TO DO SO.
4    A    OKAY.
5    Q    IS THAT YOUR SIGNATURE ON THE SECOND PAGE
6  WHERE IT SAYS JODELL ALTIER, TRUSTEE FOR GRANDE LEGACY
7  GROUP?
8    A    YES.
9    Q    AND IS THAT YOUR SIGNATURE ON THE NEXT LINE
10 WHERE IT SAYS JODELL M. ALTIER, TRUSTEE FOR GRANDE
11 LEGACY GROUP—INDIVIDUALLY?
12   A    YES.
13   Q    DO YOU KNOW WHO CREATED THIS DOCUMENT?
14   A    NO.
15   Q    DO YOU KNOW WHAT THE PURPOSE OF THIS
16 DOCUMENT WAS?
17   A    NO.
18   Q    SO, TELL ME WHY YOU SIGNED THIS DOCUMENT?
19   A    BECAUSE JOE SAID TO SIGN THE DOCUMENT.
20   Q    DID HE TELL YOU WHY?
21   A    NO.
22        (THE REFERRED TO DOCUMENT WAS MARKED FOR
23        IDENTIFICATION AS EXHIBIT 5).
24 BY MR. LUNA:
25   Q    I'M HANDING YOU WHAT'S BEEN MARKED AS

---

1  EXHIBIT NUMBER FIVE.  TAKE A MOMENT TO TAKE A LOOK AT
2  THAT AND LET ME KNOW WHEN YOU'VE HAD A CHANCE TO DO
3  SO.
4    A    OKAY.
5    Q    DO YOU RECOGNIZE THIS DOCUMENT?
6    A    YES.
7    Q    WHAT IS THIS DOCUMENT?
8    A    IT SAYS "TEXAS JOINT STOCK COMPANY OF GRANDE
9  LEGACY GROUP."
10   Q    DID YOU CREATE THIS DOCUMENT?
11   A    NO.
12   Q    DO YOU KNOW WHO DID?
13   A    NO.
14   Q    ON PAGE — AND IT'S HARD TO TELL, BUT ON THE
15 BOTTOM OF EACH PAGE IT APPEARS TO SAY "GRANDE LEGACY
16 GROUP" AND THEN A NUMBER DASH 15.  IF YOU WOULD TURN
17 TO 6-15, IS THAT YOUR SIGNATURE ON THE MIDDLE OF THAT
18 PAGE AS JODELL M. ALTIER, EXCHANGER/CREATOR?
19   A    YES.
20   Q    DID YOU READ THIS DOCUMENT BEFORE SIGNING
21 IT?
22   A    NO.
23   Q    OKAY.  DO YOU USUALLY READ DOCUMENTS BEFORE
24 SIGNING THEM?
25   A    JOE HANDLED ALL THIS, SO...

---

1    Q    FAIR ENOUGH.  DID JOE TELL YOU TO SIGN THIS?
2    A    YES.
3    Q    DID HE TELL YOU WHY?
4    A    NO.
5    Q    SAME THING WITH RESPECT TO GRANDE LEGACY
6  GROUP 8-15, WHERE IT'S TITLED "MINUTES OF GRANDE
7  LEGACY GROUP."  IS THAT YOUR SIGNATURE ON THAT PAGE?
8    A    YES.
9    Q    DO YOU RECOGNIZE YOUR HUSBAND'S SIGNATURE?
10   A    YES.
11   Q    DOES THAT LOOK LIKE YOUR HUSBAND'S SIGNATURE
12 ON THAT SAME PAGE?
13   A    YES.
14   Q    IT SAYS HERE ON THE FIRST SENTENCE:  "THE
15 CREATOR APPROACHED JOSEPH ALTIER AND JODELL ALTIER,
16 EXCHANGER, AND OFFERED TO TRADE TEN DOLLARS AND A
17 THOUSAND SHARES OF STOCK CONTAINED IN JOINT STOCK
18 COMPANY FOR REAL PERSONAL PROPERTY, A LIST BEING
19 ATTACHED HERETO COMPRISING THE SCHEDULE A AND B."
20 DOES THAT SOUND ACCURATE?
21   A    YES.
22   Q    DID YOU TRANSFER ANY PERSONAL PROPERTY TO
23 THE GRANDE LEGACY GROUP?
24   A    NO.
25   Q    JUST SO WE HAVE A —

---

1    A    I GUESS I DON'T KNOW THE DIFFERENCE BETWEEN
2  REAL PROPERTY AND PERSONAL PROPERTY.
3    Q    I'LL CLARIFY.  REAL PROPERTY IS GENERALLY
4  LAND WHERE YOU HAVE A HOUSE OR VACANT LAND.  PERSONAL
5  PROPERTY ARE TANGIBLE THINGS LIKE A WATCH, CLOTHING,
6  CAR, THOSE TYPES — STOCKS, BONDS.  THOSE ARE
7  GENERALLY CONSIDERED PERSONAL PROPERTY.
8    A    OKAY.  NO PERSONAL PROPERTY THAT I KNOW OF.
9    Q    OKAY.  SO, THE SAME QUESTION I'M GOING TO
10 HAVE FOR YOU — WE'LL GO AHEAD AND GET THIS OUT OF THE
11 WAY.  ON PAGE 12, 13, 14, AND 15, ARE THOSE YOUR
12 SIGNATURES UNDER THE PLACES WHERE IT SAYS "JODELL M.
13 ALTIER"?
14   A    YES.
15   Q    DO YOU BELIEVE THAT WHERE IT SAYS "JOSEPH
16 ALTIER" ON THOSE PAGES THAT THAT'S YOUR HUSBAND'S
17 SIGNATURE?
18   A    YES.
19   Q    AND IT'S DATED SEPTEMBER 13, 2013.  DO YOU
20 BELIEVE THAT THIS WAS EXECUTED THAT SAME DAY?
21   A    I HAVE NO REASON TO BELIEVE IT WASN'T.
22   Q    OKAY.  DO YOU KNOW WHO DARRIN LAVINE IS?  D
23 A R R I N, LAST NAME LAVINE, L A V I N E?
24   A    YES, I HAVE MET HIM.
25   Q    WHEN DID YOU FIRST MEET HIM?

1    A   I DON'T REMEMBER.

2    Q   HOW LONG AGO?

3    A   A COUPLE YEARS.

4    Q   APPROXIMATELY 2013?

5    A   A FEW YEARS.  HE'S FRIENDS OF MY BROTHER AND

6    SISTER-IN-LAW.  SO, I DON'T REALLY KNOW OFF THE TOP OF

7    MY HEAD WHEN.

8    Q   DO YOU KNOW WHERE HE LIVES?

9    A   NO, I DON'T.

10   Q   DO YOU KNOW WHAT HE DOES FOR A LIVING?

11   A   I BELIEVE HE OWNS A ROOFING COMPANY.

12   Q   DOES HE DO WORK WITH YOUR HUSBAND?

13   A   NO.  THEY HADN'T.  I THINK THEY'VE TALKED --

14   HAD TALKED AND GIVEN PROPOSALS TO EACH OTHER ON

15   PROJECTS.  BUT I DON'T KNOW IF THEY'VE EVER WORKED

16   TOGETHER ON A PROJECT.

17       (THE REFERRED TO DOCUMENT WAS MARKED FOR

18   IDENTIFICATION AS EXHIBIT 6).

19   BY MR. LUNA:

20   Q   I'M GOING TO HAND YOU WHAT'S BEEN MARKED AS

21   EXHIBIT NUMBER SIX.  DO YOU RECOGNIZE THIS DOCUMENT?

22   A   YES.

23   Q   AND IS THAT YOUR SIGNATURE WHERE IT SAYS

24   "JODELL MARIE ALTIER"?

25   A   YES.

1    Q   DO YOU BELIEVE THAT TO BE YOUR HUSBAND'S

2    SIGNATURE RIGHT ABOVE WHERE IT SAYS "JOSEPH EDWARD

3    ALTIER"?

4    A   I DO.

5    Q   AND YOU WOULD AGREE THAT IT SAYS IT'S DATED

6    SEPTEMBER 17, 2013?

7    A   YES.

8    Q   AND YOU ALSO SEE WHERE DARRIN LAVINE WAS

9    ACCEPTED AS A TRUSTEE?

10   A   YES.

11   Q   DO YOU KNOW WHY HE WAS PUT ON AS A TRUSTEE?

12   A   I DON'T KNOW OFFHAND, OTHER THAN THAT WAS

13   SOMETHING HE AND JOE DISCUSSED.  AND I KNOW THAT I

14   WASN'T REALLY INVOLVED IN THIS.  AND I WAS HEADING IN

15   TO SURGERY OR BACK SURGERY SHORTLY THEREAFTER.  AND I

16   KNOW THAT HE WAS GOING TO TAKE OVER ANY PURSUIT OF

17   THIS GRANDE LEGACY GROUP.  HE WAS GOING TO BE IN

18   CHARGE OF IT TO TAKE THE BURDEN OFF.

19   Q   OKAY.  AND WHEN YOU SAY "BURDEN," WHAT DID

20   GRANDE LEGACY GROUP DO FOR YOU GUYS?

21   A   I DON'T REALLY KNOW, OTHER THAN THE

22   PROPERTIES, YOU KNOW, BECAME THEIR RESPONSIBILITY OR

23   PUT IN THEIR NAME OR -- I DON'T REALLY KNOW.

24   Q   DO YOU KNOW IF GRANDE LEGACY GROUP PAID FOR

25   ANY EXPENSES RELATED TO THE PROPERTY?

1    A   I DON'T KNOW.

2    Q   HAVE YOU EVER SEEN ANY FINANCIALS OR

3    CORRESPONDENCE FROM ANYBODY AT GRANDE LEGACY GROUP?

4    A   NO.

5    Q   AND YOU DON'T KNOW WHO CREATED THIS EXHIBIT

6    NUMBER SIX?

7    A   NO.

8    Q   DO YOU THINK YOUR HUSBAND WOULD KNOW?

9    A   HE COULD.

10       (THE REFERRED TO DOCUMENT WAS MARKED FOR

11   IDENTIFICATION AS EXHIBIT 7).

12   BY MR. LUNA:

13   Q   I'M HANDING YOU WHAT'S BEEN MARKED AS

14   EXHIBIT NUMBER SEVEN.  TAKE A MOMENT TO TAKE A LOOK AT

15   THAT AND LET ME KNOW WHEN YOU'VE HAD A CHANCE TO DO

16   SO.

17   A   I HAVE.

18   Q   OKAY.  DO YOU -- IS THAT YOUR SIGNATURE AT

19   THE BOTTOM?

20   A   YES.

21   Q   IS THAT YOUR HUSBAND'S SIGNATURE RIGHT ABOVE

22   YOURS?

23   A   LOOKS LIKE IT.

24   Q   OKAY.  AND IT'S DATED THE 13TH DAY OF

25   SEPTEMBER 2013?

1    A   YES.

2    Q   DO YOU KNOW WHAT THIS DOCUMENT IS?

3    A   IT'S THE DOCUMENT OF SHARES.

4    Q   SHARES OF GRANDE LEGACY GROUP?

5    A   YES.

6    Q   AND ARE YOU THE ONLY OWNER OF GRANDE LEGACY

7    GROUP?

8    A   I DON'T KNOW WHAT THAT MEANS.

9    Q   OKAY.  THE STOCK CERTIFICATE GENERALLY

10   DENOTES THAT THERE'S AN OWNERSHIP INTEREST IN GRANDE

11   LEGACY GROUP.  DO YOU UNDERSTAND THAT CONCEPT?

12   A   NO.

13   Q   WHAT DID YOU THINK --

14   A   WE EXCHANGED A THOUSAND SHARES OF STOCK FOR

15   THE REAL PROPERTY.  THAT'S ALL I KNOW.

16   Q   SO, THE THOUSAND SHARES OF STOCK, YOU WOULD

17   AGREE THAT YOU BELIEVED THAT YOU WERE BUYING AN

18   INTEREST IN GRANDE LEGACY GROUP?

19   A   I DON'T KNOW.

20   Q   WHAT DID YOU THINK THE THOUSAND SHARES

21   ACTUALLY MEANT?

22   A   I DIDN'T REALLY KNOW.

23   Q   OKAY.  DO YOU HAVE ANY REASON TO BELIEVE

24   THAT YOU -- EITHER YOU OR YOUR HUSBAND -- OUTSIDE OF

25   YOU OR YOUR HUSBAND, SHOULD I SAY, IF THERE'S ANY

1  OTHER OWNERS OF THIS COMPANY?
2      A    I DON'T KNOW.
3      Q    OKAY.  BUT YOU DON'T HAVE ANY REASON TO
4  BELIEVE SO?
5      A    I DON'T.
6      Q    OKAY.
7          (THE REFERRED TO DOCUMENT WAS MARKED FOR
8      IDENTIFICATION AS EXHIBIT 8).
9  BY MR. LUNA:
10     Q    I'M HANDING YOU WHAT'S BEEN MARKED AS
11 EXHIBIT NUMBER EIGHT.  DO YOU RECOGNIZE THAT DOCUMENT?
12     A    YES.
13     Q    OKAY.  WHAT IS IT?
14     A    IT ARE THE SCHEDULES THAT WERE DUE WHEN I
15 FILED BANKRUPTCY.
16     Q    OKAY.  DID YOU PREPARE THESE SCHEDULES
17 YOURSELF?
18     A    I DID.
19     Q    DID YOU HAVE ANYBODY TO HELP YOU?
20     A    NO.
21     Q    DID YOU CONSULT WITH ANY ATTORNEY -- AND I
22 DON'T WANT TO KNOW WHAT YOU DISCUSSED, BUT DID YOU
23 CONSULT WITH ANY ATTORNEY BEFORE FILING THESE
24 SCHEDULES?
25     A    NO.

1      Q    YOU WOULD AGREE WITH ME THAT ON YOUR
2  SCHEDULES THERE IS NOT -- THERE'S NO REFERENCE TO
3  GRANDE LEGACY GROUP STOCK ON HERE.  IS THAT CORRECT?
4      A    CORRECT.
5      Q    OKAY.  WHY DID YOU EXCLUDE THAT STOCK FROM
6  BEING LISTED ON YOUR SCHEDULES?
7      A    BECAUSE I DIDN'T THINK IT HAD A VALUE.
8      Q    BUT YOU WOULD AGREE THAT YOU'D HAVE SOME
9  OWNERSHIP INTEREST IN IT?
10     A    I WOULD NOT AGREE TO ANYTHING ABOUT THAT.  I
11 DON'T KNOW.
12     Q    ON PAGE -- AT THE VERY TOP IT SAYS PAGE
13 WHATEVER OF 41.  DO YOU SEE THAT?
14     A    YES.
15     Q    IF YOU'D TURN TO THE FIFTH PAGE.  LINE 13
16 SAYS "STOCK AND INTEREST IN INCORPORATED AND
17 UNINCORPORATED BUSINESSES ITEMIZE."  AND YOU HAVE
18 "NONE," CORRECT?
19     A    (RESPONDING IN THE AFFIRMATIVE.)
20     Q    WAS THAT A YES?
21     A    YES.
22     Q    AND SO, YOUR POSITION IS YOU DON'T THINK
23 THAT YOU SHOULD HAVE INCLUDED THE STOCK INTEREST IN
24 GRANDE LEGACY GROUP ON THIS SCHEDULE?
25     A    I GUESS I COULD HAVE LISTED IT AS A

1  DESCRIPTION WITH A ZERO VALUE.  BUT IT WAS ZERO.  SO I
2  DIDN'T EVEN WRITE IT DOWN.
3      Q    OKAY.  WHY DO YOU THINK IT HAS A ZERO VALUE?
4      A    I DON'T KNOW THE VALUE.
5      Q    SO, WHEN YOU SAY "ZERO," DO YOU REALLY MEAN
6  "UNKNOWN"?
7      A    I MEAN ZERO.  TO ME, IT'S WORTH THIS PAPER.
8      Q    OKAY.  FAIR ENOUGH.  DO YOU STILL RESIDE AT
9  2507 ROAT DRIVE?
10     A    YES.
11     Q    WHAT IS YOUR INTENTION WITH THIS PROPERTY?
12 DO YOU INTEND TO CONTINUE LIVING THERE?  OR DO YOU
13 PLAN ON MOVING?
14     A    PLAN ON LIVING THERE.
15     Q    OKAY.  AND ARE YOU CURRENTLY PAYING ANY RENT
16 TO THE GRANDE LEGACY GROUP?
17     A    NO.
18     Q    ARE YOU PAYING ANY MORTGAGE PAYMENT?
19     A    NO.
20     Q    OKAY.  ARE YOU AWARE THAT THERE'S
21 FORECLOSURE ACTION PENDING AGAINST YOURSELF, YOUR
22 HUSBAND, AS WELL AS THE GRANDE LEGACY GROUP?
23     A    I KNOW ABOUT JOE AND I.  I DON'T KNOW IF IT
24 INCLUDED THE GRANDE LEGACY GROUP.
25     Q    DO YOU KNOW WHO JILL ALTIER IS?

1      A    JILL?
2      Q    YES, MA'AM.
3      A    MY DAUGHTER.
4      Q    AND ARE YOU AWARE THAT SHE'S A -- IF SHE'S A
5  TRUSTEE OF THE GRANDE LEGACY GROUP?
6      A    NO.
7      Q    WOULD YOU BE SURPRISED IF I SHOWED YOU A
8  DOCUMENT SHOWING -- SAYING THAT SHE WAS?
9      A    YES.
10     Q    HOW OLD IS SHE?
11     A    THIRTY-ONE.
12     Q    OKAY.  HAVE YOU RECEIVED ANY DISTRIBUTION OR
13 ANY TYPE OF COMPENSATION FROM GRANDE LEGACY GROUP?
14     A    NOT THAT I KNOW OF.
15     Q    HAVE YOU EVER SPOKEN WITH KELLY BOSECKER
16 BEFORE?
17     A    YES.
18     Q    WHAT DID YOU -- I DON'T WANT TO KNOW THE
19 SUBSTANCE, BUT WHAT WAS GENERALLY YOUR CONVERSATION
20 WITH HER?
21     A    WHEN?  I'VE KNOWN HER FOR A COUPLE YEARS.
22     Q    SO, WHAT'S THE NATURE OF YOUR RELATIONSHIP
23 WITH HER?
24     A    ATTORNEY.  SHE'S AN ATTORNEY.
25     Q    HAVE YOU RETAINED HER BEFORE?

1    A    YES.

2    Q    FOR WHAT PURPOSE?

3    A    THE FIRST TIME I RETAINED HER WAS FOR HELP

4 IN THE FORECLOSURE OF OUR BUILDING ON 35TH STREET IN

5 ORLANDO.

6    Q    WHEN YOU SAY YOU, DO YOU MEAN —

7    A    WELL, I MEAN ALTIER MECHANICAL.  I WAS

8 MANAGER OF THAT COMPANY.

9    Q    HAS SHE EVER REPRESENTED YOUR INDIVIDUAL

10 INTEREST?

11    A    YES.

12    Q    IN WHAT CONTEXT?

13    A    IN — WELL, I DON'T KNOW OFFHAND.  I THINK

14 THAT SHE IS INVOLVED IN THE GAINESVILLE PROPERTY AND

15 ROAT PROPERTY.  WHERE I LIVE.

16    Q    TALK TO ME ABOUT THIS GAINESVILLE PROPERTY.

17 WHAT IS THIS GAINESVILLE PROPERTY?

18    A    IT'S A SINGLE-FAMILY HOME IN GAINESVILLE.

19    Q    WHO OWNS THAT PROPERTY?

20    A    GRANDE LEGACY.

21    Q    WHEN DID GRANDE LEGACY PURCHASE THAT

22 PROPERTY?

23    A    I DON'T KNOW.

24    Q    WHO OWNED THAT PROPERTY BEFORE GRANDE

25 LEGACY?

---

1    A    JOE AND I.

2    Q    DO YOU REMEMBER WHEN IT WAS TRANSFERRED TO

3 GRANDE LEGACY?

4    A    NO.

5    Q    DOES THAT PROPERTY HAVE A MORTGAGE ON IT?

6    A    I DON'T KNOW.

7    Q    DO YOU REMEMBER WHEN YOU AND YOUR HUSBAND

8 PURCHASED THE PROPERTY IN GAINESVILLE?

9    A    I'M GOING TO GUESS OFFHAND AROUND 2005.

10    Q    WHAT WAS THE PURPOSE OF PURCHASING THAT

11 PROPERTY?

12    A    MY GIRLS WENT TO THE UNIVERSITY OF FLORIDA;

13 AND WE BOUGHT IT FOR THEM TO LIVE IN.  GO GATORS.

14    Q    GO GATORS.  AND WHAT IS THE ADDRESS OF THAT

15 HOUSE?

16    A    216 NORTHEAST 10TH AVENUE.

17    Q    IS THAT CLOSE TO SANTA FE COMMUNITY COLLEGE?

18    A    IT'S IN THE DUCK POND AREA.  I DON'T KNOW.

19 IT'S A HISTORIC AREA.

20    Q    I KNOW EXACTLY WHERE THE DUCK POND AREA IS.

21 DOES SOMEBODY CURRENTLY RESIDE AT THAT PROPERTY?

22    A    YES.

23    Q    OKAY.  WHO CURRENTLY LIVES THERE?

24    A    MY NEPHEW.

25    Q    DOES HE GO TO SCHOOL THERE AS WELL?

---

1    A    YES.

2    Q    DOES HE PAY RENT TO YOU GUYS?

3    A    NO, HE DOESN'T.

4    Q    HAVE YOU OR YOUR HUSBAND TRANSFERRED ANY

5 OTHER PROPERTY TO GRANDE LEGACY GROUP OTHER THAN THE

6 GAINESVILLE PROPERTY OR THE ROAT DRIVE PROPERTY?

7    A    YES.  WE HAVE TWO LAND PARCELS.

8    Q    WHERE ARE THOSE LAND PARCELS?

9    A    ONE IS AT SATELLITE BEACH AND ONE IS IN

10 PALMA VISTA.

11    Q    WHAT ARE THE ADDRESSES OF THOSE PROPERTIES?

12    A    NO CLUE.

13    Q    LET'S TALK ABOUT THE SATELLITE BEACH

14 PROPERTY.  WHEN DID YOU PURCHASE THE SATELLITE BEACH

15 PROPERTY?

16    A    I DON'T KNOW.  2000 SOMETHING.

17    Q    DO YOU KNOW HOW MUCH YOU PAID FOR IT?

18    A    NO.

19    Q    DO YOU REMEMBER HOW YOU PURCHASED IT?

20 MEANING, DID YOU TAKE OUT A LOAN OR DID YOU PAY CASH

21 FOR IT?

22    A    I THINK WE PAID CASH FOR IT.

23    Q    DO YOU KNOW IF THERE'S ANY MORTGAGE OR ANY

24 OTHER LIEN ON THAT PROPERTY?

25    A    NO.

---

1    Q    WHERE IS THE OTHER LOT?

2    A    IN PALMA VISTA.

3    Q    PALMA VISTA.  SAME NEIGHBORHOOD THAT YOU

4 LIVE IN?

5    A    RIGHT.

6    Q    WHAT IS ITS ADDRESS?

7    A    I KNOW THE STREET.  I DON'T KNOW STREET

8 NUMBER.  IT'S ON KETTLE DRIVE — K E T T L E.

9    Q    WHEN DID YOU BUY THAT PROPERTY?

10    A    I HAVE NO IDEA.

11    Q    AND WHEN YOU TRANSFERRED THE PROPERTY — THE

12 SATELLITE BEACH PROPERTY TO GRANDE LEGACY, DID THEY

13 GIVE YOU ANYTHING IN RETURN?

14    A    I DON'T KNOW.

15    Q    OKAY.  DO YOU REMEMBER EXECUTING DOCUMENTS

16 SIMILAR TO THE EXHIBITS WE JUST WENT THROUGH RELATED

17 TO THOSE PROPERTIES AS WELL?

18    A    I DON'T KNOW.

19    Q    THE LOT THAT'S IN YOUR CURRENT NEIGHBORHOOD,

20 HOW DID YOU GUYS PAY FOR THAT LOT?

21    A    THAT WAS CASH.

22    Q    DO YOU HAVE ANY REASON TO BELIEVE THAT

23 THERE'S A MORTGAGE ON THAT PROPERTY?

24    A    NO.  NO MORTGAGE.

25    Q    NO MORTGAGE?  OKAY.  WHAT'S YOUR INTENTION

1  WITH RESPECT TO THAT PROPERTY?
2       A    WHEN WE ORIGINALLY BUILT IT, WE WERE GOING
3  TO BUILD A SINGLE-FAMILY HOME; AND THEN THE REAL
4  ESTATE MARKET TOOK A HEADER AND IT REALLY HASN'T
5  EVEN -- THE PROPERTY VALUES HAVEN'T COME BACK IN PALMA
6  VISTA WHERE IT'S EVEN WORTH ANY PUTTING UP A HOUSE.
7  IT WOULD COST TOO MUCH TO BUILD ACCORDING TO HOW YOU
8  HAVE TO BUILD IN PALMA VISTA TO SELL.
9       Q    DO YOU KNOW IF THERE -- ARE EITHER THE
10  SATELLITE BEACH OR THE -- OR YOUR CURRENT
11  NEIGHBORHOOD'S LOT, ARE THEY LISTED FOR SALE?
12      A    NO.
13      Q    DO YOU PLAN ON LISTING THEM?
14      A    I DON'T -- THEY WERE AT ONE TIME, BUT I
15  DON'T THINK THEY ARE NOW.
16      Q    DO YOU PLAN ON LISTING THEM FOR SALE?
17      A    NO.  I MEAN, IF SOMEONE OFFERED ME
18  SOMETHING, I DON'T KNOW.
19      Q    FAIR ENOUGH.  FAIR ENOUGH.  OKAY.  DO YOU
20  KNOW WHO JENNIFER SANDMAN IS?
21      A    MY DAUGHTER.
22      Q    HOW OLD IS SHE?
23      A    THIRTY-FOUR.
24      Q    ARE YOU AWARE THAT SHE IS A TRUSTEE OF THE
25  GRANDE LEGACY GROUP TRUST?

---

1       A    NO.
2       Q    I CAN'T REMEMBER WHAT EXHIBIT THIS IS, BUT
3  IT'S THIS DOCUMENT -- TEXAS JOINT STOCK COMPANY OF
4  GRANDE LEGACY GROUP.  ON PAGE --
5       A    NUMBER FIVE?
6       Q    -- ON PAGE 14 OF 15.  DO YOU SEE HER NAME
7  THERE?
8       A    I DO.
9       Q    DO YOU RECOGNIZE HER SIGNATURE?
10      A    YES.
11      Q    ARE YOU SURPRISED THAT SHE WOULD HAVE SIGNED
12  THIS DOCUMENT?
13      A    TO TELL YOU THE TRUTH, WHEN I SIGNED IT I
14  THOUGHT IT WAS A WITNESS.  SO, YEAH, I'M SURPRISED.
15      Q    OKAY.  ON THE NEXT PAGE, IS THAT YOUR
16  DAUGHTER JILL?
17      A    YES.
18      Q    IT SAYS "SECOND SUCCESSOR TRUSTEE?"
19      A    YES.
20      Q    ARE YOU SURPRISED TO SEE HER SIGN THAT AS
21  WELL?
22      A    LIKE, AGAIN, I THOUGHT IT WAS A WITNESS.  I
23  GUESS I DIDN'T SEE THE TITLE.
24      Q    OKAY.  GOING BACK TO KELLY BOSECKER -- WHICH
25  THE LAST NAME IS B O S E C K E R -- DO YOU KNOW IF YOU

---

1  ARE -- YOU OR YOUR HUSBAND ARE CURRENTLY PAYING
2  ANYTHING TO MS. BOSECKER FOR GRANDE LEGACY'S DEFENSE
3  OF ANY PROCEEDING?
4       A    I BELIEVE SO, BUT I DON'T KNOW FOR SURE.
5       Q    WHO WOULD KNOW?
6       A    JOE.
7       Q    DO YOU HAVE AN ACCOUNTANT THAT PREPARES YOUR
8  TAX RETURNS?
9       A    YES.
10      Q    WHO IS YOUR ACCOUNTANT?
11      A    WELL, SOME OF THE TAX RETURNS THAT I GAVE
12  YOU WAS THE CPA FIRM WARMUS -- LET'S SEE -- IT USED TO
13  BE OSBURN HENNING.  RON PERSONS IS OUR TAX ACCOUNTANT
14  OR CPA.  LAST YEAR IT WAS SOMEONE NEW.  BECAUSE I
15  COULDN'T AFFORD OSBURN HENNING.
16      Q    DOES THE NAME RONNIE PITINO --
17      A    YES.  HE'S THE ONE WE USED LAST YEAR.
18      Q    IS HE WITH THE SAME FIRM?
19      A    NO.
20      Q    HE'S TOTALLY DIFFERENT FIRM?
21      A    HE'S INDEPENDENT.  YEAH.
22      Q    HE'S IN APOPKA?
23      A    WHATEVER HE PUT THERE.
24      Q    ASIDE FROM THE HOUSE THAT YOU LIVE IN, THE
25  THE GAINESVILLE PROPERTY, AND THE TWO LOTS, HAVE YOU

---

1  AND YOUR HUSBAND, OVER THE LAST FOUR YEARS,
2  TRANSFERRED ANY PROPERTY?
3       A    NO.
4       Q    HAVE YOU TRANSFERRED ANYTHING ELSE TO THE
5  GRANDE LEGACY GROUP?
6       A    NO.
7       Q    OKAY.
8            MR. LUNA:  I THINK THAT'S ALL I HAVE.  I
9  APPRECIATE YOU FOR YOUR TIME.  YOU HAVE THE RIGHT
10  TO EITHER READ THE TRANSCRIPT OR WAIVE THAT
11  RIGHT.  WHEN YOU READ IT, YOU HAVE THE RIGHT TO
12  NOT NECESSARILY CORRECT OR CHANGE YOUR TESTIMONY,
13  BUT IF THERE'S SOME, YOU KNOW, MISSPELLINGS AND
14  WHATNOT, TO TAKE A LOOK AT THAT AND SIGN.  IT'S
15  CALLED AN ERRATA SHEET.  WOULD YOU LIKE THE RIGHT
16  TO READ IT OR WOULD YOU LIKE TO WAIVE THAT RIGHT?
17           THE WITNESS:  I'D LIKE TO READ IT.
18           MR. LUNA:  OKAY.  ALL RIGHT.  THANK YOU VERY
19  MUCH.  WE WILL ORDER.
20           THE WITNESS:  OKAY.  I'LL LEAVE THAT PILE
21  FOR YOU.
22           MR. LUNA:  THANK YOU VERY MUCH.
23           (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED
24  AT 9:50.)
25

CERTIFICATE OF OATH

STATE OF FLORIDA)

COUNTY OF ORANGE)

    I, SANDRA A. MOSER, FLORIDA PROFESSIONAL
REPORTER, NOTARY PUBLIC, STATE OF FLORIDA, HEREBY
CERTIFY THAT JODELL M. ALTIER PERSONALLY APPEARED
BEFORE ME AND WAS DULY SWORN ON THE 6TH DAY OF
NOVEMBER 2015.

    WITNESS MY HAND AND OFFICIAL SEAL THIS 6TH DAY OF
NOVEMBER 2015.


IDENTIFICATION:
        PERSONALLY KNOWN              _____
        OR PRODUCED IDENTIFICATION    _____
        TYPE OF IDENTIFICATION PRODUCED   _____



                        _____
                        SANDRA A. MOSER, RPR, FPR
                        NOTARY PUBLIC
                        STATE OF FLORIDA AT LARGE
                        MY COMMISSION NO. FF113959
                        MY COMMISSION EXPIRES: 5/6/2018

---

SUBSCRIPTION OF DEPONENT

STATE OF FLORIDA

COUNTY OF ORANGE

        I, JODELL M. ALTIER, DO HEREBY CERTIFY,
    HAVING READ THE FOREGOING DEPOSITION, THAT SAID
    TRANSCRIPT IS A TRUE AND ACCURATE RECORDING OF
    THE PROCEEDINGS HAD AT THE TIME AND PLACE
    DESIGNATED, INCLUDING CORRECTIONS NOTED ON THE
    ERRATA SHEET, IF ANY.


_____
JODELL M. ALTIER
DATE:
        SWORN TO AND SUBSCRIBED BEFORE ME THIS _____ DAY
OF _____, _____.

_____
NOTARY PUBLIC
MY COMMISSION EXPIRES:


                        ERRATA SHEET
I, JODELL M. ALTIER, WISH TO MAKE THE FOLLOWING
CORRECTIONS:
PAGE LINE CORRECTION

---

                    REALTIME REPORTERS, INC.
                    1106 CHARMING STREET
                    MAITLAND, FL 32751

                        407-884-4662


NOVEMBER 6, 2015


MRS. JODELL M. ALTIER
2507 ROAT DRIVE
ORLANDO, FL 32835


IN RE: JODELL M. ALTIER

        CASE NO.: 6:15-BK-01838-KSJ
        DEPOSITION OF JODELL M. ALTIER


DEAR MRS. ALTIER:


YOUR DEPOSITION IS NOW READY FOR READING AND SIGNING.
PLEASE CONTACT MY OFFICE TO MAKE ARRANGEMENTS TO DO
SO.  UNDER THE RULES OF COURT, YOU HAVE 30 DAYS TO
COMPLETE SAME.  SHOULD YOU FAIL TO READ AND SIGN YOUR
TRANSCRIPT, IT MAY BE FILED WITHOUT YOUR SIGNATURE.

IF YOU HAVE ANY QUESTIONS, PLEASE DO NOT HESITATE TO
CALL.

SINCERELY,



SANDRA A. MOSER,, RPR, FPR

| | | |
|---|---|---|
| **'** | **ABSCONDING [1]** 13/25 | **ASIDE [2]** 16/18 35/24 |
| **'96 [1]** 7/13 | **ACCEPTED [1]** 22/9 | **ASK [3]** 23/5 25/22 |
| **'98 [2]** 7/20 9/14 | **ACCORDING [1]** 33/7 | **ASKED [1]** 6/22 |
| | **ACCOUNTANT [3]** 35/7 35/10 35/13 | **ASSET [2]** 11/4 15/4 |
| **1** | **ACCURATE [4]** 10/23 13/15 19/20 38/7 | **ASSOCIATED [1]** 16/3 |
| **10TH [1]** 30/16 | **ACQUIRED [1]** 12/13 | **ASSOCIATION [2]** 13/22 15/8 |
| **1106 [1]** 39/1 | **ACTION [2]** 14/2 27/21 | **AT [20]** 4/20 6/9 11/19 13/8 |
| **111 [2]** 1/15 2/6 | **ACTUALLY [2]** 14/25 24/21 | 13/23 14/10 17/2 18/1 23/3 |
| **12 [1]** 20/11 | **ADDRESS [5]** 4/18 4/20 12/16 | 23/14 23/18 26/12 27/8 30/21 |
| **13 [3]** 20/11 20/19 26/15 | 30/14 32/6 | 31/9 33/14 36/14 36/24 37/19 |
| **13TH [1]** 23/24 | **ADDRESSES [1]** 31/11 | 38/8 |
| **14 [2]** 20/11 34/6 | **AFFIRMATIVE [4]** 8/10 9/23 | **ATTACHED [1]** 19/19 |
| **1400 [2]** 1/16 2/6 | 11/25 26/19 | **ATTORNEY [5]** 2/8 25/21 25/23 |
| **15 [5]** 18/16 18/17 19/6 | **AFFORD [1]** 35/15 | 28/24 28/24 |
| 20/11 34/6 | **AFTER [4]** 14/3 14/4 15/8 | **AVENUE [1]** 1/15 2/6 30/16 |
| **17 [2]** 13/14 22/6 | 15/13 | **AWARE [3]** 27/20 28/4 33/24 |
| **18TH [1]** 13/17 | **AGAIN [1]** 34/22 | |
| **1996 [2]** 7/11 8/16 | **AGAINST [2]** 14/5 27/21 | **B** |
| **1998 [3]** 4/21 7/10 10/4 | **AGO [2]** 5/7 21/2 | **BACK [4]** 9/18 22/15 33/5 |
| | **AGREE [6]** 12/25 22/5 24/17 | 34/24 |
| **2** | 26/1 26/8 26/10 | **BALLPARK [1]** 9/8 |
| **2000 [1]** 31/16 | **AGREEMENT [1]** 3/12 | **BANK [2]** 14/9 14/25 |
| **2004 [2]** 1/11 3/9 | **AHEAD [1]** 20/10 | **BANKRUPTCY [3]** 1/3 3/17 25/15 |
| **2005 [1]** 30/9 | **ALL [11]** 6/4 13/8 13/25 | **BE [16]** 4/3 4/4 6/13 7/10 |
| **2013 [6]** 13/14 14/15 20/19 | 14/23 15/18 15/18 16/9 18/25 | 7/12 7/19 7/20 15/9 15/10 |
| 21/4 22/6 23/25 | 24/15 36/8 36/18 | 15/15 16/15 22/1 22/17 28/7 |
| **2014 [1]** 15/2 | **ALREADY [1]** 6/17 | 35/13 39/16 |
| **2015 [4]** 1/13 37/8 37/10 | **ALSO [2]** 15/15 22/8 | **BEACH [5]** 31/9 31/13 31/14 |
| 39/5 | **ALTIER [32]** 1/8 1/12 2/2 3/2 | 32/12 33/10 |
| **2018 [1]** 37/20 | 4/8 4/14 4/16 5/9 7/4 12/3 | **BEAUDINE [2]** 1/15 2/5 |
| **216 [1]** 30/16 | 12/4 13/1 15/8 17/6 17/10 | **BECAME [1]** 22/22 |
| **2507 [6]** 2/2 4/19 12/16 | 18/18 19/15 19/15 20/13 | **BECAUSE [4]** 15/17 17/19 26/7 |
| 13/13 27/9 39/7 | 20/16 21/24 22/3 27/25 29/7 | 35/14 |
| | 37/6 38/5 38/12 38/20 39/7 | **BEDROOM [1]** 9/11 |
| **3** | 39/10 39/11 39/13 | **BEEN [15]** 4/9 6/8 6/16 7/5 |
| **30 [1]** 39/15 | **AMOUNT [1]** 14/23 | 7/22 10/2 11/18 12/19 14/10 |
| **32751 [1]** 39/2 | **ANSWER [1]** 8/14 | 16/3 17/1 17/25 21/20 23/13 |
| **32801 [2]** 1/16 2/7 | **ANTICIPATE [1]** 5/20 | 25/10 |
| **32835 [3]** 2/3 4/19 39/8 | **ANY [39]** 6/1 6/15 9/25 10/6 | **BEFORE [11]** 5/6 6/2 16/12 |
| **35TH [1]** 29/4 | 10/9 10/10 11/10 12/15 12/15 | 18/20 18/23 25/23 28/16 |
| | 12/16 12/20 13/4 13/7 14/19 | 28/25 29/24 37/7 38/14 |
| **4** | 15/25 16/11 16/14 19/22 | **BEGIN [1]** 6/2 |
| **407-481-5800 [1]** 2/7 | 22/16 22/25 23/2 24/23 24/25 | **BEING [3]** 13/18 19/18 26/6 |
| **407-884-4662 [1]** 39/3 | 25/3 25/21 25/23 27/15 27/18 | **BELIEVE [13]** 9/4 12/20 13/20 |
| **41 [1]** 26/13 | 28/12 28/13 31/4 31/23 31/23 | 14/12 20/15 20/20 20/21 |
| **4500 [1]** 9/11 | 32/22 33/6 35/3 36/2 38/10 | 21/11 22/1 24/23 25/4 32/22 |
| **4662 [1]** 39/3 | 39/17 | 35/4 |
| | **ANYBODY [4]** 10/15 13/18 23/3 | **BELIEVED [1]** 24/17 |
| **5** | 25/19 | **BEST [1]** 5/24 |
| **5/6/2018 [1]** 37/20 | **ANYTHING [5]** 16/19 26/10 | **BETWEEN [1]** 20/1 |
| **5800 [1]** 2/7 | 32/13 35/2 36/4 | **BIG [2]** 9/10 13/23 |
| | **APOPKA [1]** 35/22 | **BK [2]** 1/5 39/11 |
| **6** | **APPEARED [1]** 37/6 | **BOARD [3]** 13/21 14/1 14/3 |
| **6-15 [1]** 18/17 | **APPEARS [1]** 18/15 | **BONDS [1]** 20/6 |
| **6:15-BK-01838-KSJ [2]** 1/5 | **APPRECIATE [1]** 36/9 | **BOSECKER [3]** 28/15 34/24 35/2 |
| 39/11 | **APPROACHED [1]** 19/15 | **BOTTOM [3]** 11/22 18/15 23/19 |
| **6TH [2]** 37/7 37/9 | **APPROXIMATELY [2]** 7/10 21/4 | **BOUGHT [2]** 8/12 30/13 |
| | **ARE [22]** 4/22 7/1 16/6 20/5 | **BREAK [2]** 5/19 5/20 |
| **8** | 20/6 20/11 24/6 25/14 27/15 | **BROTHER [1]** 21/5 |
| **8-15 [1]** 19/6 | 27/18 27/20 28/4 31/8 31/11 | **BUILD [5]** 8/18 8/22 33/3 |
| | 33/9 33/11 33/15 33/24 34/11 | 33/7 33/8 |
| **9** | 34/20 35/1 35/1 | **BUILDING [1]** 29/4 |
| **9:00 [1]** 1/14 | **AREA [3]** 30/18 30/19 30/20 | **BUILT [3]** 8/23 8/25 33/2 |
| **9:50 [2]** 1/14 36/24 | **AROUND [3]** 11/17 8/15 30/9 | **BURDEN [2]** 22/18 22/19 |
| | **ARRANGEMENTS [1]** 39/15 | **BUSINESS [2]** 5/11 5/12 |
| **A** | **AS [28]** 4/9 6/6 6/8 7/15 | **BUSINESSES [2]** 12/23 26/17 |
| **A.M [2]** 1/14 1/14 | 7/22 11/16 11/18 11/24 14/3 | **BUT [20]** 5/14 7/19 7/20 8/15 |
| **ABILITY [1]** 5/25 | 16/24 17/1 17/23 17/25 18/18 | 10/20 12/11 12/25 14/5 15/2 |
| **ABLE [1]** 15/9 | 21/18 21/20 22/9 22/11 23/11 | 18/14 21/15 25/3 25/22 26/8 |
| **ABOUT [13]** 4/4 6/1 9/11 11/9 | 23/13 25/8 25/10 26/25 27/22 | 27/1 28/19 33/14 34/2 35/4 |
| 13/9 13/21 14/21 15/10 15/15 | 27/22 30/25 32/17 34/20 | 36/13 |
| 26/10 27/23 29/16 31/13 | | **BUY [1]** 32/9 |
| **ABOVE [2]** 22/2 23/21 | | **BUYING [1]** 24/17 |

**C**

CALL [3]   14/20 14/22 39/16
CALLED [3]   11/9 14/22 36/15
CAME [1]   15/8
CAN [2]   4/13 5/14
CAN'T [1]   34/2
CAR [1]   20/6
CASE [4]   1/5 5/8 5/14 39/11
CASH [3]   31/20 31/22 32/21
CERTIFICATE [4]   3/16 16/10
 24/9 37/1
CERTIFY [2]   37/6 38/5
CHANCE [5]   5/3 11/20 17/3
 18/2 23/15
CHANGE [1]   36/12
CHARGE [1]   22/18
CHARMING [1]   39/1
CLARIFY [2]   5/24 20/3
CLEAR [1]   5/18
CLEARLY [1]   5/15
CLOSE [1]   30/17
CLOSING [1]   10/2
CLOSINGS [1]   13/8
CLOTHING [1]   20/5
CLUE [1]   31/12
COLLEGE [1]   30/17
COME [2]   15/13 33/5
COMING [2]   14/3 14/4
COMMISSION [3]   37/20 37/20
 38/17
COMMUNITY [1]   30/17
COMPANY [12]   3/13 5/2 5/9
 10/21 15/11 15/13 18/8 19/18
 21/11 25/1 29/8 34/3
COMPENSATION [1]   28/13
COMPLETE [1]   39/16
COMPRISING [1]   19/19
CONCEPT [1]   24/11
CONCLUDED [1]   36/23
CONGRATULATIONS [1]   7/7
CONSIDERED [1]   20/7
CONSTRUCTION [3]   9/3 9/4 9/15
CONSULT [2]   25/21 25/23
CONTACT [1]   39/15
CONTAINED [1]   19/17
CONTEXT [1]   29/12
CONTINUE [1]   27/12
CONTRACT [1]   8/22
CONTRACTOR [1]   8/23
CONVERSATION [1]   28/19
CONVERT [1]   9/16
CONVEYANCE [1]   12/15
CONVEYED [1]   13/12
CONVICTED [1]   13/25
CORRECT [8]   8/9 10/4 13/2
 13/3 26/3 26/4 26/18 36/12
CORRECTION [1]   38/22
CORRECTIONS [2]   38/9 38/21
CORRESPONDENCE [1]   23/3
COST [1]   33/7
COULD [7]   5/15 7/12 7/19
 7/20 9/17 23/9 26/25
COULDN'T [1]   35/15
COUNTY [4]   12/4 12/6 37/3
 38/4
COUPLE [2]   21/3 28/21
COURSE [1]   14/2
COURT [4]   1/3 3/17 5/17
 39/15
CPA [2]   35/12 35/14
CREATE [2]   15/21 18/10
CREATED [2]   17/13 23/5

CREATOR [2]   18/18 19/15
CREDITOR [1]   2/2
CURRENT [4]   4/18 4/22 32/19
 33/10
CURRENTLY [5]   14/13 27/15
 30/21 30/23 35/1

**D**

DARRIN [2]   20/22 22/8
DASH [1]   18/16
DATE [3]   14/14 15/3 38/13
DATED [3]   20/19 22/5 23/24
DAUGHTER [3]   28/3 33/21 34/16
DAY [5]   20/20 23/24 37/7
 37/9 38/14
DAYS [1]   39/15
DEAR [1]   39/13
DEBORAH [1]   7/25
DEBT [1]   15/14
DEBTOR [2]   1/9 2/2
DEED [8]   3/10 3/11 12/15
 13/5 13/16 14/10 15/18 16/20
DEFAULT [1]   14/19
DEFENSE [1]   35/2
DENOTES [1]   24/10
DEPONENT [1]   38/2
DEPOSITION [5]   1/12 5/6 38/6
 39/11 39/14
DESCRIBED [1]   12/17
DESCRIPTION [1]   27/1
DESIGNATED [1]   38/9
DETERMINE [1]   16/15
DEVELOPER [2]   8/1 13/22
DID [47]
DIDN'T [11]   6/17 11/10 12/11
 12/12 14/2 15/22 16/13 24/22
 26/7 27/2 34/23
DIFFERENCE [1]   20/1
DIFFERENT [1]   35/20
DIRECT [2]   3/3 4/11
DISCUSSED [2]   22/13 25/22
DISPUTE [2]   5/11 5/12
DISTRIBUTION [1]   28/12
DISTRICT [1]   1/3
DIVISION [1]   1/4
DO [79]
DOCUMENT [26]   6/5 7/14 7/23
 10/22 11/15 13/4 16/23 17/13
 17/16 17/18 17/19 17/22 18/5
 18/7 18/10 18/20 21/17 21/21
 23/10 24/2 24/3 25/7 25/11
 28/8 34/3 34/12
DOCUMENTATION [1]   9/25
DOCUMENTS [10]   6/12 6/14 6/15
 6/17 10/1 10/22 12/10 12/11
 18/23 32/15
DOES [12]   10/23 10/24 13/15
 19/11 19/20 21/10 21/12 30/5
 30/21 30/25 31/2 35/16
DOESN'T [1]   31/3
DOING [1]   8/16
DOLLARS [1]   19/16
DON'T [56]
DOWN [1]   27/2
DRIVE [9]   2/2 4/19 10/18
 12/16 13/13 27/9 31/6 32/8
 39/7
DUCK [2]   30/18 30/20
DUE [2]   14/23 25/14
DULY [2]   4/9 37/7
DURING [1]   13/18

**E**

EACH [2]   18/15 21/14

EDEN [2]   1/15 2/5
EDWARD [1]   2/2
EIGHT [2]   7/6 25/11
EITHER [3]   24/24 33/9 36/10
ELECTED [1]   14/1
ELSE [2]   10/15 36/4
ENCUMBRANCES [1]   15/18
ENOUGH [4]   19/1 27/8 33/19
 33/19
ERRATA [3]   36/15 38/10 38/19
ESQUIRE [1]   2/5
ESTATE [1]   33/4
ETERNITY [1]   7/6
EVEN [3]   27/2 33/5 33/6
EVER [11]   10/14 10/17 12/15
 13/4 14/5 16/3 16/14 21/15
 23/2 28/15 29/9
EVERYBODY [1]   13/24
EVERYTHING [1]   6/21
EXACTLY [1]   30/20
EXAMINATION [4]   1/11 3/3 3/9
 4/11
EXAMINED [1]   4/9
EXCEPT [1]   12/17
EXCHANGE [2]   16/8 16/19
EXCHANGED [2]   10/20 24/14
EXCHANGER [2]   18/18 19/16
EXCHANGER/CREATOR [1]   18/18
EXCLUDE [1]   26/5
EXECUTED [1]   20/20
EXECUTING [1]   32/15
EXHIBIT [23]   6/6 6/9 6/10
 7/15 7/22 11/16 11/19 12/14
 12/18 13/1 14/11 16/24 17/2
 17/23 18/1 21/18 21/21 23/5
 23/11 23/14 25/8 25/11 34/2
EXHIBITS [1]   32/16
EXPECT [1]   5/22
EXPENSES [1]   22/25
EXPIRES [2]   37/20 38/17

**F**

FAIL [1]   39/16
FAIR [5]   7/10 19/1 27/8
 33/19 33/19
FAMILIAR [1]   10/24
FAMILY [3]   10/3 29/18 33/3
FE [1]   30/17
FEES [1]   14/4
FEET [1]   9/12
FELON [1]   13/25
FEW [1]   21/5
FF113959 [1]   37/20
FIFTH [1]   26/15
FILED [5]   14/5 14/10 15/1
 25/15 39/16
FILING [1]   25/23
FINANCE [1]   9/2
FINANCIALS [2]   16/14 23/2
FIND [3]   5/19 6/15 11/5
FIRM [3]   35/12 35/18 35/20
FIRST [5]   8/6 12/3 19/14
 20/25 29/3
FIVE [5]   9/11 18/1 34/5
FIVE-BEDROOM [1]   9/11
FL [5]   1/16 2/3 2/7 39/2
 39/8
FLORIDA [9]   1/3 12/5 12/6
 30/12 37/2 37/4 37/5 37/19
 38/3
FOLLOWING [1]   38/20
FOLLOWS [1]   4/10
FORECLOSURE [4]   14/8 15/1

**F**

FORECLOSURE... [2] 27/21 29/4
FOREGOING [1] 38/6
FOUR [3] 17/2 33/23 36/1
FPR [3] 1/18 37/18 39/22
FRIENDS [1] 21/5
FULL [1] 4/13

**G**

GAINESVILLE [7] 29/14 29/16
29/17 29/18 30/8 31/6 35/25
GATORS [2] 30/13 30/14
GAVE [1] 35/11
GENERAL [1] 8/23
GENERALLY [4] 20/3 20/7 24/9
28/19
GET [4] 5/17 13/24 14/2
20/10
GIRLS [1] 30/12
GIVE [2] 4/4 32/13
GIVEN [1] 21/14
GIVING [1] 15/19
GO [5] 5/13 20/10 30/13
30/14 30/25
GOD [1] 4/5
GOES [1] 15/19
GOING [8] 7/17 20/9 21/20
22/16 22/17 30/9 33/2 34/24
GOOD [1] 5/19
GOSHEN [1] 2/8
GRANDE [44]
GROUND [1] 5/13
GROUP [38] 3/14 3/15 10/24
11/3 11/6 13/10 15/6 15/21
16/1 16/4 16/7 16/15 17/7
17/11 18/9 18/16 19/6 19/7
19/23 22/17 22/20 22/24 23/3
24/4 24/7 24/11 24/18 26/3
26/24 27/16 27/22 27/24 28/5
28/13 31/5 33/25 34/9 34/23
GROUP-INDIVIDUALLY [1] 17/11
GUESS [5] 10/21 20/1 26/25
30/9 34/23
GUYS [3] 22/20 31/2 32/20

**H**

HAD [16] 5/6 6/13 6/22 9/4
9/15 10/1 11/20 12/23 14/9
14/19 17/3 18/2 21/14 23/15
26/7 38/8
HADN'T [1] 21/13
HAND [3] 4/3 21/20 37/9
HANDING [7] 6/8 7/21 11/18
17/1 17/25 23/13 25/10
HANDLE [1] 11/10
HANDLED [3] 11/12 12/24 18/25
HARD [2] 5/17 18/14
HAS [2] 27/3 29/9
HASN'T [1] 33/4
HAVE [49]
HAVEN'T [1] 33/5
HAVING [2] 4/9 38/6
HE [20] 13/3 13/5 13/8 13/24
17/20 19/3 21/8 21/10 21/11
21/12 22/11 22/13 22/16
22/17 23/9 30/25 31/2 31/3
35/18 35/23
HE'S [5] 21/5 35/17 35/20
35/21 35/22
HEAD [5] 5/4 5/5 5/17 14/2
21/7
HEADER [1] 33/4

HEADING [1] 22/14
HELP [3] 8/15 25/14 29/2
HENNING [2] 35/15 35/15
HER [8] 28/20 28/21 28/23
28/25 29/3 34/6 34/9 34/20
HERE [5] 7/21 12/3 12/17
19/14 26/3
HEREBY [2] 37/5 38/5
HERETO [1] 19/19
HESITATE [1] 39/17
HIAWASSEE [1] 8/5
HIM [4] 13/24 14/2 20/24
20/25
HIRE [1] 8/21
HISTORIC [1] 30/19
HOLD [1] 16/6
HOME [5] 8/18 8/22 15/9
29/18 33/3
HOUSE [12] 7/19 9/10 9/13
10/14 10/17 10/18 13/6 13/8
20/4 30/15 33/6 35/24
HOUSES [3] 10/6 10/8 10/9
HOW [15] 4/15 4/20 7/5 8/12
9/6 9/10 11/1 11/5 21/2
28/10 31/7 31/19 32/20 33/7
33/22
HUNDRED [2] 8/15 9/9
HUSBAND [13] 13/1 13/12 16/11
16/19 21/12 23/8 24/24 24/25
27/22 30/7 31/4 35/1 36/1
HUSBAND'S [6] 7/3 19/9 19/11
20/16 22/1 23/21

**I**

I'D [1] 36/17
I'LL [5] 5/13 5/22 5/24 20/3
36/20
I'M [16] 6/8 6/20 7/17 7/19
7/21 9/9 11/18 15/2 17/1
17/25 20/9 21/20 23/13 25/10
30/9 34/14
I'VE [1] 28/21
IDEA [1] 32/10
IDENTIFICATION [11] 6/6 7/15
11/16 16/24 17/23 21/18
23/11 25/8 37/12 37/14 37/15
IF [29] 5/15 5/18 5/23 6/9
6/10 7/10 7/23 8/14 9/25
10/19 10/23 14/8 15/7 15/13
18/16 21/15 22/24 24/25
26/15 27/23 28/4 28/7 31/23
33/9 33/17 34/25 36/13 38/10
39/17
IN [50]
INC [1] 39/1
INCLUDED [2] 26/23 27/24
INCLUDES [1] 12/5
INCLUDING [1] 38/9
INCORPORATED [1] 26/16
INDEPENDENT [1] 35/21
INDIVIDUAL [1] 29/9
INDIVIDUALLY [1] 17/11
INITIATED [1] 14/9
INK [1] 7/25
INTEND [2] 8/16 27/12
INTENTION [2] 27/11 32/25
INTEREST [8] 11/2 13/13 24/10
24/18 26/9 26/16 26/23 29/10
INTO [3] 7/19 9/13 9/24
INVOLVED [2] 22/14 29/14
IS [57]
IT [80]
IT'S [16] 5/17 12/19 18/14

19/6 20/19 22/5 23/24 24/3
27/7 29/19 30/18 30/19 32/8
33/6 34/5 36/14
ITEMIZE [1] 26/17
ITS [2] 5/3 32/6

**J**

JENNIFER [1] 33/20
JILL [3] 27/25 28/1 34/16
JODELL [22] 1/8 1/12 2/2 3/2
4/8 4/14 4/16 12/3 15/8 17/6
17/10 18/18 19/15 20/12
21/24 37/6 38/5 38/12 38/20
39/7 39/10 39/11
JOE [11] 8/23 11/13 12/8
12/24 17/19 18/25 19/1 22/13
27/23 30/1 35/6
JOINT [4] 3/13 18/8 19/17
34/3
JOSEPH [6] 7/4 12/4 13/1
19/15 20/15 22/2
JUST [6] 5/13 5/14 8/7 14/7
19/25 32/16
JUSTIN [1] 2/5

**K**

KEEP [1] 5/18
KELLY [2] 28/15 34/24
KETTLE [1] 32/8
KIND [1] 14/23
KNOW [83]
KNOWN [2] 28/21 37/13
KSJ [2] 1/5 39/11

**L**

LAND [8] 8/1 10/12 10/13
12/13 20/4 20/4 31/7 31/8
LARGE [1] 37/19
LAST [5] 20/23 34/25 35/14
35/17 36/1
LATHAM [2] 1/15 2/5
LAVINE [3] 20/22 20/23 22/8
LAW [1] 21/6
LAWSUIT [1] 14/5
LAWSUITS [1] 13/23
LEASE [1] 5/12
LEAVE [1] 36/20
LEFT [1] 11/22
LEGACY [43]
LEGACY'S [1] 35/2
LEGAL [1] 14/4
LET [10] 5/4 5/19 5/23 6/10
7/22 11/19 16/22 17/3 18/2
23/15
LET'S [6] 6/23 7/13 7/21
13/9 31/13 35/12
LETTERS [2] 14/19 14/20
LIEN [1] 31/24
LIKE [11] 5/16 8/7 10/21
13/14 19/11 20/5 23/23 34/22
36/15 36/16 36/17
LINE [4] 12/3 17/9 26/15
38/22
LIST [1] 19/18
LISTED [3] 26/6 26/25 33/11
LISTING [2] 33/13 33/16
LIVE [4] 29/15 30/13 32/4
35/24
LIVED [2] 4/20 10/3
LIVES [2] 21/8 30/23
LIVING [3] 21/10 27/12 27/14
LLC [1] 2/8
LLP [1] 2/5

## L

**LOAN [5]** 9/4 9/15 9/16 10/1
31/20
**LOCATION [1]** 1/15
**LONG [5]** 4/20 5/7 5/21 7/5
21/2
**LOOK [8]** 6/9 11/19 13/15
17/2 18/1 19/11 23/14 36/14
**LOOKED [1]** 10/21
**LOOKS [3]** 8/7 13/14 23/23
**LOT [13]** 7/18 8/11 8/12 8/13
8/17 12/19 12/22 13/3 13/5
32/1 32/19 32/20 33/11
**LOTS [1]** 35/25
**LUNA [10]** 2/5 3/3 4/12 6/7
11/17 16/25 17/24 21/19
23/12 25/9

## M

**MA'AM [1]** 28/2
**MAGNOLIA [2]** 1/15 2/6
**MAITLAND [1]** 39/2
**MAKE [2]** 38/20 39/15
**MAKING [2]** 9/19 14/13
**MANAGER [1]** 29/8
**MARIE [3]** 4/14 4/16 21/24
**MARKED [16]** 6/5 6/8 7/14 7/22
11/15 11/18 16/23 17/1 17/22
17/25 21/17 21/20 23/10
23/13 25/7 25/10
**MARKET [1]** 33/4
**MARRIED [2]** 7/1 7/5
**MASTER [2]** 13/21 15/7
**MAY [1]** 39/16
**ME [25]** 5/4 5/19 5/23 6/10
6/18 7/22 8/3 11/1 11/19
12/25 13/8 14/3 14/4 15/8
16/22 17/3 17/18 18/2 23/15
26/1 27/7 29/16 33/17 37/7
38/14
**MEAN [9]** 10/18 12/22 13/23
15/6 27/5 27/7 29/6 29/7
33/17
**MEANING [1]** 31/20
**MEANS [2]** 15/7 24/8
**MEANT [1]** 24/21
**MECHANICAL [2]** 5/9 29/7
**MEET [1]** 20/25
**MET [6]** 20/24
**METRO [3]** 8/4 13/21 15/7
**MIDDLE [2]** 1/3 18/17
**MIGHT [3]** 6/16 9/17 16/15
**MINUTES [2]** 3/15 19/6
**MISSPELLINGS [1]** 36/13
**MOMENT [3]** 17/2 18/1 23/14
**MONIES [1]** 13/25
**MORTGAGE [11]** 2/8 9/19 15/11
15/13 15/14 27/18 30/5 31/23
32/23 32/24 32/25
**MOSER [4]** 1/18 37/4 37/18
39/22
**MOST [1]** 12/24
**MOVE [1]** 9/13
**MOVED [2]** 7/9 9/24
**MOVING [1]** 27/13
**MR [9]** 3/3 4/12 6/7 11/17
16/25 17/24 21/19 23/12 25/9
**MRS [2]** 39/7 39/13
**MS [1]** 35/2
**MUCH [6]** 8/12 9/6 31/17 33/7
36/19 36/22
**MUST [1]** 10/2

## MY [16]
5/4 5/5 5/24 14/22
15/9 31/5 31/7 38/3 39/16
30/24 33/21 37/9 37/20 37/20
38/17 39/15

## N

**NAME [9]** 4/13 5/3 7/3 12/14
20/23 22/23 34/6 34/25 35/16
**NATURE [1]** 28/22
**NECESSARILY [1]** 36/12
**NEED [1]** 5/18
**NEIGHBORHOOD [2]** 32/3 32/19
**NEIGHBORHOOD'S [1]** 33/11
**NEPHEW [1]** 30/24
**NEW [3]** 9/25 10/1 35/14
**NEXT [2]** 17/9 34/15
**NO [61]**
**NODDING [1]** 5/16
**NON [1]** 5/16
**NON-VERBALS [1]** 5/16
**NONE [1]** 26/18
**NONPAYMENT [1]** 15/14
**NORTH [2]** 1/15 2/6
**NORTHEAST [1]** 30/16
**NOT [9]** 9/9 13/1 14/17 16/5
26/2 26/10 28/14 36/12 39/17
**NOTARY [4]** 1/18 37/5 37/19
38/16
**NOTED [1]** 38/9
**NOTICE [1]** 3/9
**NOVEMBER [4]** 1/13 37/8 37/10
39/5
**NOW [2]** 33/15 39/14
**NUMBER [13]** 6/9 7/22 11/19
12/14 17/2 18/1 18/16 21/21
23/6 23/14 25/11 32/8 34/5

## O

**OATH [1]** 37/1
**OFF [6]** 5/4 5/5 8/4 14/22
21/6 22/18
**OFFERED [2]** 19/16 33/17
**OFFHAND [3]** 22/12 29/13 30/9
**OFFICE [1]** 39/15
**OFFICIAL [2]** 15/25 37/9
**OH [2]** 7/7 10/13
**OKAY [54]**
**OLD [2]** 28/10 33/22
**ON [47]**
**ONE [6]** 6/9 28/11 31/9 31/9
33/14 35/17
**ONLY [2]** 14/24 24/6
**OR [29]** 10/20 12/15 13/4
13/5 14/3 16/6 16/11 16/19
20/4 22/15 22/22 22/23 23/2
24/24 24/25 27/12 28/12 31/4
31/6 31/20 31/23 33/10 33/10
35/1 35/14 36/10 36/12 36/16
37/14
**ORANGE [4]** 12/4 12/6 37/3
38/4
**ORDER [1]** 36/19
**ORIGINALLY [2]** 7/18 33/2
**ORLANDO [7]** 1/4 1/16 2/3 2/7
4/19 29/5 39/8
**OSBURN [2]** 35/13 35/15
**OTHER [16]** 6/15 10/6 10/8
10/9 10/10 12/15 12/17 12/23
21/14 22/12 22/21 25/1 31/5
31/5 31/24 32/1
**OUR [4]** 8/18 14/2 29/4 35/13
**OURSELF [1]** 8/24
**OUT [3]** 13/24 20/10 31/20

## OUTSIDE [1]
24/24
**OVER [4]** 5/5 10/20 22/16
36/1
**OWN [3]** 10/6 10/8 10/9
**OWNED [2]** 8/1 29/24
**OWNER [7]** 4/22 4/25 13/2
13/3 13/5 16/6 24/6
**OWNERS [1]** 25/1
**OWNERSHIP [2]** 24/10 26/9
**OWNS [2]** 21/11 29/19

## P

**PAGE [18]** 6/12 6/19 6/20 8/6
17/5 18/14 18/15 18/18 19/7
19/12 20/11 26/12 26/12
26/15 34/4 34/6 34/15 38/22
**PAGES [1]** 20/16
**PAID [4]** 9/2 22/24 31/17
31/22
**PALMA [7]** 8/2 8/3 31/10 32/2
32/3 33/5 33/8
**PAPER [1]** 27/7
**PAPERWORK [2]** 13/7 15/1
**PARCELS [2]** 31/7 31/8
**PARTY [1]** 12/17
**PAY [4]** 8/13 31/2 31/20
32/20
**PAYING [3]** 27/15 27/18 35/1
**PAYMENT [1]** 27/18
**PAYMENTS [2]** 9/19 14/13
**PENDING [1]** 27/21
**PERFORM [1]** 16/11
**PERMANENT [1]** 9/16
**PERSONAL [6]** 19/18 19/22 20/2
20/4 20/7 20/8
**PERSONALLY [2]** 37/6 37/13
**PERSONS [1]** 35/13
**PHRASE [1]** 12/5
**PILE [1]** 36/20
**PITINO [1]** 35/16
**PLACE [1]** 38/8
**PLACES [1]** 20/12
**PLAN [4]** 27/13 27/14 33/13
33/16
**PLEASE [4]** 4/2 5/23 39/15
39/17
**POINT [1]** 5/20
**POND [2]** 30/18 30/20
**PORTION [1]** 10/14
**POSITION [1]** 26/22
**POSSIBILITY [1]** 14/7
**PREPARE [2]** 12/11 25/16
**PREPARED [1]** 12/9
**PREPARES [1]** 35/7
**PREVIOUSLY [1]** 6/14
**PRO [1]** 2/2
**PROBABLY [1]** 5/14
**PROCEDURE [1]** 6/2
**PROCEEDING [1]** 35/3
**PROCEEDINGS [2]** 36/23 38/8
**PRODUCE [1]** 6/17
**PRODUCED [5]** 6/13 6/14 6/21
37/14 37/15
**PROFESSIONAL [1]** 37/4
**PROJECT [1]** 21/16
**PROJECTS [1]** 21/15
**PROPERTIES [4]** 12/23 22/22
31/11 32/17
**PROPERTY [51]**
**PROPOSALS [1]** 21/14
**PROTECTION [2]** 11/4 15/4
**PUBLIC [4]** 1/18 37/5 37/19
38/16

**P**

**PURCHASE [2]**  29/2 32/14
**PURCHASED [5]**  6/24 7/18 8/17
  30/8 31/19
**PURCHASING [1]**  30/10
**PURPOSE [3]**  17/15 29/2 30/10
**PURSUIT [1]**  22/16
**PUT [3]**  22/11 22/23 35/23
**PUTTING [1]**  33/6

**Q**

**QUESTION [4]**  5/15 5/22 5/23
  20/9
**QUESTIONS [2]**  6/1 39/17

**R**

**RAISE [1]**  4/2
**RE [2]**  1/7 39/10
**READ [8]**  18/20 18/23 36/10
  36/11 36/16 36/17 38/6 39/16
**READING [1]**  39/14
**READY [1]**  39/14
**REAL [7]**  10/10 10/11 19/18
  20/2 20/3 24/15 33/3
**REALLY [11]**  8/14 11/10 12/22
  12/24 21/6 22/14 22/21 22/23
  24/22 27/5 33/4
**REALTIME [1]**  39/1
**REASON [7]**  12/20 15/5 15/15
  20/21 24/23 25/3 32/22
**RECALL [2]**  14/8 14/25
**RECEIVE [2]**  16/18 16/19
**RECEIVED [4]**  14/19 14/20
  14/24 28/12
**RECEIVING [1]**  16/12
**RECOGNIZE [7]**  6/10 7/23 18/5
  19/9 21/21 25/11 34/9
**RECORD [1]**  5/18
**RECORDING [1]**  38/7
**REFERENCE [1]**  26/2
**REFERRED [8]**  6/5 7/14 11/15
  16/23 17/22 21/17 23/10 25/7
**REFRAIN [1]**  5/16
**RELATED [4]**  14/6 14/9 22/25
  32/16
**RELATIONSHIP [2]**  15/25 28/22
**REMEMBER [13]**  5/14 8/14 8/15
  9/6 9/18 9/19 9/24 21/1 30/2
  30/7 31/19 32/15 34/2
**REMOVE [1]**  13/22
**RENEGOTIATING [1]**  14/21
**RENT [2]**  27/15 31/2
**RENTED [1]**  10/14
**REPORTER [2]**  1/18 37/5
**REPORTER'S [1]**  5/17
**REPORTERS [1]**  39/1
**REPRESENTED [1]**  29/9
**RESIDE [2]**  27/8 30/21
**RESIDENCE [2]**  4/23 5/1
**RESPECT [2]**  19/5 33/1
**RESPONDING [4]**  8/10 9/23
  11/25 26/19
**RESPONSIBILITY [1]**  22/22
**RESPONSIVE [2]**  6/14 6/16
**RETAINED [2]**  28/25 29/3
**RETURN [1]**  32/13
**RETURNS [2]**  35/8 35/11
**RID [1]**  14/2
**RIGHT [14]**  4/3 6/4 8/14
  10/19 12/15 22/2 23/21 32/5
  36/9 36/11 36/11 36/15 36/16
  36/18

**ROAT [9]**  2/2 4/19 10/18
  13/16 13/18 27/3 39/1 39/5
  39/7
**RON [1]**  35/13
**RONNIE [1]**  35/16
**ROOFING [1]**  21/11
**RPR [3]**  1/18 37/18 39/22
**RULE [1]**  1/11
**RULES [2]**  5/13 39/15

**S**

**SAID [6]**  7/9 10/1 10/23 15/4
  17/19 38/6
**SALE [2]**  33/11 33/16
**SAME [8]**  15/10 19/5 19/12
  20/9 20/20 32/3 35/18 39/16
**SANDMAN [1]**  33/20
**SANDRA [4]**  1/18 37/4 37/18
  39/22
**SANTA [1]**  30/17
**SATELLITE [5]**  31/9 31/13
  31/14 32/12 33/10
**SAY [6]**  10/17 18/15 22/19
  24/25 27/5 29/6
**SAYING [1]**  28/8
**SAYS [17]**  8/6 11/24 12/3
  13/16 15/18 17/6 17/10 18/8
  19/14 20/12 20/15 21/23 22/2
  22/5 26/12 26/16 34/18
**SCHEDULE [2]**  19/19 26/24
**SCHEDULES [6]**  3/17 25/14
  25/16 25/24 26/2 26/6
**SCHOOL [1]**  30/25
**SE [1]**  2/2
**SEAL [1]**  37/9
**SECOND [3]**  6/12 17/5 34/18
**SEE [7]**  13/7 22/8 26/13 34/6
  34/20 34/23 35/12
**SEEN [3]**  13/4 16/14 23/2
**SELF [1]**  9/2
**SELF-FINANCE [1]**  9/2
**SELL [3]**  10/17 10/19 33/8
**SENTENCE [1]**  19/14
**SEPTEMBER [8]**  13/14 13/17
  14/15 20/19 22/6 23/25
**SEPTEMBER 13 [1]**  20/19
**SEPTEMBER 17 [2]**  13/14 22/6
**SEPTEMBER 18TH [1]**  13/17
**SEPTEMBER 2013 [2]**  14/15
  23/25
**SERVICES [1]**  5/10
**SEVEN [1]**  23/14
**SHARES [6]**  19/17 24/3 24/4
  24/14 24/16 24/20
**SHE [7]**  28/8 28/10 29/9
  29/14 33/22 33/24 34/11
**SHE'S [3]**  28/4 28/4 28/24
**SHEET [3]**  36/15 38/10 38/19
**SHORTLY [1]**  22/15
**SHOULD [3]**  24/25 26/23 39/16
**SHOW [1]**  16/22
**SHOWED [1]**  28/7
**SHOWING [1]**  28/8
**SHOWS [1]**  13/5
**SHUKER [2]**  1/15 2/5
**SIGN [7]**  10/1 12/15 17/19
  19/1 34/20 36/14 39/16
**SIGNATURE [14]**  11/22 17/5
  17/9 18/17 19/7 19/9 19/11
  20/17 21/23 22/2 23/18 23/21
  34/9 39/16
**SIGNATURES [1]**  20/12
**SIGNED [3]**  17/18 34/11 34/13

**SIGNING [3]**  18/20 18/24 39/14
**SIMILAR [1]**  32/16
**SINCE [2]**  4/21 6/15 10/4
  12/13
**SINCERELY [1]**  39/19
**SINGLE [2]**  29/18 33/3
**SINGLE-FAMILY [2]**  29/18 33/3
**SISTER [1]**  21/6
**SISTER-IN-LAW [1]**  21/6
**SIX [2]**  21/21 23/6
**SO [34]**  4/5 7/18 7/21 8/6
  8/12 8/25 11/20 12/23 13/8
  13/9 13/17 13/20 14/1 14/2
  14/12 15/4 15/17 17/3 17/18
  18/3 18/25 19/25 20/9 21/6
  23/16 24/16 25/4 26/22 27/1
  27/5 28/22 34/14 35/4 39/15
**SOLD [1]**  8/7
**SOLEMNLY [1]**  4/3
**SOME [5]**  5/13 13/20 26/8
  35/11 36/13
**SOMEBODY [6]**  8/21 8/21 9/20
  9/25 11/9 30/21
**SOMEONE [2]**  33/17 35/14
**SOMETHING [3]**  22/13 31/16
  33/18
**SORRY [1]**  6/20
**SOUND [3]**  10/23 10/24 19/20
**SOUTH [1]**  8/4
**SPECIAL [1]**  3/10
**SPELL [1]**  4/15
**SPOKEN [1]**  28/15
**SQUARE [1]**  9/11
**START [2]**  6/23 7/21
**STATE [5]**  4/13 37/2 37/5
  37/19 38/3
**STATES [1]**  1/3
**STATING [1]**  14/20
**STILL [2]**  14/13 27/8
**STOCK [19]**  3/13 3/16 16/7
  16/8 16/9 16/12 16/15 16/18
  18/8 19/17 19/17 24/9 24/14
  24/16 26/3 26/5 26/16 26/23
  34/3
**STOCKS [1]**  20/6
**STOPPING [1]**  5/20
**STREET [4]**  29/4 32/7 32/7
  39/1
**STUFF [1]**  14/23
**SUBDIVISION [1]**  8/4
**SUBROGATION [1]**  3/12
**SUBSCRIBED [1]**  38/14
**SUBSCRIPTION [1]**  38/2
**SUBSTANCE [1]**  28/19
**SUCCESSOR [1]**  34/18
**SUE [1]**  15/14
**SUED [1]**  13/18
**SUIT [1]**  14/8
**SUITE [2]**  1/16 2/6
**SUMMARY [1]**  3/17
**SUNTRUST [4]**  9/5 9/16 9/21
  9/22
**SURE [2]**  9/9 35/4
**SURGERY [2]**  22/15 22/15
**SURPRISED [4]**  28/7 34/11
  34/14 34/20
**SWEAR [1]**  4/3
**SWORN [4]**  4/3 4/9 37/7 38/14

**T**

**TAKE [16]**  5/19 5/20 5/21 6/9
  11/19 15/9 17/2 17/2 18/1
  18/1 22/16 22/18 23/14 23/14

## T

**TAKE... [2]** 31/25 36/14
**TAKEN [2]** 1/13 5/6
**TAKING [1]** 3/9
**TALK [6]** 11/8 13/9 13/20
14/4 29/16 31/13
**TALKED [2]** 21/13 21/14
**TANGIBLE [1]** 20/5
**TAX [3]** 35/8 35/11 35/13
**TELL [8]** 8/3 11/9 17/18
17/20 18/14 19/1 19/3 34/13
**TEN [1]** 19/16
**TERM [1]** 10/20
**TESTIFIED [1]** 4/9
**TESTIMONY [3]** 3/2 4/4 36/12
**TEXAS [4]** 3/13 10/21 18/8
34/3
**THAN [3]** 22/12 22/21 31/5
**THANK [4]** 4/7 6/23 36/18
36/22
**THANKS [1]** 7/8
**THAT [133]**
**THAT'S [7]** 14/22 14/23 16/9
20/16 24/15 32/19 36/8
**THEIR [2]** 22/22 22/23
**THEM [6]** 14/4 14/20 18/24
30/13 33/13 33/16
**THEN [3]** 9/18 18/16 33/3
**THERE [16]** 6/12 9/25 10/2
10/3 13/20 13/23 14/3 16/8
26/2 27/12 27/14 30/23 30/25
33/9 34/7 35/23
**THERE'S [7]** 24/10 24/25 26/2
27/20 31/23 32/23 36/13
**THEREAFTER [1]** 22/15
**THESE [6]** 6/17 10/22 12/10
12/11 25/16 25/23
**THEY [7]** 14/3 15/8 21/13
32/12 33/11 33/14 33/15
**THEY'VE [2]** 21/13 21/15
**THING [3]** 14/24 15/10 19/5
**THINGS [1]** 20/5
**THINK [17]** 5/4 8/15 9/14
12/8 15/17 16/6 21/13 23/8
24/13 24/20 26/7 26/22 27/3
29/13 31/22 33/15 36/8
**THINKING [2]** 7/19 15/2
**THIRD [2]** 6/19 6/20
**THIRTY [3]** 7/6 28/11 33/23
**THIRTY-EIGHT [1]** 7/6
**THIRTY-FOUR [1]** 33/23
**THIRTY-ONE [1]** 28/11
**THIS [44]**
**THOSE [7]** 20/6 20/6 20/11
20/16 31/8 31/11 32/17
**THOUGHT [3]** 6/16 34/14 34/22
**THOUSAND [6]** 8/15 9/9 19/17
24/14 24/16 24/20
**THREE [4]** 9/9 11/19 12/18
14/11
**THROUGH [2]** 11/1 32/16
**TIME [10]** 1/14 5/7 6/16
13/19 13/23 14/10 29/3 33/14
36/9 38/8
**TITLE [1]** 34/23
**TITLED [1]** 19/6
**TOGETHER [1]** 21/16
**TOLD [1]** 7/10
**TOO [1]** 33/7
**TOOK [1]** 33/4
**TOP [5]** 5/4 5/5 14/22 21/6
26/12

## U

**UMS [1]** 5/16
**UNDER [2]** 20/12 39/15
**UNDERSTAND [4]** 5/23 6/13 15/6
24/11
**UNINCORPORATED [1]** 26/17
**UNITED [1]** 1/3
**UNIVERSITY [1]** 30/12
**UNKNOWN [1]** 27/6
**UP [1]** 33/6
**USED [2]** 35/12 35/17
**USUALLY [1]** 18/23

## V

**VACANT [1]** 20/4
**VALUATION [1]** 16/12
**VALUE [5]** 16/19 26/7 27/1
27/3 27/4
**VALUES [1]** 33/5
**VERBALS [1]** 5/16
**VERY [3]** 26/12 36/18 36/22
**VISTA [7]** 8/2 8/3 31/10 32/2
32/3 33/6 33/8

## W

**WAIVE [2]** 36/10 36/16
**WALK [1]** 11/1
**WANT [2]** 25/22 28/18
**WARMUS [1]** 35/12
**WARRANTY [5]** 3/10 3/11 13/16
14/10 15/18
**WAS [62]**
**WASN'T [3]** 13/3 20/21 22/14
**WATCH [1]** 20/5
**WAY [1]** 20/11
**WE [20]** 6/2 7/18 7/19 8/23
9/4 12/22 12/23 13/22 14/1
16/9 19/25 24/14 30/13 31/7
31/22 32/16 33/2 33/2 35/17
36/19
**WE'LL [2]** 5/19 20/10
**WELL [9]** 10/19 13/7 27/22
29/7 29/13 30/25 32/17 34/21
35/11
**WENT [3]** 7/19 30/12 32/16
**WERE [13]** 6/12 6/14 13/18
13/22 14/3 14/13 14/17 15/13

## TOTALLY [1] (continued)

**TOTALLY [1]** 35/20
**TRADE [1]** 22/16
**TRANSCRIPT [4]** 5/18 38/10
38/7 39/16
**TRANSFER [3]** 11/2 15/17 19/22
**TRANSFERRED [8]** 13/14 15/5
15/16 30/2 31/4 32/11 36/2
36/4
**TREMENDOUSLY [1]** 5/21
**TRIED [1]** 14/1
**TRUE [2]** 15/10 38/7
**TRUST [4]** 5/2 10/21 10/21
33/25
**TRUSTEE [8]** 11/24 17/6 17/10
22/9 22/11 28/5 33/24 34/18
**TRUSTEES [2]** 12/4 12/6
**TRUTH [2]** 4/5 34/13
**TRY [3]** 5/15 5/18 5/24
**TRYING [2]** 13/22 13/24
**TURN [2]** 18/16 26/15
**TURNED [1]** 10/20
**TWO [5]** 7/22 12/14 13/1 31/7
35/25
**TYPE [3]** 5/8 28/13 37/15
**TYPES [1]** 20/6

## West column

**WEST [3]** 8/6 13/21 15/7
**WHAT [33]** 4/18 5/8 7/3 8/16
10/8 10/11 12/17 14/14 14/21
14/22 15/6 16/15 17/15 18/7
21/10 22/14 24/2 24/8 24/13
24/20 25/13 25/22 27/11
28/18 28/19 29/2 29/12 29/17
30/10 30/14 31/11 32/6 34/2
**WHAT'S [10]** 6/8 7/22 11/18
17/1 17/25 21/20 23/13 25/10
28/22 32/25
**WHATEVER [2]** 26/13 35/23
**WHATNOT [1]** 36/14
**WHEN [30]** 6/23 8/6 8/17 9/13
9/24 10/17 11/20 13/12 14/25
15/4 15/17 17/3 18/2 20/25
21/7 22/19 23/15 25/14 27/5
28/21 29/6 29/21 30/2 30/7
31/14 32/9 32/11 33/2 34/13
36/11
**WHERE [16]** 8/3 17/6 17/10
19/6 20/4 20/12 20/15 21/8
21/23 22/2 22/8 29/15 30/20
31/8 32/1 33/6
**WHEREUPON [1]** 36/23
**WHICH [1]** 34/24
**WHO [18]** 4/25 7/25 8/1 9/2
11/12 12/9 15/23 17/13 18/12
20/22 23/5 27/25 29/19 29/24
30/23 33/20 35/5 35/10
**WHOEVER [1]** 15/19
**WHY [10]** 11/1 12/5 15/5
15/15 17/18 17/20 19/3 22/11
26/5 27/3
**WILL [3]** 4/4 5/14 36/19
**WISH [1]** 38/20
**WITHOUT [1]** 39/16
**WITNESS [3]** 34/14 34/22 37/9
**WORK [2]** 14/2 21/12
**WORKED [1]** 21/15
**WORTH [3]** 16/16 27/7 33/6
**WOULD [20]** 4/2 6/9 7/10 12/8
12/25 15/10 15/15 18/16 22/5
23/8 24/16 26/1 26/8 26/10
28/7 33/7 34/11 35/5 36/15
36/16
**WOULDN'T [1]** 15/9
**WOW [1]** 7/7
**WRITE [1]** 27/2
**WRONG [1]** 7/20

## Y

**YEAH [3]** 13/17 34/14 35/21
**YEAR [2]** 35/14 35/17
**YEARS [6]** 7/6 12/19 21/3
21/5 28/21 36/1
**YES [51]**
**YOU [240]**
**YOU'D [2]** 26/8 26/15
**YOU'LL [1]** 5/22
**YOU'RE [2]** 4/4 15/19
**YOU'VE [4]** 11/20 17/3 18/2
23/15
**YOUR [55]**
**YOURS [1]** 23/22
**YOURSELF [3]** 8/25 25/17 27/21

## Z

**ZERO [5]** 27/1 27/1 27/3 27/5
27/7

# EXHIBIT "B"

No. 1      **STOCK CERTIFICATE**      **1000 Shares**

Shares

(Bearer Shares)

OF

# GRANDE LEGACY GROUP

The Joint-Stock Company Indenture dated the _13_ day of _SEPTEMBER_, 2013 creates GRANDE LEGACY GROUP, owner of the corpus thereof and managed through Trustee(s) designated in the Indenture Articles comprising of One-Thousand (1000) uniform shares in said Joint-Stock Company which are authorized for issue.

THEREFORE, the Trustee(s) do hereby certify that the holder of the Stock Certificate is the owner of One-Thousand (1000) shares. The Contingent Rights hereby conveyed consist solely of income as distributed by the action and sole discretion of the Trustee(s), and upon termination and liquidation, the distribution of the remaining assets of the said Joint-Stock Company. At the death or termination of the holder thereof, this certificate and the shares become null and void.

Said shares, as represented by this Certificate, are transferable in accordance with the Articles of the said Joint-Stock Company. This Certificate evidences the receipt of property whether personal or real, tangible or intangible, conveyed to said Joint-Stock Company under the conditions and for the purposes set forth in the said Joint-Stock Company Indenture which confers no rights, powers, privileges or interests not specifically declared in said Indenture.

IN WITNESS WHEREOF the Trustee has signed and sealed this Certificate as authorized by the said Joint-Stock Company Indenture, on this dated the _13_ day of _SEPTEMBER_, 2013.

_____
Name Trustee

_____
Name Trustee

# EXHIBIT "C"

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


CASE NO.: 6:15-bk-01838-KSJ


IN RE:

JODELL M. ALTIER,

Debtor.
_____

FEBRUARY 1, 2016

HELD AT 400 WEST WASHINGTON STREET
ORLANDO, FLORIDA

TRANSCRIPT ON MOTION FOR RELIEF FROM STAY

BEFORE THE HONORABLE KAREN S. JENNEMANN
UNITED STATES BANKRUPTCY JUDGE


A P P E A R A N C E S:

JODELL M. ALTIER, PRO SE
2507 Roat Drive
Orlando, Florida
      Appearing as Pro Se Debtor

MICHAEL NARDELLA, ESQUIRE
Nardella & Nardella, PLLC
250 East Colonial Drive
Ste. 102
Orlando, Florida
      Appearing on behalf of the Chapter 7 Trustee
      Gene T. Chambers

LORNE DURKET, ESQUIRE
541 E. Orange Street
Altamonte Springs, Florida
      Appearing on behalf of Seterus, Inc.


Proceedings recorded by electronic sound recording
Transcript provided by ACCREDITED COURT REPORTERS
(407) 443-9289

2

I N D E X

PROCEEDINGS BEFORE JUDGE JENNEMANN:                3

Motion for Relief from Stay


CERTIFICATE OF REPORTER:                          17

1          <u>ORLANDO, FLORIDA, FEBRUARY 1, 2016, 1:36 P.M.</u>

2                    P R O C E E D I N G S

3          THE CLERK: Please rise.

4          United States Bankruptcy Court for the Middle

5     District of Florida is now in session.  The Honorable

6     Karen S. Jennemann presiding.  You may be seated.

7          Court calls Case Number 15-1838, Jodell Altier.

8     Interested parties please step forward and enter your

9     appearance.

10          MR. DURKET: Lorne Durket on behalf of Seterus

11     for Fannie Mae.

12          MS. ALTIER: Jodell Altier, pro se.

13          THE COURT: Very good.

14          MR. NARDELLA: Good afternoon, Your Honor.

15     Michael Nardella here on behalf of the Trustee Gene

16     Chambers.

17          THE COURT: And we are here today, Seterus seeks

18     relief from the automatic stay.  There is a related

19     adversary proceeding that was filed by Goshen Mortgage,

20     which is not Seterus; is that correct?

21          MR. DURKET: That's correct.

22          THE COURT: Very good.  And what is it that

23     you're seeking, Mr. Durket?

24          MR. DURKET: Judge, this is property that's in

25     Gainesville.  I just found out that this property is also

1    -- there's an appeal pending, too, in state court, so...

2              THE COURT: Of the foreclosure judgment?

3              MR. DURKET: Of the foreclosure judgment.  So,

4    at this time, I'm not sure what their intentions are,

5    they said that they want to keep the property.

6              THE COURT: Who's they?

7              MR. DURKET: The debtors.

8              THE COURT: Okay.

9              MR. DURKET: They did not surrender it.  They

10   did not claim it as exempt.  They want to keep it.  So,

11   I'm just letting -- I --

12             THE COURT: Okay.

13             MR. DURKET: So, as far as we're concerned,

14   Judge, if the Trustee, unless the Trustee has an interest

15   in this, I think we're entitled to relief.

16             THE COURT: What is the amount of debt on the

17   property pursuant to the foreclosure judgment?

18             MR. DURKET: Okay.  A hundred and seventy-five

19   thousand.

20             THE COURT: Do you have any estimate, from your

21   perspective, as to the value of the property?

22             MR. DURKET: According to the Alachua County

23   records it's a hundred and twenty-one thousand.

24             THE COURT: Okay.  And what kind of dwelling, if

25   any, is around it?  Is it a home?

```
 1              MR. DURKET: It would be a home, Judge.  This
 2     judgment was entered on January of last year.  So a
 3     hundred and seventy-five thousand plus interest which --
 4              THE COURT: A year.
 5              MR. DURKET: -- is probably going to be, you
 6     know, close to maybe another 15,000 I would say.
 7              THE COURT: Um-hum, um-hum.
 8              MR. DURKET: So you're close to 200,000.
 9              THE COURT: Okay.  Very good.  Let me ask, I'm
10     going to get the Debtor's position last but, Mr.
11     Nardella, what position, if any, do you take in this
12     motion?
13              MR. NARDELLA: Thank you, Your Honor.
14              Your Honor, I don't know how much detail you
15     want to know about this, but just very briefly, this is
16     part of four different properties that were all
17     transferred to an entity called the Grande Legacy Group
18     all on September 17th, 2013.  We, as the Trustee, just
19     filed an adversary.
20              THE COURT: So a separate one from the Goshen
21     one, you just had filed it?
22              MR. NARDELLA: Um-hum.
23              THE COURT: Okay.
24              MR. NARDELLA: Yes, ma'am.  As to, mostly to
25     declare the Trustee's interest and in the alternative
```

1    fraudulent transfers. Your Honor, we did not actually

2    include this one in the lawsuit because it does not

3    appear to be any equity in it.  It sold in 2013 for

4    207,000.  So it's cutting it pretty close.  However, Your

5    Honor, actually in preparing for today's hearing I

6    learned that there was -- when I saw there was an appeal

7    that was filed by the Debtor --

8            THE COURT: Um-hum.

9            MR. NARDELLA: -- in June after the bankruptcy

10    was filed --

11            THE COURT: Um-hum.

12            MR. NARDELLA: -- and that the parties have been

13    exchanging briefs, which is strange to me because I would

14    imagine the Debtor has not (sic) standing --

15            THE COURT: Um-hum.

16            MR. NARDELLA: And, you know, just, this is all

17    very, you know, I'm sorry that I'm just getting to

18    learning this this morning in preparation for this but I

19    went and reviewed the foreclosure docket and saw that.

20    So, Your Honor, I don't know if they need nunc pro tunc

21    relief or if the appeal was just void because --

22            THE COURT: Well, the judgment was entered in

23    '13 you say, correct?

24            MR. DURKET: It was entered in '15.

25            THE COURT: '15.

1          MR. DURKET: January 12th of 2015.

2          THE COURT: January, '15, the 12th.

3          MR. NARDELLA: Right, and the case was --

4          MR. DURKET: So it's a year.

5          THE COURT: So it's been a pre-petition then.

6          MR. NARDELLA: Yes.

7          MR. DURKET: Pardon?

8          THE COURT: Yeah, the judgment, your judgment is

9   pre-petition.

10          MR. DURKET: That is correct.

11          MR. NARDELLA: And the bankruptcy was in March I

12   believe and the appeal was filed by the Debtor in June.

13   The creditor just filed its reply brief a couple of weeks

14   ago I saw on the docket, the First DCA docket.

15          MR. DURKET: Don't know, Judge.

16          THE COURT: Okay, anyway, and, Ms. Altier?

17          MS. ALTIER: I just wanted to bring the

18   attention to the Court the pending appellate action

19   which, among other things, challenges the creditor's

20   right to sell.  The case number for the appeal is 1D15-

21   3000 and it is appealing the judgment obtained in the

22   foreclosure case, which is Number 2014 Charlie Adam 2751.

23          THE COURT: Tell me why you think you can

24   proceed with that appeal?

25          MS. ALTIER: Because we have been ongoing with

1     this appeal for years.

2              THE COURT: Well, the appeal was filed in June

3     of 2015.

4              MS. ALTIER: We -- we've been in court with this

5     case.  We -- before Seterus came --

6              THE COURT: Yeah.

7              MS. ALTIER: -- the judge even awarded the

8     property to us --

9              THE COURT: Yeah.

10             MS. ALTIER: -- but after the fact, then Fannie

11    Mae came in and said, well, let us interject in this.

12             THE COURT: Um-hum.

13             MS. ALTIER: So the court case started all over

14    again.

15             THE COURT: Um-hum.

16             MS. ALTIER: But this has been going on for a

17    long time in appeal court.

18             THE COURT: But you picked a Chapter 7

19    bankruptcy.

20             MS. ALTIER: That's true but my name, when I

21    filed bankruptcy, I did it in the name of Jodell Altier.

22             THE COURT: Yeah.

23             MS. ALTIER: I don't -- we object to the

24    creditor's standing on both my home that I live in and

25    the Gainesville house.

1          THE COURT: Um-hum.

2          MS. ALTIER: We see they have no standing after

3    I did a forensic audit of the title search.  All that's

4    being hashed out in state court.  They have all the

5    documents.  The judge are -- the judges are reviewing all

6    of that.

7          THE COURT: Yeah, but you claim an interest in

8    this property in Gainesville, right?

9          MS. ALTIER: Well, Grande Legacy Group --

10         THE COURT: Um-hum.

11         MS. ALTIER: -- which is the trustee --

12         THE COURT: Um-hum.

13         MS. ALTIER: -- or is a stock trust company that

14   I'm one-fifth --

15         THE COURT: Um-hum, um-hum.  But --

16         MS. ALTIER: -- verified trustee.

17         THE COURT: But before June of 2000 -- September

18   17th of 2013 the title was in your name, right?

19         MS. ALTIER: Well, it wasn't supposed to be.

20         THE COURT: Um-hum.

21         MS. ALTIER: This is what they're -- I hired an

22   attorney in 2011, somewhere around there --

23         THE COURT: Um-hum.

24         MS. ALTIER: -- that moved our properties that

25   we had, two land properties --

1          THE COURT: Um-hum.

2          MS. ALTIER: -- and our two homes were supposed

3     to go into the Altier Family Irrevocable Trust.

4          THE COURT: Um-hum.

5          MS. ALTIER: For some reason two of the

6     properties got moved, two did not.

7          THE COURT: Um-hum.

8          MS. ALTIER: So my contention is still with that

9     attorney.

10         THE COURT: Um-hum.

11         MS. ALTIER: We were unaware of that until just

12    recently it was brought to our attention --

13         THE COURT: Um-hum, um-hum.

14         MS. ALTIER: -- with the title to Grande Legacy.

15         THE COURT: And the reason that there was some

16    comment about your ability to bring the appeal is that

17    once you file bankruptcy, unless it's exempted property

18    which this isn't, you don't have any interest anymore.

19    You can't pick it both ways.  You can't pursue ownership

20    claims and at the same time pursue bankruptcy.  You make

21    a choice.

22         MS. ALTIER: Uh-huh.

23         THE COURT: And in --

24         MS. ALTIER: Well, I didn't think it was in my

25    name. I didn't think it was mine.

1          THE COURT: Um-hum.

2          MS. ALTIER: I have stock.

3          THE COURT: Well, then you have --

4          MS. ALTIER: I don't have property.

5          THE COURT: Okay.

6          MS. ALTIER: So I can't have it both ways.

7          THE COURT: So you don't oppose this motion?

8          MS. ALTIER: I do oppose the motion.

9          THE COURT: Why then?

10          MS. ALTIER: Because, well, we filed our initial

11     brief and the creditor is aware of the appeal, which is

12     Seterus --

13          THE COURT: Yeah.

14          MS. ALTIER: -- they however have filed a motion

15     for an extension of time to file an answer brief, which I

16     believe is a deliberate ploy to prevent us from, or

17     myself, from my right to due process in the appellate

18     action; and until the appellate action has been fully

19     adjudicated, I argue that the creditor has no right to

20     sell the property and the motion to lift the bankruptcy

21     -- the bankruptcy should be denied.

22          THE COURT: Well, they can't reset the sale

23     until the appeal is resolved regardless of whether it's

24     valid or not.  So what I don't understand is why you

25     don't want the appeal to go forward.

1          MS. ALTIER: I do want the appeal to go forward
2     but I understood that they're trying to get the sale
3     through bankruptcy and not go through the appellate
4     court, and I -- I'm pro se, I'm just trying to read all
5     this --
6          THE COURT: Yeah.
7          MS. ALTIER: -- I can't find an attorney at this
8     point.
9          THE COURT: And it may be that the Trustee has
10    an interest, that's a whole different issue.
11         Do you take a position on this motion?
12         MR. NARDELLA: Your Honor, we don't believe
13    there is any equity, so we don't take a position on the
14    motion.
15         THE COURT: Okay.
16         MR. NARDELLA: But for purposes of regularity
17    with the Court, the Debtor doesn't have standing, there
18    may need to be some sort of order entered to bless
19    whatever's been going on.
20         THE COURT: Yeah, yeah.
21         MR. NARDELLA: Otherwise, it could be a lot of
22    wasted time and energy.
23         THE COURT: Yeah.
24         MR. DURKET: And, Judge, I don't think the
25    Trustee is hurt by us by granting our motion --

```
 1              THE COURT: I don't either.
 2              MR. DURKET: -- regardless, if we get relief in
 3     the -- appellate relief, they still would have plenty of
 4     time to go forward and see if they get -- well, they can
 5     check to see if there's equity in it now.
 6              THE COURT: Um-hum.
 7              MR. DURKET: They can still do their due
 8     diligence.  They have plenty of time.
 9              THE COURT: Um-hum.  See, the appellate court's
10     not going to do anything right now because of the pending
11     bankruptcy.  Now, I assume one of you have let the
12     appellate know of the pending bankruptcy.
13              MR. NARDELLA: I'm not sure they know, Your
14     Honor.  There was a suggestion of bankruptcy filed on the
15     docket of the underlying foreclosure.
16              THE COURT: Yeah.
17              MR. NARDELLA: But I didn't see anything on the
18     appeal.  I have a copy of the appellate docket I printed
19     off this morning --
20              THE COURT: Um-hum.
21              MR. NARDELLA: -- to show to the parties and
22     Your Honor.
23              THE COURT: That's all right. I mean, I'm not
24     going to -- this is not an evidentiary hearing today.
25     I'm just trying to decide if there's any reason that I
```

1   need to have an evidentiary hearing on just whether the

2   stay should lift and I guess I haven't heard one yet

3   but --

4            MR. DURKET: Judge, if we're going to go forward

5   with an appeal, I think we're going to need the stay

6   lifted.

7            THE COURT: Oh, I do, too.  I mean, if you

8   don't, the only thing that happens is whatever they do is

9   void from the minute they do it so...

10           MS. ALTIER: Then I have no objection over the

11  stay because --

12           THE COURT: Yeah.

13           MS. ALTIER: -- I want the appellate court to

14  rule on this.

15           THE COURT: Yeah, I think that's --

16           MS. ALTIER: They've got all the evidence.

17           THE COURT: Yeah.  I will grant the motion.  If

18  you will submit the order, Mr. Durket.

19           MR. DURKET: Very good.  Thank you, Your Honor.

20           THE COURT: Thank you.

21           MR. DURKET: I can put some language in there

22  that if we've done anything in the appellate court, that

23  that's -- that the Court does not find that's a violation

24  of the stay?  I mean, I don't know that they have but

25  it's -- what I'm hearing right now, they may have even

1    just filed a motion to extend the time but that's still
2    -- it's not a violation of the stay, I don't think, but I
3    want to make sure it's clean.
4            THE COURT: Just -- and I don't know if you --
5    well, you filed the appeal, too, so I think that's
6    probably good for both of you just to say the appeal can
7    track on --
8            MR. NARDELLA: Perhaps the language --
9            THE COURT: -- and that there's been no
10   violation.  Hum?
11           MR. NARDELLA: Perhaps the language would be
12   nunc pro tunc --
13           THE COURT: Yeah.
14           MR.  NARDELLA: -- as of the Petition date.
15           THE COURT: Yeah.  Yeah, run it by everybody if
16   you don't mind, Ms. Altier as well as Mr. Nardella --
17           MR. DURKET: Okay.
18           THE COURT: -- just so that there's no question
19   but I think, you know, whatever has happened in the
20   appeal needs to proceed on.
21           MR. DURKET: Yeah.
22           THE COURT: And I will grant the motion.
23           MR. DURKET: Okay.  Very good.  Thank you, Your
24   Honor.
25           THE COURT: Thank you.

1                    MR. NARDELLA: Thank you, Your Honor.

2                    THE COURT: Thanks.

3                    (Thereupon, the taking of the proceedings was

4      concluded.)

5

6

7

C E R T I F I C A T E

_____I Certify that the foregoing is a correct
transcript from the electronic sound recording of the
proceedings in the above-styled matter.


*Lois H. Simonds*                    March 4, 2016
LOIS H. SIMONDS
Notary Public-State of Florida
Commission Expires: 12/18/18
Commission #FF175996

FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

/s/Antonio F. Hamilton
Accredited Court Reporters

# EXHIBIT "D"

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA
CIVIL DIVISION

CASE NO.:  2013-CA-12147

CHRISTIANA TRUST, A DIVISION
OF WILMINGTON SAVINGS FUND
SOCIETY, FSB, AS TRUSTEE FOR
STANWICH MORTGAGE LOAN
TRUST, SERIES 2012-13,

      Plaintiff,

v.

JODELL M. ALTIER, et al.,

      Defendants.

_____/

## AMENDED MOTION TO INTERVENE/MOTION TO ADD INDISPENSABLE PARTY DEFENDANT

Intervenor, GRANDE LEGACY GROUP, DARRIN C. LAVINE, as Trustee, by and through the undersigned counsel, pursuant to Florida Rules of Civil Procedure 1.230, hereby files this Amended Motion to Intervene/Motion to Add Indispensable Party Defendant in this action between Plaintiff, CHRISTIANA TRUST, A DIVISION, OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2012-13, (referred to as Plaintiff) and Defendants JOSEPH ALTIER and JODELL M. ALTIER, (referred to as DEFENDANTS), and states as follows:

1. Intervenor bought the subject property on September 17, 2013.

2.  Plaintiff filed a Complaint for Foreclosure on October 4, 2013.

3.  Intervenor, Grande Legacy Group, Darrin C. Lavine, as Trustee was not served with the Complaint although Grande Legacy Group was the owner of the property at time the foreclosure suit was filed.

4.  Intervenor, Grande Legacy Group, Darrin C. Lavine, as Trustee, has the requisite interest in the litigation to permit its intervention because the issues it seeks to raise are encompassed by the present controversy between the parties to this case. See Union Cent. Life Ins. Co. v. Carlisle, 593 So.2d 505, 507 (Fla. 1992) (Intervention should be permitted where the parties' interests are "of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment.") Here, Grande Legacy Group, Darrin C. Lavine, as Trustee, is the record owner of the property. Consequently, Intervenor Grande Legacy Group, Darrin C. Lavine, as Trustee, is an appropriate party to this litigation.

5.  Leave to intervene shall be given freely when justice so requires and is greatly favored in Florida.  See Florida Rules of Civil Procedure 1.230; National Wildlife Fed'n Inc. v. J.T. Glisson, 531 So.2d 996,997 (Fla. 1st DCA 1988) ("Intervention should be liberally allowed.");  see also Miracle House Corp. v. Haige, 96 So.2d 417, 418 (Fla. 1957).

6.  More than a century ago, the Florida Supreme Court recognized that "a **foreclosure** proceeding resulting in a final decree and a sale of the mortgaged property, without the holder of the legal **title** being before the court will have no effect to transfer his **title** to the purchaser at said sale." *Jordan v. Sayre*,  24 Fla. 1, 3 So. 329, 330 (1888).  If the **foreclosure** proceeding has no **effect** to **transfer title** because the legal **title** holder has not been joined, it is simply another way of saying that the **foreclosure** proceeding is void.

In *English v. Bankers Trust Company of California,* 895 So.2d 1120 (Fla. 4th DCA 2005), the Court held, "Because Lesa Investments, the undisputed owner, was not a party to the first suit,  the initial foreclosure judgment could not result in a valid sale, as the owner of the fee simple title was an indispensable party. *Community Fed. Svgs. and Loan Ass'n v. Wright,* 452 So.2d 638, 640 (Fla. 4th DCA 1984). The Court further reasoned, We note that, more than a century ago, the Florida Supreme Court recognized that "a foreclosure proceeding resulting in a final decree and a sale of the mortgaged property, without the holder of the legal title being before the court will have no effect to transfer his title to the purchaser at said sale." *Jordan v. Sayre,* 24 Fla. 1, 3 So. 329, 330 (1888).

If the foreclosure proceeding has no effect to transfer title because the legal title holder has not been joined, it is simply another way of saying that the foreclosure proceeding is void.

7. The granting of this Motion to Intervene will not unduly delay this action or prejudice any of the parties because the action of Foreclosure of the Intervenor's  property without due process has already inextricably linked the Intervenor to this action.

## MOTION TO JOIN INDISPENSABLE PARTY DEFENDANT

8.      The Defendants and Darrin C. Lavine, as Trustee move this Court to join Grande Legacy Group, Darrin C. Lavine, Trustee as an indispensable Party Defendant as he has an interest in the subject Property through a Quit Claim Deed filed in the Public Records of Orange County, Florida, 2507 Roat Drive, Orlando, FL 32835, O.R. Book 10636, Page 3463 on September 18, 2013. (**See attached Quit Claim Deed**).

9.      The owner of the fee simple title is the only indispensable party Defendant to a foreclosure action. See English v. Bankers Trust Company of California, N.A., 895 So.2d 1120 (4th DCA 2005).

10.     More than a century ago, the Florida Supreme Court recognized that "a foreclosure proceeding resulting in a final decree and a sale of the mortgaged property, without the holder of legal title being before the court will have no effect to transfer his title to the purchaser at said sale." *Jordan v. Sayre*, 24 Fla. 1, 3 So. 329, 330 (1888). If the foreclosure proceeding has no effect to transfer title because the legal title holder has not been joined, it is simply another way of saying that the foreclosure proceeding is void.

11.     As the title owner of the property prior to the filing of the Lis Pendens, Grande Legacy Group, Darrin C. Lavine, Trustee is an indispensable party in this action.

12.     An indispensable party is a necessary party to essential to a suit that no final decision can be rendered without their joinder. Sudhoff v. Federal National Mortgage Association, 940 So.2d 425 (Fla 5th DCA 2006) .

13.     Failure to allow Darrin C. Lavine to join the instant action as holder of legal title and an indispensable party in this matter would render any judgment entered void.

WHEREFORE, Defendants, Joseph and Jodell Altier and Intervenor, Grande Legacy Group, Darrin C. Lavine, as Trustee, respectfully request this Court: (a) grant this Amended Motion to Intervene/ Motion to Add Indispensable Party Defendant; (b) direct the Clerk to amend the style in this case to reflect the new Defendant, Grande Legacy Group, Darrin C. Lavine, as Trustee ; and (c) for such other and further relief as the Court deems just and proper.

Respectfully Submitted,

  /s/  Kelley A. Bosecker
Kelley A. Bosecker
Attorney at Law
1400 Gandy Boulevard, #706
St. Petersburg, Florida 33702
813-334-1745
Fax: 727-258-8699
Florida Bar No. 0443931
Attorney for Grand Legacy Group,

Darrin Lavine Trustee
sbosecker@tampabay.rr.com
kbosecker@tmo.blackberry.net

/s/ Joseph Altier
Joseph Altier
Pro se
2507 Roat Drive
Orlando, FL 32835

/s/ Jodell Altier
Jodell Altier
Pro se
2507 Roat Drive
Orlando, FL 32835

## <u>CERTIFICATE OF SERVICE</u>

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing was served by E-Mail upon the following party:  Alberto T. Montequin, Esq., Lender Legal Services, Attorney for Plaintiff, 201 E. Pine Street, Suite 730, Orlando, Florida, AMontequin@LenderLegal.com, this 6th day of November 2015.


  /s/  Kelley A. Bosecker
Kelley A. Bosecker
Attorney at Law

Prepared by:

After Recorded return to
Jodell M. & Joseph E Altier
2507 Roat Dr
Orlando, FL 32835

DOC# 20130497796 B: 10636 P: 3463
09/18/2013 03:13:41 PM  Page 1 of 2
Rec Fee: $18.50
Deed Doc Tax: $0.70
DOR Admin Fee: $0.00
Intangible Tax: $0.00
Mortgage Stamp: $0.00
Martha O. Haynie, Comptroller
Orange County, FL
SA – Ret To: JOSEPH ALTIER

## Warranty Deed

| STATE OF FLORIDA | )( |
| | )( |
| COUNTY OF ORANGE | )( |

KNOW ALL MEN BY THESE PRESENTS, that Jodell M. Altier & Joseph E. Altier, Trustees of Orange County Florida, grant and convey for Ten Dollars and other valuable considerations unto the said Grande Legacy Group (A Texas Joint-Stock Company) of Orange County, Florida all that certain residential lot and improvements known as:

      2507 Roat Dr Orlando, FL 32835

That property located and more specifically described as that property;

      Real property in the County of Orange, State of Florida –

*Legal Description*:

      LOT 26A, PALMA VISTA REPLAT, ACCORDING TO THE PLAT OR MAP THEREOF AS RECORDED IN PLAT BOOK 29, PAGE 45, OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA.

PARCEL ID: 23-28-03-6577-00-260

To have and to hold the above described premises, together with all and singular, the rights and appurtenances thereto in any wise belonging unto the said Grande Legacy Group its heirs or assigns forever, and we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said Grande Legacy Group its heirs and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof. This Deed is subject to any liens and mortgages authorized and executed by the Grantors.

by _____
Jodell M. Altier, Trustee

Witness _____
Print CATHERINE BECK

_____
Joseph E. Altier, Trustee

Witness _____
Print Michele Dobrucky

Warranty Deed
Page 1 of 2

STATE OF FLORIDA            )(
                           )(
COUNTY OF ORANGE           )(


On the 17 day of ___Sept_____, 2013, before me came, Jodell M. Altier & Joseph E. Altier Trustees, known to me to be the individuals described in, and who executed the foregoing instrument, and he/her acknowledged that he/her executed the same, and in due form of law acknowledged the foregoing instrument to be his/her free act and deed and desired the same might be recorded as such.

Witness my hand and official seal.


_Javier Solis_____
Printed Name

_____
Notary Public in and for the State of Florida

My Commission Expires: _____3 03/15/16

JAVIER SOLIS
Notary Public - State of Florida
My Comm. Expires Mar 15, 2016
Commission # EE 179839
Bonded Through National Notary Assn.